

**ORIGINAL**

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF OKLAHOMA

Jerry Parent

      Plaintiff,

Vs.

Kris Agrawal, Vimala Agrawal,

Newton Agrawal, Amy Agrawal,

Rodger Sparkman, Tariq Ahmad

          Defendants, Individually,

And,

The Agrawal Childrens Trust: the "AST,"

Coal Gas Mart LLC, On-Line Oil Inc,

Coal Gas USA, LLC, Realty Management

Associates, Pacific Energy and

Mining Co. (PEMC), DEEP Industries LTD.

Mar/Reg Investments, Mar/Reg Oil Co.

Adinath Exim Resources, Deep Energy, LLC

Deep Natural Resources, Realty Developers, LLC,

General Minerals Corporation, Mittal Well Tech, LLC

("Association-in-fact"& "consortium" Defendants),

      Defendants,

Case No. **CIV** 1 2 - 3 8 5 - K E W

**FILED**

SEP 1 4 2012

WILLIAM B. GUTHRIE
Clerk, U.S. District Court
By_____
Deputy Clerk

**Jury Trial Demanded**

## COMPLAINT

Plaintiff, Jerry Parent, ('Parent'), for his claims for relief against Defendants, Kris Agrawal, Tariq Ahmad, Vimala Agrawal, Newton Agrawal, Amy Agrawal, and Rodger Sparkman, (Defendants, Individually), and, The Agrawal Childrens Trust, ("AST"),' Coal Gas Mart LLC, ("CGM"),On-Line Oil Inc, ("Online"),  Coal Gas USA, LLC, ("CGUSA"), Realty Management Associates, ("RMA"),Pacific Energy and Mining Co., ("PEMC"), DEEP Industries LTD., ("DIL"), Mar/Reg Investments, ("MRI"), General Minerals

1



Corporation,("GMC"), Mar/Reg Oil Co. ("MRO"), as "Association-in-fact Defendants," and "Consortium" Defendants, (collectively, "Defendants"), alleges and states as follows:

## Parties, Jurisdiction, and Venue

1. Parent is an individual residing in Boynton, Muskogee County, Oklahoma.

2. Rodger Sparkman is an individual residing in Tulsa County, Oklahoma and with operations and an office in Jenks, Oklahoma. Rodger Sparkman owns interests in the Hill Top Leasehold (a 2800+/- acre oil and gas lease in South Tulsa County, Oklahoma), through a Promissory Note and Irrevocable Personal Guaranty executed by Kris Agrawal to 'Sparkman's benefit and under which, Kris Agrawal continues to make payments today. Upon information and belief, Kris Agrawal, Vimala Agrawal, Newton Agrawal  Amy Agrawal, and Rodger Sparkman conspired, in part, for the purpose of, or attempting to commit various acts of, hiding, diverting, and misappropriating assets of 'Online' and others, and to hinder, delay, and defraud creditors, Bank of America, the FDIC, Global Financial, LLC, (a financial institution), and others, including 'Parent,' the Bankruptcy Court for the Western District of the State of Oklahoma and its associated Creditors, and CO&G Production Group, LLC.

3. Kris Agrawal is an individual residing in Oklahoma County, Oklahoma who upon information and belief, conducts, or has conducted business as manager, consultant, member, principal, on behalf of himself and other 'consortium' members, and association-in-fact enterprises, including family insider owned entities, or otherwise, in Tulsa County, Oklahoma, Seminole County, Oklahoma, Okmulgee County, Oklahoma, Beaver County, Oklahoma, Pontotoc County, Oklahoma and in Utah, New Mexico, and in India. Upon information and belief, Kris Agrawal, Vimala Agrawal, Newton Agrawal and Amy Agrawal conspired, in part, for the purpose of, or attempting to, craft and execute various unlawful schemes in the pursuit of, hiding, diverting, and misappropriating assets of 'Online' and others, and to hinder, delay, and defraud creditors, including 'Parent,' the Bankruptcy Court for the Western District of the State of Oklahoma and its associated Creditors, Bank of America, the FDIC, Global Financial, LLC, (a financial institution), and CO&G Production Group, LLC., in violation of 18 U.S.C. § 2 (1982), which defines "principal" as referenced by § 1962(a), provides:

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States is punishable as a principal.

4. Amy Agrawal lives in or near Cambridge, Massachusetts and did/ does conduct business in Tulsa County, Oklahoma, Oklahoma County, Oklahoma, Beaver County, Oklahoma, Seminole County, Oklahoma, and Okmulgee County and possibly others by and through GEO Exploration, LLC, a company that filed for Chapter 7 Liquidation Bankruptcy on July 27, 2009, in the Western District of the State of Oklahoma Case No. 09-14024. Upon information and belief, Kris Agrawal, Vimala Agrawal, Newton Agrawal and Amy Agrawal conspired, in part, for the purpose of hiding, diverting, and misappropriating assets of 'Online' and others, and to hinder, delay, and defraud creditors, including 'Parent,' the Bankruptcy Court for the Western District of the State of Oklahoma and its associated Creditors, and CO&G Production Group, LLC.

5. Vimala Agrawal is an individual residing in Oklahoma County, Oklahoma who is an owner or majority stock-holder in Realty Developers, LLC, and did/does conduct business in Tulsa County, Oklahoma, Seminole County, Oklahoma and Okmulgee County, Oklahoma and possibly others. Upon information and belief, Kris Agrawal, Vimala Agrawal, and Newton Agrawal and Amy Agrawal conspired, in part, for the purpose of hiding, diverting, and misappropriating assets of 'Online' and others, and to hinder, delay, and defraud creditors, including 'Parent,' the Bankruptcy Court for the Western District of the State of Oklahoma and its associated Creditors, and CO&G Production Group, LLC.

6. Newton Agrawal is a resident of Cook County, Illinois and conducts business in the State of Oklahoma with Deep Industries through Deep Energy, LLC, and is the major stock-holder in On-Line Oil Inc., and Coal Gas USA, LLC, and a 10% interest holder in Deep Energy, LLC and does business with Deep Industries Ltd. in India and at the Earlsboro Leasehold in Oklahoma and may have knowledge and information reflecting the validity, or lack thereof, of the Over Riding Royalty Interest and $250,000.00 Mortgage granted against On-Line Oil Inc, executed to the benefit of

3

Realty Developers, LLC, by Kris Agrawal on February 5, 2001, and April 9, 2002, and reassigned again on May 27, 2005, (document No. 2005006632024), respectively. Upon information and belief, Kris Agrawal, Vimala Agrawal, Newton Agrawal and Amy Agrawal conspired, in part, for the purpose of hiding, diverting, and misappropriating assets of 'Online,' and Realty Developers, LLC, and Coal Gas USA, LLC to hinder, delay, and defraud creditors, including 'Parent,' the Bankruptcy Court for the Western District of the State of Oklahoma and its associated Creditors, and CO&G Production Group, LLC.

7. Mar/Reg Investments is believed to operate in or near Reno, Nevada and has enacted several associated business ventures either directly, or indirectly, with Kris Agrawal, Newton Agrawal General Minerals Corporation, Vance Limited Partnership, On-Line Oil Inc., Coal Gas Mart, LLC, and Deep CH4 Private Limited. Upon information and belief, Kris Agrawal, Vimala Agrawal, and Newton Agrawal and Tariq Ahmad conspired, in part, with, by and through their other association-in-fact enterprises for the purpose of hiding, diverting, and misappropriating assets of 'Online' and others, and to hinder, delay, and defraud creditors, including 'Parent and CO&G Production Group, LLC, the Bankruptcy Court for the Western District of the State of Oklahoma and its associated Creditors,

8. Mar/Reg Oil Company, is believed to be operating in or near Reno, Nevada and possesses "non-operated (oil and gas), well interests in Oklahoma." Mar/Reg Oil Company does business in New Mexico, Oklahoma, Utah, and has taken over Operations of certain wells formerly operated by General Minerals Corporation in Utah and has on-going business associations with Pacific Energy and Mining Company, Kris Agrawal, General Minerals Corporation, On-Line Oil Inc., Coal Gas Mart, LLC, Deep CH4 Private Limited, Deep Industries Limited in India and various other 'Consortium' members as association-in-fact entities. Upon information and belief, Kris Agrawal, Vimala Agrawal, and Newton Agrawal and Tariq Ahmad conspired, in part, for the purpose of hiding, diverting, and misappropriating assets of 'Online,' and General Minerals Corporation, and others, and to hinder, delay, and defraud creditors, including 'Parent' Burlington Resources, the Bankruptcy Court for

4

the Western District of the State of Oklahoma and its associated Creditors, and CO&G Production Group, LLC.

9.  Coal Gas Mart, LLC, is an Oklahoma limited liability company that does/did business in Tulsa County, Oklahoma and in India and conducts its day to day business affairs from 4133 North Lincoln Blvd., Oklahoma City, Oklahoma. Upon information and belief, Kris Agrawal, Vimala Agrawal, Newton Agrawal and Tariq Ahmad conspired, in part, with, and through, their other association-in-fact enterprises, for the purpose of hiding, diverting, and misappropriating assets of 'Online,' 'RDL' CO&G Production Group, LLC, and others and to hinder, delay, and defraud creditors, including 'Parent,' the Bankruptcy Court for the Western District of the State of Oklahoma and its associated Creditors, and CO&G Production Group, LLC.

10. Coal Gas USA, LLC, is an Oklahoma limited liability company that does business in Tulsa County, Oklahoma that allegedly "quit business after March 2006" and "after 2007" (according to an Affidavit submitted into Oklahoma Department of Labor Cases in 2010), and conducts its day to day business affairs from 4133 North Lincoln Blvd., Oklahoma City, Oklahoma. Upon information and belief, Kris Agrawal, Vimala Agrawal, Newton Agrawal and Amy Agrawal, conspired, in part, with their other association-in-fact enterprises, for the purpose of hiding, diverting, and misappropriating assets of 'Online,' 'RDL,' and others, and to hinder, delay, and defraud creditors, including 'Parent,' the Bankruptcy Court for the Western District of the State of Oklahoma and its associated Creditors, and CO&G Production Group, LLC.

11. Realty Management Associates, LLC is an Oklahoma limited liability company which conducts, all, or some of, its day to day business affairs from 4133 North Lincoln Blvd., Oklahoma City, Oklahoma and does business in Tulsa County, Oklahoma and other counties in Oklahoma as well. Kris Agrawal is the alleged and previously stated, *"sole member and manager of Realty Management Associates, LLC."* according to his Affidavit submitted in a recent Oklahoma Department of Labor legal proceeding on March 28, 2010. Upon information and belief, Kris Agrawal, Vimala Agrawal, Newton Agrawal, Amy Agrawal, conspired in part with their other association-in-fact enterprises, for the purpose of hiding, diverting, and misappropriating assets of

'Online' and entities selectively chosen, and proceeded therein to hinder, delay, and defraud creditors, including 'Parent,' the Bankruptcy Court for the Western District of the State of Oklahoma and its associated Creditors, and CO&G Production Group, LLC.

12. Pacific Energy and Mining Company (PEMC) is a Utah Corporation and publicly traded company that does business in Oklahoma attaining some of its publicly traded values from assets belonging to, or associated with, General Minerals Corp., Vance 1 Limited Partnership, and Vance Limited Partnership, On-Line Oil Inc, Coal Gas Mart, LLC, Deep CH4 Private Limited, Deep Industries Ltd., and/or other 'Agrawal' insider owned entities. Upon information and belief, Kris Agrawal, Vimala Agrawal, Newton Agrawal, Amy Agrawal, and the principals, partners, associates, or those of other distinctions, conspired, in part, for the purpose of hiding, diverting, and misappropriating assets of 'Online' and others, and to hinder, delay, and defraud creditors, including 'Parent,' the Bankruptcy Court for the Western District of the State of Oklahoma and its associated Creditors, and CO&G Production Group, LLC.

13. Deep CH4 Private Limited is a foreign corporation operating in India as company number U14292GJ2006PTC049371, and is/was associated with Coal Gas Mart, LLC, and together they operate in India in the exploration and development of Coal Bed Methane Gas Blocks awarded them by the Indian Government upon successfully bidding for such under the proper parameters and requirements and guidelines. Upon information and belief, Kris Agrawal, Vimala Agrawal, Newton Agrawal, Amy Agrawal, through conspiring, in part among themselves, created and thereafter enacted a "Scheme" through which to unlawfully use, convert, state falsities concerning the ownership of, and provided false and misleading information to Larry Stubblefield, CPA, and upon improper instructions submitted thereto, unlawfully distributed such unlawfully crafted financial worthiness information abroad and into foreign and domestic portfolios creating a false appearance of Financial Strength forecast world-wide to unlawfully demonstrate to world-wide investors a fraudulently constructed account of the Financial Worth of Coal Gas Mart, LLC., for the purpose of unlawful use of encumbered, non-owned or controlled assets and such was done to further their numerous acts of hiding, diverting, and misappropriating assets of

'Online' and others, and to hinder, delay, and defraud creditors, including 'Parent,' the Bankruptcy Court for the Western District of the State of Oklahoma and its associated Creditors, and CO&G Production Group, LLC.

14. Adinath Exim Resources Limited is a foreign company and it does business with Coal Gas Mart, LLC, of Oklahoma and Deep CH4 Private Limited, a subsidiary of Coal Gas Mart, LLC according to documents submitted to the Directorate General of Hydrocarbons in India. Upon information and belief, Kris Agrawal, Vimala Agrawal, and Newton Agrawal and Amy Agrawal, conspired in part for the purpose of hiding, diverting, and misappropriating assets of 'Online' and others, and to hinder, delay, and defraud creditors, including 'Parent,' the Bankruptcy Court for the Western District of the State of Oklahoma and its associated Creditors, and CO&G Production Group, LLC.

15. Deep Natural Resources Ltd. is a foreign company possibly operating in Oklahoma with offices at 4133 North Lincoln Blvd. in Oklahoma City, Oklahoma and doing business in collusion with Coal Gas Mart, LLC and Deep CH4 Private Limited, a subsidiary of Coal Gas Mart, LLC, or possibly in 'Consortium' under an umbrella of existence consisting of several publicly traded companies. Upon information and belief, Kris Agrawal, Vimala Agrawal, and Newton Agrawal and Amy Agrawal, conspired in part for the purpose of hiding, diverting, and misappropriating assets of 'Online' and others, and to hinder, delay, and defraud creditors, including 'Parent,' the Bankruptcy Court for the Western District of the State of Oklahoma and its associated Creditors, Bank of America, the FDIC, Global Financial, LLC, (a financial institution), and CO&G Production Group, LLC.

16. The Agrawal Children's Trust, ('AST'), is a Trust under the control of Vimala Agrawal, Kris Agrawal, and possibly Newton Agrawal and/or Amy Agrawal. The 'AST,' upon information and belief, is the funding source from which the funding needed by the association-in-fact enterprises operate and function in the illegal and illicit undertakings from which the basis of acquiring other enterprises is founded and funded. Upon information and belief, Kris Agrawal, Vimala Agrawal, and Newton Agrawal and Amy Agrawal, conspired, in part, for the purpose of hiding funds, accumulating assets, and depriving creditors of the other association-in-fact

7

enterprises for the purpose of hiding, diverting, and misappropriating assets of 'Online' and others, and to hinder, delay, and defraud creditors, including 'Parent,' the Bankruptcy Court for the Western District of the State of Oklahoma and its associated Creditors, Bank of America, the FDIC, Global Financial, LLC, (a financial institution), and CO&G Production Group, LLC.

17. This Court possesses jurisdiction of Parent's claims pursuant to 18 U.S.C. §1961*et seq.,* 18 U.S.C. §1964(c), 28 U.S.C. §§1331, 1332(a), and 1367(a).

18. The Venue is proper in this Court pursuant to 18 U.S.C. §1965(a) and 28U.S.C. §1391(b).

## General Allegations

19. The 'AST,' Coal Gas Mart, LLC, General Minerals Corporation, Mittal Well Tech, LLC, Coal Gas USA, LLC, Kris Agrawal personally, Vimala Agrawal as "passive instrument," and Newton Agrawal, as "passive instrument" at times and Amy Agrawal as "passive instrument" at times conspired and thereafter, aided and abetted each other, on behalf of the others, and conspired to use other association-in-fact enterprises to aid and abet in the commission of various acts to further their unlawful "Scheme" to "Bleed Out" the assets of 'Online' with the sole intent and purpose of hiding, diverting, and misappropriating assets of 'Online' and to hinder, delay, and defraud creditors, including 'Parent,' the Bankruptcy Court for the Western District of the State of Oklahoma, its Trustees, and its associated Creditors; Bank of America, the FDIC, Global Financial, LLC, (a financial institution), and CO&G Production Group, LLC. The alleged unlawful conduct is in violation of 18 U.S.C. Sections §1962 (c) and, in violation of 18 U.S.C. §1962(d) for conspiring to violate18 U.S.C. §1962 (c).

20. Parent' is an experienced energy consultant and had operated or managed oil and gas related entities and projects since 1980.

21. On, or about, October 2, 2006, 'Parent,' Bill Hall, (hereinafter 'Hall'), and Kris Agrawal, (hereinafter 'Agrawal'), met at N.E. 50th and Lincoln Blvd., at Bedlam BBQ for the first time.

22. Note: 'Parent' was asked to attend that meeting by invitation of 'Hall' and 'Agrawal.' 'Parent' had received a prior phone call from 'Hall' requesting 'Parent's involvement and attendance for the possibility of coming to the aid of 'Hall's then client, 'Agrawal.'

23. At, and during that meeting, 'Agrawal' stated to both 'Parent' and 'Hall' that 'he,' ('Agrawal'), was *burned out* in the Oil Patch business and that 'he', ('Agrawal'), was desirous of turning over all of "his" Oil and Gas Operations to someone else. 'Agrawal' also stated to both, 'Parent' and 'Hall' at, and during, that meeting that 'he', ('Agrawal'), was facing extreme and pressing issues which 'Agrawal' was losing control of due to; poor performance of former employees, lack of 'Agrawal's understanding of many of the day to day aspects of high-pressure gas compression, 'Agrawal's handicap, and many other various and sundry factors stated by 'Agrawal' at that meeting.

24. 'Parent,' ' Agrawal,' and 'Hall' verbally entered into an understanding that the 'Time' agreement would be drafted by 'Hall' on October 2, 2006. 'Parent,' 'Hall,' and 'Agrawal' left the Restaurant and preceded to 4133 North Lincoln Blvd., to the Offices of the 'Agrawal' entities and conducted further talks and worked out the framework for the 'Time' agreement. 'Hall,' thereafter, left the office with instructions to deliver the agreement to 'Parent' early the next day for presentation to 'Agrawal' for his and 'Parent's signatures.

25. 'Parent,' on October 2, 2006, after the luncheon, and into the night, entered into and agreed on bonus and percentage compensation with 'Agrawal' that was to be memorialized. Parent conveyed those bonus and percentages from notes taken and reflecting those understandings to 'Hall' late that evening.

26. 'Hall,' repeatedly, and on numerous occasions throughout the meetings, asked 'Agrawal' in the presence of 'Parent' if he ('Agrawal'), was comfortable with, and fully understood, that 'Hall' and 'Parent' were going to be business associates under the 'Time' agreement.

27. On at least 4 or 5 occasions when asked about the issue, 'Agrawal' on each occasion, stated that he was in agreement and fully understood and agreed, that 'Hall' could do both, remain as 'Agrawal's attorney, and continue under the 'Time' Agreement as a party in interest and investor for 'Time.' 'Agrawal' realized that the 'Agrawal' family and their insider owner and operated entities were to be the real beneficiaries.

28. 'Agrawal' also stated during the course of that luncheon/ meeting that 'he' wanted to

9

spend more time with Family and persue 'his' Engineering field more intensely.

29. 'Agrawal' further stated during the course of that meeting that he desperately needed 'Parent' to find an Operator for the Hill Top Lease (a 2800 acre +/- oil and gas lease), in Tulsa County  and that 'he,' ('Agrawal'), wanted Parent to get that done as quickly as possible.

30. Parent' stated to 'Agrawal' that a Legal "Operator," or someone who would agree to become the legal "Operator," could be found and located by 'Parent' if 'Agrawal' could afford a Finder's Fee. 'Agrawal', and 'Parent,' in the presence of  'Hall,' agreed on a Finder's Fee to be paid by 'Agrawal' to 'Parent,'upon 'Parent' finding a 'Legal Operator' to post a Surety Bond and begin operating the Hill Top Leasehold (hereinafter "HTL") in Tulsa County.

31. Upon 'Agrawal' stating that he would pay 'Parent' a $25,000.00 Finder's Fee, Hall stated, _"Kris, We don't have $25,000.00!"_ At that point in negotiations, 'Agrawal' immediately stated that he had the twenty-five ($25,000.00), thousand dollars, and would pay that amount, over to 'Parent' immediately upon 'Parent' bringing a Legal "Operator" to post a Surety Bond and sign the Oklahoma Corporation Commission Change of Operator form 1073. _(The matter of $ seemed to 'Parent' that 'Hall' and 'Agrawal' were in disagreement over payments of money past due to 'Hall')._ 'Parent' and 'Agrawal' agreed on the twenty-five thousand dollar Finder's Fee in the presence of 'Hall,' Agrawal's attorney at that time.

32. Throughout both days, of October 2, and 3, 2006, 'Agrawal' fraudulently induced 'Parent' to enter into the 'Time' agreement. 'Agrawal' failed to truthfully inform 'Parent' of previous and ongoing issues surrounding the 'HTL' and in doing so Made material fraudulent and/or negligent misrepresentations to 'Parent' including, but not limited to, representing specifically to 'Parent' that Realty Developers, LLC owned the entire 'HTL,' misrepresenting the productivity of the 'Units,' the status of operations of the 'Units,' and the condition of the equipment and infrastructure of the 'HTL.'

33. 'Parent' began working non-stop for 'Agrawal' and all of his family's "Insider"

owned entities, including the ongoing pursuit of foreign Coal Bed Methane Blocks, on October 2, 2006 under the 'Time' agreement. Including working on Christmas Eve 2006.

34. Parent was totally unaware that Kris Agrawal, acting on behalf of ,'Online', 'RDL', 'CGM' 'CGUSA' and the other 'Agrawal' insider owned entities was simply misadvising, misleading, and applying his intended "scheme or artifice to defraud" 'Parent,' 'Hall, 'Time,' 'Ron Walker,' and later, CO&G Production Group, LLC, 'Agrawal's well developed "pattern" of schemes to deprive another of their intangible right of honest services. Such numerous schemes and overt acts were deployed systematically against 'Parent' and Ron Walker thereafter, and would become rampant, and outrageous, but kept secret and used systematically and to the detriment of 'Parent,' 'Walker' and CO&G Production Group, LLC throughout 2007, and still continuing today.

35. During the following weeks, Ron Walker, (herein after referred to as 'Walker'), the individual to whom 'Parent' had presented the sale terms and conditions as 'Agrawal' had on numerous prior occasions presented such facts and claims to 'Parent,' had agreed to provide the "Surety Bond." Shortly thereafter, acting due to Intense Pressure from 'Agrawal,' 'Parent,' being pressured daily by 'Agrawal' to pressure 'Walker,' had contacted 'Walker' stressing the fact that 'Agrawal' was applying extreme pressure upon 'Parent' to get an 'Operator' found to operate and now, buy the 'HTL.' 'Parent' advised 'Agrawal' that mere words and promises would not suffice to convince anyone to undertake a project as big as the 'HTL.' 'Parent' advised 'Agrawal that facts were needed instead, along with paperwork, reflecting the production potential one could expect to be reasonable from the wells located there. Ron Walker, upon 'Agrawal's many statements indicating that the abandoned 'HTL' could be lost for non-production and abandonment and Walker, realizing that the Oklahoma Corporation Commission, (hereinafter 'OCC') had already plugged some of the wells at the 'HTL' and was about to plug more of the abandoned wells due to 'Online' not having any means to operate (due to Agrawal's handicap), prepared a Revenue Sharing Agreement and sent it to 'Agrawal,' on December 11, 2006, the document was crafted from verbal discussions related to the project that had transpired between 'Parent,' 'Agrawal' and 'Walker over a span of about 30 days prior.

11

36. The Revenue Sharing Agreement was formulated and presented to 'Agrawal' and done so for the sole purpose of appeasing the 'OCC.'

37. The Revenue Sharing Agreement was to be used for that purpose only. Having fully understood the purpose of that document, both, 'Parent' and 'Agrawal' signed the Revenue Sharing Agreement on December 11, 2006, with the full agreement and understanding that the "Purchase Agreement" for the 'HTL' was to be expedited and presented to 'Walker' within two weeks as the emailed document which contained the Revenue Sharing Agreement clearly Reflects upon its face.

38. In the time spanning from October 2, 2006, thru the signing of the Revenue Sharing Agreement and thereafter, until mid-February 2007, Kris Agrawal had continually wrongfully stated the condition of the leasehold and the integrity of the equipment located thereon to 'Parent' and 'Walker.'

39. Kris Agrawal had continually and intentionally failed to advise 'Parent' and 'Walker' of the truth in any aspect regarding his handicap being the reason the 'OCC' had failed to let him 'Operate" the leasehold. (See-January 22, 2007 email).

40. The Revenue Sharing Agreement was to act as an official document to appease the 'OCC' in regard to the fact that 'Walker'/'Parent' weren't, and didn't, comprise just another fraudulent act being committed by 'Agrawal' to disguise another 'Agrawal' unlawfully manufactured Insider Entity that was merely attempting to avoid the 'OCC' bond increase, (information that was intentionally withheld from 'Parent' and 'Walker' until after the signing of the 'Revenue Sharing Agreement by 'Parent' and 'Agrawal').

41. On or about January 15, 2007, Parent met Ron Walker in Joplin Missouri. Parent delivered to Ron Walker a specific document titled; "Assignment of Lease Rights," upon and contained within, the purchase terms were fully set out including for the first time an inclusion of evidence that Rodger Sparkman possessed a "first Lien" upon the "stocks" of 'Online.'

42. This was the first time 'Agrawal' had made known the existence of Rodger Sparkman and his interest claimed upon the 'HTL,' to both, 'Parent' and Ron Walker.

43. Kris Agrawal never told 'Parent' nor 'Walker that his Surety Bond had been raised to $100,000.00 until mid February of 2007, after the Revenue Sharing agreement had been signed by 'Parent' and 'Walker.'

44. It was understood by all, 'Agrawal'/'Parent'/'Walker,' that the Revenue Sharing Agreement would only serve to appease the 'OCC' until the "Sales Agreement" could be completed. 'Walker' needed additional time to compile an operational plan which would be sufficient to sustain the act of purchasing the Hill Top Units from 'Agrawal.'

45. 'Agrawal' had, during this time from October 2, 2006, thru February of 2007, repeatedly and continually failed to be truthful with 'Parent' and 'Walker.'

46. Although 'Parent' had continued working for 'Agrawal,' 'Parent' had not been paid as agreed under the "Time Agreement" as agreed to by both, 'Parent' and 'Agrawal' back on October 2, 2006. 'Agrawal,' however continued using 'Time' to create ongoing debt in Western Oklahoma at the Jerry #2 lease without the knowledge and consent of 'Parent.'

47. 'Agrawal' had attempted to coerce 'Parent' into signing two different agreements which He, ('Agrawal') had prepared in an attempt to replace the 'Time' agreement. On both occasions, (late October 2006, and during January of 2007), 'Parent' had advised 'Agrawal' that payment was expected by 'Parent' as agreed to under the 'Time' agreement. Agrawal repeatedly promised to pay 'Parent' his earned bonus percentages, and agreed percentages from production proceeds from the Jerry #2 well, but failed to deliver on his promises.

48. On numerous occasions, 'Agrawal' attempted to convince 'Parent' that 'Parent' should operate the 'HTL' and let 'Walker' go away. 'Parent' advised 'Agrawal' on each occasion that the 'HTL' was too big and too large of an undertaking for 'Parent.' Further, Walker came through with the "Operator" Bond and had been in on-going purchase talks on a consistent basis but 'Agrawal' had evaded the purchase agreement and refused to conclude the purchase agreement with 'Walker.'

49. Upon and after 'Parent' pressuring 'Agrawal' to finish negotiations with 'Walker' concerning the purchse of the 'HTL,' 'Agrawal' again stated that he would do so.

50. From the very first meeting on October 2, 2006, Agrawal' had represented to 'Parent' and thereafter, to 'Walker' that Realty Developers, LLC owned the "HTL' and would sell 'HTL' to 'Walker.'

13

Note: 'Agrawal,' representing 'RDL,' thereafter, presented to 'Parent' a "Lease Assignment Agreement," under the terms of which 'Agrawal' and 'RDL' had agreed to sell the Hill Top Leasehold Units to 'Parent' or any other 'buyer' found by 'Parent.'

51. 'Parent' had "noticed" and "advised" 'Agrawal' from time to time that the Finder's Fee of $25,000.00 was coming due and payable unto 'Parent' by 'Agrawal' at numerous times leading up to the February 28, and March 1, signing and recordation of the Change of Operator Form 1073 by both 'Agrawal' and 'Walker' which completed 'Parent's promise made on October 2, 2006. ('Agrawal' at and upon that signing of the Form 1073, Change of Operator document owed 'Parent' an outstanding amount of twenty-one thousand and five hundred dollars, ($21,500.00), which 'Agrawal' has failed to pay as of the date of this filing of this instant document).

52. Prior to, during, and after, that date in which 'Walker' had provided the Surety Bond, 'Parent' at numerous times, attempted to get 'Agrawal' to pay the balance owed to 'Parent' of twenty-one thousand and five hundred dollars, ($21,500.00), but 'Agrawal' refused to pay as agreed.

53. 'Agrawal', agreed to sell 'Parent,' or any other entity found by Parent, (in early January of 2007, the Hill Top Leasehold for no more than $400,000.00. This was memorialized by 'Agrawal' by his own self-drafted "Assignment of Lease Rights" in a particular format given to 'Parent' by 'Agrawal' in January 2007,
*(such draft was consistent as to form with a similar agreement 'Agrawal' had presented to Pacific Energy and Mining Company in Utah),* and continued thru mid January, 2007 time-frame. 'Agrawal' had repeatedly stated to 'Parent' that the Hill Top Lease was owned at that time, by Realty Developers, LLC., but 'Agrawal' never advised 'Parent' of the ongoing conflicts with Rodger Sparkman and Global Financial, LLC., or the use of and encumbrance of, the Hill Top Red Fork Sand Units 1, 2, 3, and the Cromwell Unit to the benefit of Deep Industries Limited, Coal Gas Mart, LLC, Deep Ch4 Private Limited including the Government of India and other associated commitments of the "HTL.'

14

54. 'Agrawal' in conjunction and association with Pacific Energy and Mining Company, (PEMC), www.pemc.us in Utah, was in negotiations and on-going business dealings with other entities in India, DEEP industries, (DEEP IND), Coal Gas Mart, LLC, and Deep CH4 Private Limited and Adinath Exim Resources, Salva Oil and Gas and others, attempting to acquire Coal Bed Methane (CBM), Blocks being offered by the Indian Government for development and eventual production of Coal Bed Methane gas. Unknowing to 'Parent' at that time, Agrawal had used and listed, the assets known as the 'HTL' in Tulsa County, the Indian Bend Leases in New Mexico, and several other leases operated and possibly owned in part by Pacific Energy and Mining Company and Vance Limited Partnership and others, to reflect Financial Strength and prominence of Coal Gas Mart, LLC to bolster a Financial Statement unlawfully and deceitfully crafted by 'Agrawal' to falsely indicate vast financial worth of Coal Gas Mart, LLC and thereafter delivered to the Indian Government and possibly Deep Industries Limited, Adinath Exim Resources, Salva Oil and Gas, Lanco Infratech,  and others to be discovered in this proceeding.

55. At, and simultaneously, with the offer to sell the 'HTL' to 'Parent' and 'Walker, 'Agrawal' had stated and listed the assets of 'Online' that were, at that same time, previously encumbered by Boatmen' Bank, the FDIC, Bank of America, Global Financial, LLC, the Sparkman's, and Realty Developers, LLC as the Financially Strong and Sound Entity known as Coal Gas Mart, LLC, to the further benefit and use of Deep CH4 Private Ltd, a foreign corporation, securing and guaranteeing to the Indian Government the Financial Worth and Performance Capabilities of his newly formed company called DEEP CH4 Private Limited, (DC4), a then, and present, subsidiary of Coal Gas Mart LLC. ('DC4,' a company limited by shares, was formed November 15, 2006 in India).

56. 'Agrawal' was at that same identical timeframe, faced with Abandonment issues at the near 3000 acre 'HTL', forfeiture of a $50,000.00 bond in New Mexico due to nonpayment of royalties due the Jicarilla Apache Tribe under a farmout agreement with Burlington Resources and Enervest Energy and Elm Ridge Corporation leading to unlawful and bogus assignments of leasehold interests in Utah to Coal Gas Mart, LLC, Deep Coal Gas, LC and Vance 1 Limited Partnership in order to conceal those

15

assets formerly belonging to General Minerals Corporation from pursuit by Burlington, Enervest, Elm Ridge. Bureau of Land Management, MMS, Department of the Interior, and others. 'Agrawal' and On-Line Oil Inc., had become desperate and vulnerable in Oklahoma also, due to non-compliance with pre-existing "Plug or Produce" agreements with the Oklahoma Corporation Commission which had been unfulfilled for over a decade at that time. Those Produce or Plug Agreements were initiated by earlier owners of the 'HTL' and acknowledged and agreed to by 'Agrawal' previously. 'Agrawal' never claimed or stated to 'Parent' at all times relevant to this case, that He, ('Agrawal'), had purchased the 'HTL' from Rodger Sparkman with total knowledge that these agreements had to be honored with the OCC. 'Agrawal' was facing legitimate *Abandonment* and *Cessation of Production* claims which had become valid due to On-Line Oil Inc's abandonment and non-production of the Hill Top Leasehold Units for over a year, or since November 2005 when 'Online's last employee (Cody Higdon), quit 'Online' and did not return to work  from a deer hunting trip. In all reality, under the statutory requirements governing oil and gas in Oklahoma, On-Line Oil Inc., under cessation of production standards and definitions, had abandoned the 'HTL' Units.

57. Both, 'Parent' and 'Walker' after CO&G Production Group, LLC had spent thousands of dollars and 'Parent' had invested untold hours of labor, guidance, and time and attention to the project, figured out that 'Agrawal' had his Operator's Bond for 'Online' raised due to non-compliance and other environmental issues at the 'HTL' to a staggering $100,000.00 on November 10, 2005. 'Agrawal' had purposefully failed to be forthright and honest and truthful with both, 'Parent' and 'Walker' and CO&G Production Group, LLC during the many weeks of discussions and negotiations which had ensued between the parties.

58. According to facts stated to 'Parent' by Kris Agrawal, the 'Agrawals,' back at that time were financially unable to raise that amount due debts incurred associated with Kris Agrawal's handicap.

59. 'Parent' and 'Walker, after and upon reasonable reliance upon the terms of previous offers, promises, and representations made by 'Agrawal,' eventually learned that the

Oklahoma Corporation Commission (OCC), had already forfeited 'On-Line's former Operator's Bond of $25,000.00, (2005), and used that money to plug certain wells which were scheduled to be plugged for non-operation and repeated non-compliance with produce or plug agreements and previously agreed to by attorneys for 'Online' before 'Agrawal' assumed operations of the 'HTL." 'Agrawal' had defied the 'OCC's orders and for six years operated the 'HTL' out of compliance.

## RELEVANT HISTORICAL FACTS
## NEVER REVEALED TO 'PARENT' OR 'WALKER' BY 'AGRAWAL'
## "THE PLAN" AND CONTINUATION OF AN "UNLAWFUL PATTERN"

60. Out of desperation and fear of abandonment, and having possibly forfeited the 'HTL' back to Rodger Sparkman, due to abandonment and Cessation of production and failing to make the payments as agreed, in addition to realizing that the 'OCC' would forfeit any new Bond posted by On-Line Oil Inc., Kris Agrawal and Newton Agrawal with the aid of Amy Agrawal posing as, and thereafter being identified as signatory, had previously conspired and thereafter, attempted to deceive the 'OCC' by falsely claiming that an unlawful sale of On-Line Oil Inc.'s interest had transpired resulting in assignment of the Hill Top Lease into the name of another of their insider owned entities, ('enterprises'), known as Coal Gas USA LLC.

61. The 'OCC' immediately recognized that attempt by the 'Agrawals' to deceive the 'OCC' and circumvent' it's previous Orders setting out the Bond Increase, and denied the three 'Agrawals' unlawful attempt to commit that fraudulent act in early 2006.

62. 'Agrawal' was then desperately in need of someone unknowing of the circumstances, to use as an innocent and unknowing victim, (Unknowing Passive Instrument), to again unlawfully attempt to deceive the 'OCC' and Global Financial LLC and Rodger Sparkman.

63. 'Parent' was unknowingly at that time, used as the *innocent victim,* 'tool' through the use of the 'Agrawals' conspiracy to circumvent the now $100,000.00 Bond increase assessed on On-Line Oil. 'Agrawal,' knowingly and deliberately misled 'Parent.' Upon later questioning by 'Parent,' 'Agrawal' intentionally and untruthfully stated to 'Parent,' that the OCC would not let him, ('Agrawal') operate the Hill Top Lease *"due*

17

*to his Handicap."* (see email to Ron Walker dated January 22, 2007), 'Agrawal'
intentionally lied to Parent and deliberately failed to truthfully advise Parent of all
the other relevant extenuating circumstances that were ongoing and involving On-
Line Oil Inc., and as a result of 'Agrawal's untruthfulness to 'Parent,' caused severe
detrimental and proximate harm and injury to 'Parent' and 'Walker' and 'CO&G
Production Group, LLC' Gregory Williams, the Bankruptcy Court of the Western
District of Oklahoma and their associated creditors, and many others.

64. 'Parent,' acting under information and belief provided by Kris Agrawal, sought buyers
    and operators for the Hill Top Leasehold, *(HTL, Operation and Acquisition),* and over
    the ensuing months, among those individuals to whom 'Parent' presented the "deal," was
    Ron Walker, (hereinafter 'Walker'), who soon thereafter became the operator and buyer.
    Unknowing to 'Parent' and 'Walker' at and during the next few months, 'Agrawal' was,
    or had, already been considering the act of committing all the Hill Top Leasehold 'Units'
    including all the existing equipment, as assets which had been encumbered, and financially
    committed, to the Financial Worthiness of DEEP CH4 Private Limited and its Parent
    Company, Coal Gas Mart, LLC who had become the successful bidder on two Coal Bed
    Methane Blocks in India which required proof of Financial Strength sufficient to
    guarantee success by the Parent company of Deep CH4 Private Limited. Coal Gas Mart,
    LLC by and through the use of the Hill Top Leasehold 'Units,' the Indian Bend Leases
    and other such leaseholds, (most of which are fictitious or deliberately falsely identified
    repeatedly and with intended confusing descriptions), was able to falsely project the
    required financial standing of Coal Gas Mart, LLC to the Government of India and
    others.   www.deepindustries.com

65. 'Walker' agreed to purchase the Hill Top Leasehold in total understanding with Kris
    Agrawal that Realty Developers, LLC, owned the entire leasehold and all associated
    equipment located thereon free and clear from any and all encumbrances and outside
    Third Party interest owners. Walker formed CO&G Production Group, LLC, and in
    January 2007 began immediately spending substantial sums of money in order to clean
    up the waste, correct and repair leaks, paint, gather equipment and pipe and other
    associated items and began to improve the general appearance of the entire leasehold.

18

66. 'Walker' and 'CO&G' Production Group, LLC had the full intent of purchasing the 'HTL' Leasehold and had begun immediately improving its general appearance. 'CO&G' continuously thereafter, faced many other issues dealing with the most often non-visible issues of the lease upon his arrival there as the new operator and buyer of the Hill Top Leasehold.

67. On <u>February 28, 2007,</u> 'Agrawal,' signed the Oklahoma Corporation Commission's Form 1073, (Change of Operator form), for On-Line Oil Inc., and by such act, transferred the Operational Rights of the Hill Top Leasehold Units 1, 2, 3, and the Cromwell Unit over and unto 'Walker's company, CO&G Production Group, LLC.

68. On <u>March 1, 2007,</u> 'Walker' signed the Oklahoma Corporation Commission, (hereinafter referred to as 'OCC'), Form 1073 as required by the 'OCC.'

69. 'Agrawal,' having repeatedly promised to sell the Hill Top Leasehold Units to 'Parent'/ 'buyer'/ 'Walker,' since November 2006, and upon and after, realizing that CO&G was spending very sizeable dollars with the full and continuous intention of buying the Hill Top Leasehold, *(prolonged due to 'Agrawal's' premeditated delays due to litigation with Rodger Sparkman and Global Financial, and the previous commitment of Hill Top Leasehold assets to meet bid requirements of the Indian Government and other publicly traded entities in India and the United States, including 'PEMC,' all of which, was unknown and never disclosed by 'Agrawal' to 'Parent' and 'Walker'),* soon found himself in a dilemma.

70. 'Agrawal' realized that he had misrepresented to 'Parent' and 'Walker' on numerous prior occasions that Realty Developers, LLC owned the Hill Top Leasehold free of any encumbrance, due to its, ('RDL'S), <u>*lien foreclosure*</u> previously, *(prior to signing of Revenue Sharing Agreement),* foreclosure upon On-Line Oil Inc., and, 'Agrawal,' realizing that such untruthful statements made by himself, <u>were untrue</u>, realized that his own immediate need to evade and delay the purchase agreement, *(see email dated December 11, 2006 from Ron Walker to Kris Agrawal and Jerry Parent stating upon its face the prevalent issue of concluding the purchase agreement),* would soon come to the surface and cause 'Agrawal' to have to commit many acts of Fraud against

19

'Walker'/'Parent, Rodger Sparkman, Global Financial,LLC the Bankruptcy Court of the Western District of the State of Oklahoma and its associated Creditors.'

71. 'Agrawal,' thereafter, attempted to defraud 'Parent' and 'Walker' by and through a series of ongoing conspiracies with the prior conspiring and pre-approval of the other 'Agrawal' defendants, by and through a series of premeditated acts and unlawful deeds, consisting of 'offers to confess judgment" to Global Financial, LLC, a series of fraudulent Insider Assignments, offers to guarantee Rodger Sparkman that he, ('Agrawal') would re-pay to 'Sparkmans' any payments made by 'Sparkmans' to Global Financial, LLC to the further benefit of 'Online.'

72. 'Agrawal,' due to his ongoing commitments in India to the benefit of Deep Industries Limited, Coal Gas Mart, LLC, Deep CH4 Private Limited, the 'Agrawal Family' and others, with whom 'Agrawal' had entered into various agreements with, soon began to fabricate causes for which to renege on the Purchase Agreement, and refused to consummate the purchase agreement with 'Walker' and CO&G Production Group, LLC and stall and delay on his promise to sell the Hill Top Leasehold 'Units' to 'Parent' and 'Walker' and 'CO&G Production Group, LLC.

73. Note: (Coal Gas Mart, LLC had been awarded, as successful bidder, two Coal Bed Methane Blocks in India on September 29, 2006. The Blocks awarded to Coal Gas Mart, LLC and Deep Industries Ltd were, CBM Block SR (N) CBM 2005 III and GV (N) CBM 2005 III) thus, creating an immediate need to show sufficient assets reflecting "financial strength" of Coal Gas Mart, LLC, operating at that time as the "Parent Company of Deep CH4 Private Limited."

74. This commitment, founded upon promises made by 'Agrawal' to various other entities, both foreign and domestic, while negotiating a purchase agreement with 'Parent' and 'Walker' caused 'Agrawal' to be forced to unlawfully fabricate a series of assignments, transfers, acts of conversion of assets with the intention to facilitate the commitment of exploring for Coal Bed Methane Gas in India leading to the eventual unlawful commission of several acts of Racketeering thereafter damaging 'Parent,' 'Walker,' CO&G Production Group, LLC,' the Bankruptcy Court of the Western District of the State of Oklahoma and its associated creditors of On-Line Oil Inc., and Gregory

20

Williams, and countless others yet to be identified through discovery in this instant case.

75. 'Walker,' 'Parent,' and 'Agrawal' had a clear understanding that any and all amounts spent by 'Walker' and 'CO&G' was to be fully recovered and paid back to 'Walker' from all proceeds from the 'Operations' of the Hill Top Leasehold 'Units' and such re-imbursements would be deducted from all proceeds generated from product sales of oil and gas from the leasehold 'Units' simply because 'Walker' and 'Parent' and 'Agrawal' had already jointly agreed and determined that 'Walker' could buy the entire Hill Top Leasehold 'Units' for a reduced price of no more than $300,000.00. That purchase amount was inclusive of any and all outstanding monies owed to all creditors, and 'Agrawal' guaranteed 'Parent' that Realty Developers, LLC, owned free and clear of any and all encumbrances of any sort, the entire Hill Top Leasehold 'Units' 1,2,3, and the Cromwell Unit as stated by 'Agrawal' to 'Parent' and further stated by 'Parent' to 'Walker' on post "Revenue Sharing" signing date as stated to 'Parent' by 'Agrawal' on numerous prior occasions during previous meetings between 'Parent' and 'Agrawal'.

76. To the surprise and disappointment of both, 'Parent' and 'Walker' it was later discovered after CO&G Production Group, LLC had spent thousands of dollars in development and improvements upon the 'HTL,' that 'Agrawal,' had previously encumbered, sold, traded, *(to Newton Agrawal for his 45% stocks and ownership in General Minerals Corp.),* the Hill Top 'Units,' and thereafter, 'Agrawal' desperately needing the Hill Top Leasehold, *(all of which was going on in secret in India and unknown to 'Parent'/'Walker'),* as an asset to bolster and affirm his Financial Statement submitted to the Indian Government, Deep Industries, Adinath Exim Resources and possibly other unknown victims, in order to authenticate the Financial worthiness of Coal Gas Mart, LLC, thereafter, began a continuing series of Fraudulent Acts. (Including assigning leases owned or controlled by General Minerals Corporation in Utah and New Mexico over and unto Deep Coal Gas, LC, and Vance 1 Limited Partnership, and Coal Gas Mart, LLC., to avoid pursuit by the MMS, BLM, Department of Interior, the Jicarilla Apache Indian Tribe, Enervest Energy, Elm

21

Ridge Energy, Burlington Resources, (a division of Conoco-Phillips), all of which 'Agrawal' had "bilked" out of royalties due, including failure to pay fines for environmental destruction on leases operated at that time by General Minerals Corporation, *(a company owned by Vimala Agrawal, Newton Agrawal, and Kris Agrawal),* in New Mexico for royalties not paid from sales of oil and gas from the "Indian Bend" wells and various fines assessed to General Minerals Corp., for environmental damages etc.

### Relevant Facts

77. 'Walker'/CO&G Production Group LLC in March of 2007 posted the required $25,000.00 Operator's Bond with the 'OCC' and began serious expenditures to upgrade the overall Hill Top Leasehold on the strength and belief and reasonable reliance upon the terms of 'Agrawal's purchase offer, promises, and representation made by 'Agrawal,' that the purchase of the Hill Top Leasehold would be no more than the three hundred thousand dollars as 'Agrawal' had by now previously stated many times.

78. Upon 'Walker's Plugging Bond having been submitted to the 'OCC,' the Revenue Sharing Agreement, signed by 'Parent' and 'Agrawal' on December 11, 2006, was now a moot document, (no monies were owed Realty Developers, LLC), having met its desired and intended purpose of preventing the 'OCC' from plugging more wells, and the Revenue Sharing document as intended, had allowed 'Walker' the additional time necessary, to acquire operating funds required to bring the leasehold into compliance environmentally and satisfy the pre-existing 'OCC' concerns and additionally, the Revenue Sharing Agreement allowed 'Walker' the additional time needed to assess the value of the Hill Top Leasehold 'Units' further allowing him time to negotiate 'the purchase agreement' with 'Agrawal.'

79. 'Agrawal,' had access to full knowledge and information of CJ-2005-0456 in Tulsa County and knowingly and purposefully, thereafter failed to advise 'Parent' and 'Walker' of the issues in that case. 'Agrawal', failed also to advise 'Parent' and 'Walker' of his, ('Agrawals') unlawful commitment of the Hill Top Leasehold in India as collateral used in India to meet the ongoing financial commitments of Coal Gas Mart,

LLC, and Deep CH4 Private Limited in the exploration and development of coal bed methane gas fields there.

## ALLEGATIONS AGAINST THE CORPORATIONS
## WHO CONSPIRED TO AID AND ABET
## THE AGRAWALS
## Herein, "THE CONSORTIUM" DEFENDANTS

80. Mar/Reg Investments is believed to operate in or near Reno, Nevada and has enacted several associated business ventures either directly, or indirectly, with Kris Agrawal, Newton Agrawal and General Minerals Corporation and On-Line Oil Inc., and Coal Gas Mart, LLC, and Deep CH4 Private Limited according to recent press releases on Pacific Energy and Mining Company's website and Deep Industries Limited's website listing co-owned leaseholds as assets associated with and/or belonging too, and reflecting the Financial Strength of Coal Gas Mart, LLC. Mar/Reg Investments and/or Mar/Reg Oil Company may claim an interest in the Hill Top Leasehold Units and with the aiding and abetting, and unlawful acts of others used by Kris K. Agrawal as "Passive Instruments" at times and as "co-conspirators" at times and upon acting with others thereby associated have caused the damages suffered by 'Parent,' CO&G Production Group, LLC and others, in this action.

81. Mar/Reg Oil Company, is believed to be operating in or near Reno, Nevada and possesses "non-operated (oil and gas), well interests in Oklahoma." Mar/Reg Oil Company does business in New Mexico, Oklahoma, Utah, and has taken over Operations of certain wells formerly operated by General Minerals Corporation in Utah and has on-going business associations with Kris Agrawal and General Minerals and On-Line Oil Inc., Coal Gas Mart, LLC, Deep CH4 Private Limited and Deep Industries Limited in India, according to recent press releases on Pacific Energy and Mining Company's website and Deep Industries Limited's website listing co-owned/operated leaseholds as assets associated with and/or belonging too, and reflecting the Financial Strength of Coal Gas Mart, LLC. Mar/Reg Investments and/or Mar/Reg Oil Company may claim an interest in the Hill Top Leasehold Units and with the aiding and abetting, and unlawful acts of others used by Kris K. Agrawal as

"Passive Instruments" at times and as "co-conspirators" at times and upon acting with others thereby associated have caused the damages suffered by 'Parent,' CO&G Production Group, LLC and others, in this action.

82. Coal Gas Mart, LLC, is an Oklahoma limited liability company that does business in Tulsa County, Oklahoma and in India and conducts its day to day business affairs from 4133 North Lincoln Blvd., Oklahoma City, Oklahoma and upon contemplating a Bankruptcy filing by On-Line Oil Inc; and in an attempt to conceal and evade the oncoming litigation pursuit of Global Financial and Rodger Sparkman, and contemplating the oncoming litigation with CO&G Production Group, LLC; and in dire need of assets to falsely present to Deep Industries Limited, the Indian Government, and others thereby associated; and in order to falsely project financial strength of Coal Gas Mart, LLC., to the further benefit of Deep CH4 Private Limited; such financial strength, or the appearance of such financial strength, was desperately needed by the 'Defendants' in order to secure the bids submitted to the Indian Government; and guarantee their bidding success in the acquisition of Coal Bed Methane Blocks offered to the highest and most capable bidder.

83. Coal Gas Mart, LLC, conducts ongoing business dealings in partnership with Deep Industries Ltd, Lanco Infratech, Deep Energy, LLC, Pacific Energy and Mining Company in Utah, (hereinafter, 'PEMC'), Mar/Reg Investments, Realty Management Associates, Mar/Reg Oil Company in Utah, and New Mexico, and Adinath Exim Resources limited in India, Burlington Resources, Elm Ridge Energy, and Enervest Energy, and with the aiding and abetting, and unlawful acts of others used by Kris K. Agrawal as "Passive Instruments" and/or 'association-in-fact enterprises' at times and as "co-conspirators" at times and upon acting with others thereby associated have caused the damages suffered by 'Parent,' CO&G Production Group, LLC and others, in this action.

84. Coal Gas USA, LLC, is an Oklahoma limited liability company that does/did business in Tulsa County, Oklahoma that allegedly "quit business after March 2006" and "after 2007," and therefore, contemplating Bankruptcy filing by On-Line Oil Inc; and in an attempt to conceal and evade potential pursuit of the Oklahoma Corporation

24

Commission, Global Financial and Rodger Sparkman; and contemplating litigation with CO&G Production Group, LLC; and in need of assets to falsely present to Deep Industries Limited, Deep Energy LLC, the Indian Government and others thereby associated in order to falsely project financial strength of Coal Gas Mart, LLC., to the further benefit of Deep CH4 Private Limited; and such being needed by the 'Agrawals' in order to secure the bids submitted to the Indian Government to guarantee bidding success in the acquisition of Coal Bed Methane Blocks offered to the highest and most capable bidder. Newton Agrawal conspired with others thereby associated with him and thereafter, enacted the aiding and abetting of, and caused unlawful acts to be committed by others and used by Kris K. Agrawal as "Passive Instruments" at times and as "co-conspirators" at times and upon acting with the others thereby associated, have caused the damages suffered by 'Parent,' CO&G Production Group, LLC and others, in this action.

85. Realty Management Associates, LLC is an Oklahoma limited liability company that does business in Tulsa County, Oklahoma. Kris Agrawal is the alleged and previously stated, *"sole member and manager of Realty Management Associates, LLC.,"* according to his Affidavit submitted in a recent Oklahoma Department of Labor legal proceeding on March 28, 2010 and as further stated upon its IRS Form 8832 dated February 23, 2009 and with the aiding and abetting, and unlawful acts of others used by Kris K. Agrawal as "Passive Instruments" at times and as "co-conspirators" at times and contemplating Bankruptcy filing by On-Line Oil Inc; and in an attempt to conceal and evade potential pursuit of the Oklahoma Corporation Commission, Global Financial and Rodger Sparkman, and contemplating litigation with CO&G Production Group, LLC; and in need of assets to falsely present to Deep Industries Limited, Deep Energy LLC, the Indian Government and others thereby associated in order to falsely project financial strength of Coal Gas Mart, LLC., to the further benefit of Deep CH4 Private Limited; such being needed by the 'Agrawals' in order to secure the bids submitted to the Indian Government to guarantee bidding success in the acquisition of Coal Bed Methane Blocks offered to the highest and most capable bidder; Newton Agrawal and others thereby associated with him, enacted the aiding and abetting, and unlawful acts of others used by Kris K. Agrawal as "Passive Instruments" at times and as "co-conspirators" at times and

25

upon acting with others thereby associated have caused the damages suffered by 'Parent,' CO&G Production Group, LLC and others, in this action.

86. Pacific Energy and Mining Company (PEMC) is a Utah Corporation and publicly traded company that does business in Oklahoma attaining some of its publicly traded values from assets belonging to, or associated with General Minerals Corp., Vance 1 Limited Partnership, Vance Limited Partnership, On-Line Oil Inc, Coal Gas Mart, LLC, Deep CH4 Private Limited, and/or other 'Agrawal' insider owned entities and with the aiding and abetting, and unlawful acts of others used by Kris K. Agrawal as "Passive Instruments" at times and as "co-conspirators" at times and upon acting with others thereby associated have caused the damages suffered by 'Parent,' CO&G Production Group, LLC and others, in this action.

87. Deep CH4 Private Limited is a foreign corporation operating in India as company number U14292GJ2006PTC049371, and is associated with Coal Gas Mart, LLC, and with the aiding and abetting, and unlawful acts of others used by Kris K. Agrawal as "Passive Instruments" at times and as "co-conspirators" at times and upon acting with others thereby associated has caused the damages suffered by 'Parent,' CO&G Production Group, LLC and others, in this action.

88. Adinath Exim Resources Limited is a foreign company and it does business with Coal Gas Mart, LLC, of Oklahoma and Deep CH4 Private Limited, a subsidiary of Coal Gas Mart, LLC according to documents submitted to the Directorate General of Hydrocarbons in India and with the aiding and abetting, and acts of others used by Kris K. Agrawal as "Passive Instruments" at times and as "co-conspirators" at times and upon acting with others thereby associated have caused the damages suffered by 'Parent,' CO&G Production Group, LLC and others, in this action.

89. Deep Natural Resources Ltd. is a foreign company possibly operating in Oklahoma with offices at 4133 North Lincoln Blvd. in Oklahoma City, Oklahoma and doing business in collusion with Coal Gas Mart, LLC and Deep CH4 Private Limited, a subsidiary of Coal Gas Mart, LLC., in which the assets/interests belonging in part to 'defendant' and other

parties of interest in this case may have been committed, diluted, concealed, or disposed of and with the aiding and abetting, and acts of others used by Kris K. Agrawal as "Passive Instruments" at times and as "co-conspirators" at times and upon acting with others thereby associated have caused the damages suffered by 'Parent,' CO&G Production Group, LLC and others, in this action.

90. Rodger Sparkman is a resident of Oklahoma and conducts business in Tulsa County, Oklahoma and may have knowledge and information reflecting the validity, or lack thereof, of the Over Riding Royalty Interest and $250,000.00 Mortgage against On-Line Oil Inc, executed by Kris Agrawal on February 5, 2001 and April 9, 2002, and again on May 27, 2005, (document No. 2005006632024), respectively. Rodger Sparkman and Kris Agrawal may have conspired to deceive creditors owed by Kris Agrawal, On-Line Oil Inc., and the Rodger and Lavella Sparkman revocable trust possibly including, but not limited to, the Bankruptcy Court of the Western District of the State of Oklahoma and the associated Creditors of that action in Case No. WV-09-13006 the Chapter 7 Liquidation Bankruptcy Proceeding of On-Line Oil Inc. and these acts may have a direct affect on the Creditors in the ongoing Chapter 7 Liquidation Bankruptcy case of GEO Exploration, LLC in case no. WV-09-14024 filed on July 27, 2009 in the Western District of the State of Oklahoma and with the aiding and abetting, and unlawful acts of others used by Kris K. Agrawal as "Involuntary and Unknowing, Passive Instruments" at times and as "co-conspirators" at times and upon acting with others thereby associated have caused the damages suffered by 'Parent,' CO&G Production Group, LLC and others, in this action.

91. Realty Developers, LLC, is an Oklahoma Limited Liability company that does business in Tulsa County, Oklahoma and has been used by the 'Agrawals' for over a decade as an unlawful tool designed to "Bleedout" the assets of On-Line Oil Inc. Thereafter, Kris Agrawal assumed the pre-conceived role of "White Knight" "Bleedout" perpetrator designed to willfully and knowingly steal, and thereafter attempted to conceal, the assets of On-Line oil Inc., and attempted to evade creditor pursuit of On-Line Oil Inc. Realty Developers, LLC., operates with the unlawful aiding and abetting of others as "Passive Instruments" at times and as "co-conspirators" at times and upon acting with others thereby associated has caused the damages suffered by 'Parent,' CO&G

27

Production Group, LLC and others, in this action. Realty Developers, LLC's claim of any interest in the Hill Top Leasehold has been disputed by Gregory Williams, the other 32% lawful owner in Realty Developers, LLC at, and during the time Realty Developers LLC's claims have been asserted. Realty Developers, LLC however, did not appear on the appropriate Bankruptcy Schedules of On-Line Oil Inc., as a "secured" party in interest or an "unsecured" party in interest. Realty Developers, LLC did not appear as a secured party in interest in case no. CJ-2005-0456 during pleadings associated with that case. The Affidavit submitted by Gregory Williams in November of 2011 clearly states that it is his belief that the mortgage and 50% overriding royalty interests claimed by Realty Developers, LLC are unlawful, bogus, and baseless and were merely designed from conspiracy to commit fraud.

92. On-Line Oil Inc., is an Oklahoma Corporation that does/did business in Tulsa County Oklahoma and allegedly "quit business in March 2006" *(ref. Exhibit B - 'Agrawal's pleadings in Oklahoma Department of Labor cases in 2010 and currently ongoing in Oklahoma County and ensuing statements made in his affidavit and submitted to the Court in that proceeding).* On-Line Oil Inc., was used by the 'Agrawals' as an "enterprise" designed through premeditated conspiracy to create an unlawful debt delivered in and to the advantage of Realty Developers, LLC., through a false and illegal Mortgage and unlawful 50%Over Riding Royalty Interest designed to generate funding from which other enterprises could be established and thereafter used as "Parallel" entities formed to further the Racketeering activity, (the "Pattern"). Continuous and on-going today, one or more of the 'Agrawals' continues with the aiding and abetting, and enactment and commission of the unlawful acts of others who are often times used by Kris K. Agrawal as "Passive Instruments" at times and as "co-conspirators" at times and upon acting with others herein named and thereby associated have caused the damages suffered by 'Parent,' CO&G Production Group, LLC and others, in this action in direct or indirect and intentional violation of 18 U.S.C. 1962 (A), (B), (C) and (D). 11 U.S.C. § 152 (1), (5), (7), 11 U.S.C. § 152  Pre-petition transfers, concealed assets, false statements to the Court at the 341 meetings of Creditors or in Court filed documents such as Schedules and Statement of Financial Affairs, 18 U.S.C. 1961, 1(b) §1341 Mail Fraud, Misrepresentations and the use of U.S. Mail, 18 U.S.C. 1961, 1(b) §1343 Wire Fraud,

Misrepresentations and the use of interstate wires, 11 U.S.C. Section 157 Using Bankruptcy to aid the Fraud Scheme, 26 U.S.C. Section 7201-7203 failure to pay Withholding taxes and other taxes).

93. General Minerals Corporation is/was an Oklahoma Corporation doing business in Oklahoma, Utah, and New Mexico and was part of a stock trade transaction involving the stocks of On-Line Oil Inc., in December of 2000 and with the aiding and abetting, and thereafter premeditated unlawful acts of others, including, but not limited to, Newton Agrawal, used by Kris K. Agrawal as "Passive Instruments" at times and as "co-conspirators" at times and upon acting with others thereby associated have contributed to and caused the damages suffered by 'Parent,' CO&G Production Group, LLC and others, in this action.

## SPECIFIC ALLEGATIONS AGAINST INDIVIDUALS
## WHO CONSPIRED TO COMMIT FRAUD UPON THE PLAINTIFF
## AND CO&G PRODUCTION GROUP AND OTHERS

### COUNT I

94. Kris Agrawal "traded" the "stocks" of 'On-Line Oil Inc. to Newton Agrawal on December 26, 2000, for Newton Agrawal's (45%), interest in General Minerals Corporation.

95. Upon information, and belief, Boatmen's Bank, FDIC, Bank of America, Global Financial had a "superior" claim on those "stocks" of 'On-Line Oil Inc.,' at that time.

96. Kris Agrawal's act of "trading" the "stocks" of 'On-Line' in December 2000 is outside the Statute of limitations unless, you carry that act thru the May 27, 2005 re-assignment of the April 9, 2002 Mortgage and UCC-I, (wherein in on May 27, 2005 upon the UCC-I attached Kris Agrawal acknowledged the claims of a financial institution as evidenced by his own handwriting upon the UCC-I document).

97. On January 23, 2005, Global Financial filed suit against Rodger Sparkman, the Rodger and Lavella Revocable Trust and 'On-Line.'

## COUNT II

98. On February 5, 2001, Kris Agrawal and Vimala Agrawal caused 'On-Line' to assign and convey a 50% ORRI unto Realty Developers, LLC and through such, damaged Boatman's Bank, (later acquired by Global Financial, from Bank of America), a financial institution), by diluting its 'superior' and lawful interest thereto by virtue of its prior commitment and claims granted in 1997 given to Global Financial by Howard Rongey and Rodger Sparkman.

## COUNT III

99. On April 9, 2002, Kris Agrawal and Vimala caused 'On-Line' to assign 'Realty' a $250,000.00 Mortgage with a UCC-I attached, (encumbering all equipment and pipe and compressors and pump-jacks etc., upon or associated with the 'HTL'), against the assets of 'On-Line' that were still encumbered by Boatman's Bank at that time, and through such, damaged Global Financial (a financial institution) by diluting its 'superior' and lawful interest thereto by virtue of its prior commitment and claims in 1997 given to Global Financial by Howard Rongey and Rodger Sparkman.

## COUNT IV

100.   On May 27 1995, (after Global filed its lawsuit in Tulsa County in case no. CJ-2005-0456) on January 23, 2005, Kris Agrawal and Vimala Agrawal re-filed Realty Developers, LLC's $250,000.00 Mortgage and accompanying UCC-I documents attached, (encumbering all equipment and pipe and compressors and pump-jacks etc. upon or associated with the 'HTL' stating therein in handwritten form, "except that encumbered by a financial institution" attached (encumbering all equipment and pipe and compressors and pump-jacks, vehicles, etc. upon or associated with the 'HTL'),

30

101.   The 'AST' was in the business of providing funding to its other entities, (LLC's and Corporations) owned /operated by family insiders. Although its normal interest rates seem lawful and fair, the additional acquisition of an un-common Over Riding Royalty Interest, (herinafter, 'ORRI'), given to the 'AST' or its associated "enterprises" and the language associated with that 'ORRI' assignment is stated to be given as an assignment in the Net Revenue Interest, (hereinafter, NRI), is in excess and far beyond that of normal usury expectations as a lawful return on monetary use and in violation of 18 U.S.C. §1961 (6), (B), "unlawful debt", "where the usurious rate is at least twice the enforceable rate;"

102.   Federal Rule 9 (b) requires "predicate acts" based on fraud to be pled with specificity to provide clear factual notice of the factual basis for the predicate acts. (End of citation).

103.   Fed. R. Civ. P. 9, (b), (identifying the time, place and contents of the misrepresentations or omissions, and the identity of the persons to whom and by whom the misrepresentations were made);

104.   Actionable fraud includes; (1), a representation; (2), that is false; (3), that is material; (4), the speaker's knowledge of its falsity or ignorance of its truth; (5), the speaker's intent it be acted on; (6), the hearer's ignorance of the falsity of the representation; (7), the hearer's reliance; (8), the hearer's right to rely on it; and (9), injury."

   (1) **a representation;** (A), Kris Agrawal, at all times relevant to this case, (October 2, 2006 thru December 11, 2006), and during any and all discussions prior to the signing of the Revenue Sharing Agreement on December 11, 2006, stated factually, and repeatedly, to 'Parent' that Realty Developers, LLC, owned the Hill Top Leasehold Lease Units 1, 2, 3, and the Cromwell Unit in Tulsa, County consisting of roughly 3000 acres of oil and gas acreage holdings. 'Agrawal' further stated that Realty Developers, LLC, did not owe any outstanding third party or otherwise, debts associated with the leasehold. Kris Agrawal never, ever, once mentioned to 'Parent' or 'Walker' that On-Line Oil Inc., had sold the Hill Top Units to anyone during the course of these negotiations.

31

(B), Kris Agrawal stated as fact to 'Parent' at all times relevant and during any and all discussions prior to the signing of the Revenue Sharing Agreement, (October 2 thru December 11, 2006), on December 11, 2006, that He, 'Agrawal' would pay 'Parent' a twenty-five thousand dollar finder's fee if 'Parent' could find a legal operator to operate the Hill Top Leasehold.

(C),  Kris Agrawal stated to 'Parent' during the month of January, 2007, that He, ('Agrawal'), would accept the three hundred thousand dollar offer 'Agrawal' delivered to 'Parent' to further present and hand deliver to 'Walker,' along with other hand written and computer generated forecasts projecting the production level expectations to be calculated and relied upon by 'Parent' and 'Walker'. Said information and forecasts were presented as verbal and written expectations and related promises made by 'Agrawal' to 'Parent' and delivered by 'Parent' over and unto 'Walker' as factual past historical and reasonable and reliable facts previously prepared and self-constructed, (by 'Agrawal'), and contained Kris Agrawal's proclaimed futuristic expectations on which 'Parent' and 'Walker would each rely upon as allegedly and physically documented by 'Agrawal.' Said documents and verbal representations included production and performance expectations on which 'Parent' and 'Walker' could rely as factual representations regarding the overall condition of the leasehold and the attached equipment and included statements in regard to the down-hole integrity of the subsurface equipment located thereon.

(D), On several occasions before and after the signing of the Revenue Sharing Agreement and the verbal acceptance of the Sale Offer presented to both 'Parent' and 'Walker,' Kris Agrawal consistently throughout those encounters/meetings/ agreements, made statements exactly coinciding with the statements identified and set out below;

- Upon and within a document titled, <u>"OBJECTION TO CO&G GROUP MOTION FOR PARTIAL SUMMARY JUDGMENT AND MOTION FOR PARTIAL SUMMARY JUDGMENT OF REALTY DEVELOPERS, LLC AGAINST CO&G PRODUCTION GROUP, LLC AND JERRY PARENT AND BRIEF,"</u> filed on

<u>February 7, 2011</u>, at page 2 at item 9, Kris Agrawal, entered into that document as his testimony and fact, the following;

- "Realty was formed on <u>October 17, 2000</u> as per articles of Incorporation of Exhibit "E." "It had the right to enter into Revenue Sharing Agreement *by virtue of mortgage default by On-Line Oil, Inc.*"

  (E), In contrast to the above cited items, on September 16, 2009 Kris Agrawal made the following statement;

- Note: Refer to first 341 hearing of creditors conducted on September 16, 2009 in GEO Exploration LLC, Chapter 7 liquidation Bankruptcy proceedings filed on July 27, 2009 in the Western District of the State of Oklahoma as case no. WV-09-14024; Where Kris Agrawal, being under oath and sworn in by L. Holbrook, Trustee, Kris Agrawal stated;

- Gregory Williams, being first recognized by the Bankruptcy Court asked the following question;

- "When did Realty Developers, LLC, acquire On-Line Oil?

- Kris Agrawal answered, "<u>It never did.</u>"

  (2) **that is false**; Kris Agrawal, during the course of all conversations, negotiations, and meetings never, ever, mentioned, indicated, or implied, or inferred to 'Parent' or 'Walker' that On-Line Oil Inc., had sold, conveyed, mortgaged, partially conveyed, or in any way encumbered any of Online Oil Inc.'s interests to any other entity, other than Realty Developers, LLC, nor, did 'Agrawal' ever mention the following to 'Parent' or 'Walker;'

33

- (A). "On August 4, 2006, On-Line Oil Inc. "sold" its interest to Coal Gas USA, LLC who posted a $25,000.00 bond with the Oklahoma Corporation Commission (OCC)."

- The Direct Quote cited at (A), above was taken from a document submitted in Supreme Court of Oklahoma case no. 110,414 filed on March 7, 2012. The document can be found therein at Item C. of Petitioner's Index and contained at item 10. The document from which the direct quote came is titled therein at item ten (10) under article C, as "Plaintiff's Supplement to Emergency Motion to Void Summary Judgment" filed May 23, 2011. (page 2 item G therein).

(3) **that is material**; Located upon and within the Revenue Sharing Agreement the language contained therein clearly indicates and reflects Realty Developers, LLC as the owner of the Hill Top Leasehold Units 1, 2, 3, and the Cromwell Units and repeatedly makes reference to and clearly identifies Realty Developers, LLC, as such owner as stated as follows;

¶ 1 of the Revenue Sharing Agreement states;

- THIS AGREEMENT, made this the 11 day of December, 2006 between Realty Developers, LLC herein after referred to as "Lease Holder." (More not cited).
- ¶ 2 of Revenue Sharing Agreement states;

"Whereas, Lease Holder is the rightful owner of certain mineral rights leases, copies of which are attached hereto, and Lease Holder desires to have the Operator assume responsibility for the production of minerals from said lease holdings and share in the resulting income."

**(4) the speaker's knowledge of its falsity or ignorance of its truth;**

- A. In and during all pleadings associated with and submitted in case no. CJ-2005-0456, filed in Tulsa, County on January 24, 2005 by all parties therewith associated Realty Developers, LLC, never asserted its "Lien," or "Mortgage" therefore, causing

34

the belief that Kris Agrawal's claims asserting Realty Developers, LLC's actual and "lawful" interests and ownership in and to the Hill Top Leasehold are false.

- B. Newton Agrawal signed the Assignment **dated August 4, 2006** as President of On-Line Oil Inc., conveying Oil and Gas Rights unto Coal Gas USA, LLC, which was also owned and controlled by him.

- C. Realty Developers, LLC, was not listed or otherwise stated or recognized by Newton Agrawal upon any of the Secured Creditor or Unsecured Creditor Schedules in the Chapter 7 Liquidation proceedings of On-Line Oil Inc., in case no. WV -09-13006 filed in the Western District of the State of Oklahoma on June 5, 2009.

(D), On several occasions before and after the signing of the Revenue Sharing Agreement and the verbal acceptance of the Sale Offer presented to both 'Parent' and 'Walker,' Kris Agrawal consistently throughout those encounters/meetings/ agreements, made statements exactly coinciding with the statements identified and set out below;

- Upon and within a document titled, <u>"OBJECTION TO CO&G GROUP MOTION FOR PARTIAL SUMMARY JUDGMENT AND MOTION FOR PARTIAL SUMMARY JUDGMENT OF REALTY DEVELOPERS, LLC AGAINST CO&G PRODUCTION GROUP, LLC AND JERRY PARENT AND BRIEF,"</u> filed on February 7, 2011, at page 2 at item 9, Kris Agrawal, entered into that document as his testimony and fact, the following;

- "Realty was formed on <u>October 17, 2000</u> as per articles of Incorporation of Exhibit "E." "It had the right to enter into Revenue Sharing Agreement *by virtue of mortgage default by On-Line Oil, Inc.*"

(E), In contrast to the above cited four items on September 16, 2009 Kris Agrawal made the following statements while under Oath;

- Note: Refer to first 341 hearing of creditors conducted on September 16, 2009 in GEO Exploration LLC, Chapter 7 liquidation Bankruptcy proceedings filed on July 27, 2009 in the Western District of Oklahoma as case no. WV-09-14024; Kris Agrawal, being under oath as sworn in by L. Holbrook, Trustee, Kris Agrawal stated;

- Gregory Williams, being first recognized by the Bankruptcy Court asked the following question;

- "When did Realty Developers, LLC, acquire On-Line Oil?

- Kris Agrawal answered, "It never did."

 (5) **the speaker's intent it be acted on**;  'Parent' and 'Agrawal' signed the Revenue Sharing Agreement in front of a notary as the document clearly reflects. Although 'Agrawal' was in possession of, and fully aware of, knowledge and information in direct conflict with the herein information set out in no. 4 above and totally unknown to 'Parent' and 'Walker' at that time,

(6) **the hearer's ignorance of the falsity of the representation**;  Kris Agrawal never provided any information to 'Parent' or 'Walker' that was contrary to the statements made to both, 'Parent' and 'Walker' by 'Agrawal' either before, during, or after the signing of the Revenue Sharing Agreement. Neither 'Parent' nor 'Walker' were made aware of any facts that might prove otherwise.

(7) **the hearer's reliance**; 'Parent,' relying on the statements made to both, 'Parent' and 'Walker, signed the Revenue Sharing Agreement on December 11, 2006 totally unaware of all the voluminous issues withheld and carefully and methodically concealed by 'Agrawal' from both 'Parent' and 'Walker thereafter resulting in severe

damages to the detriment of 'Parent' and 'Walker' and CO&G Production Group, LLC, such is continuing today.

(8) **the hearer's right to rely on it**; the last sentence of paragraph 8 of the Revenue Sharing Agreement states;

- "Further, Lease Holder waives any lien rights he may have in law and equity and will not encumber the leases with third party Liens or other financial burdens."

(9) **injury**." (1), Kris Agrawal had signed a personal irrevocable guaranty with Rodger Sparkman on August 11, 2000.

(2), Kris Agrawal was aware of a first mortgage on the entire Hill Top Leasehold granted as a lien on the stocks of On-Line Oil Inc., and such guaranty and first lien were held by Boatman's Bank obligating the Sparkmans subject at that time to a $150,000.00 'note' owed to Boatman's Bank originally borrowed by Sparkman and his partner named Rongey. (3), Kris Agrawal was aware at the time of the signing of the Revenue Sharing Agreement that Global Financial LLC had purchased the "note" from Boatman's Bank and had begun foreclosure against the Sparkmans and On-Line Oil Inc.

(4), Kris Agrawal knew at the time of the signing of the Revenue Sharing Agreement that Rodger Sparkman had filed Third Party Claims against Mittal Well Tech, LLC and Kris Agrawal personally on June 13, 2006 in Tulsa county in CJ-2005-0456.

(5), 'Agrawal' never made 'Parent or 'Walker' aware of these pre-existing issues affecting title to the Hill Top Leasehold.

**Specific Pleading of the Fraud committed against**
**Plaintiff and CO&G Production Group, LLC and contained within**
**The September 14, 2008 Formal Business "Demand" Letter**
**Authored by Newton Agrawal and Thereafter**
**sent by U.S. mail or wire to Scissor Tail Energy, LLC and**
**CO&G Production Group, LLC and Plaintiff**

Again, in compliance with;

105.    Federal Rule 9 (b) requires "predicate acts" based on fraud to be pled with
specificity to provide clear factual notice of the factual basis for the predicate acts.
(End of citation).

106.    Fed. R. Civ. P. 9, (b), (identifying the time, place and contents of the
misrepresentations or omissions, and the identity of the persons to whom and by
whom the misrepresentations were made);

107.    Actionable fraud includes; (1), a representation; (2), that is false; (3), that is
material; (4), the speaker's knowledge of its falsity or ignorance of its truth; (5), the
speaker's intent it be acted on; (6), the hearer's ignorance of the falsity of the
representation; (7), the hearer's reliance; (8), the hearer's right to rely on it; and (9),
injury."

- (1) **a representation**;   Paragraph 2 of Newton Agrawal's letter dated **September
  14, 2008** states, "As far we know On-Line Oil Inc. continues to be owner of
  all the Units along with Realty Developers, LLC as the Over-riding Royalty Owner
  and owner of all the equipment you are using."
- Conflicts with, "All the Assets of On-Line Oil are gone." (Ref. Statement made by
  Khrishna Kumar Agrawal on September 7, 2006).

- *Reference also, applicable Bankruptcy Schedules of On-Line Oil, Inc. Creditors
  Schedules, "Secured," and "Unsecured" Creditors schedules and SOFA.*

- (2) **that is false**; "**On August 4, 2006,** On-Line Oil Inc. **"sold"** its interest to Coal
  Gas USA, LLC who posted a $25,000.00 bond with the Oklahoma Corporation
  Commission (OCC)."

- A. the Direct Quote cited at (2), above was taken from a document submitted in
  Supreme Court of Oklahoma case no. 110,414 filed on March 7, 2012. The document
  can be found therein at Item C. of Petitioner's Index and contained at item 10. The
  document from which the direct quote came is titled therein at item ten (10) under

article C, as "Plaintiff's Supplement to Emergency Motion to Void Summary Judgment" filed May 23, 2011.

- B. This referenced <u>Inst no. 2006116427 filed October 9, 2006,</u> was filed in the Tulsa County Courthouse.

According to, and contained within and upon, a vast number of pleadings submitted and filed of record by Khrishna Kumar Agrawal, *(only this one is cited for the Court, due to lengthy content of numerous other predicate acts),* acting at times as agent, and manager of, and as need dictates, Stockholder of, On-Line Oil Inc., for Newton Agrawal, has, and on behalf of, his own "predicate act," stated within the referenced document identified in the following paragraph;

(Reference Larry Evans' Title Opinion dated December 10, 2009,), and contained in the document titled, "*<u>FIRST SUPPLEMENT TO EMERGENCY MOTION OF KRIS K. AGRAWAL TO SET ASIDE, VOID THE PRONOUNCEMENT OF SUMMARY JUDGMENT AND PROPOSED JOURNAL ENTRY OF SUMMARY JUDGMENT IN FAVOR OF CO&G PRODUCTION GROUP DUE TO FRAUD PRACTICED BY ERIC STALL, RON WALKER OF CO&G PRODUCTION GROUP, LLC,</u>* and filed of Record in the Tulsa County Case <u>CJ-2008-6839 on May 23, 2011</u> at page 2 of that document at Item G, the following;

A. "**<u>On August 4, 2006,</u>** On-Line Oil Inc. **"sold"** its interest to Coal Gas USA, LLC who posted a $25,000.00 bond with the Oklahoma Corporation Commission (OCC)." (Inst no. <u>2006116427</u> filed **<u>October 9, 2006</u>** in the Tulsa County Courthouse).

- (3) **that is material**; Formal letter format under On-Line Oil Inc. letterhead dated September 14, 2008, and signed by Newton Agrawal as President submitted to Scissor Tail Energy, LLC, 'Parent,' and CO&G Production Group, LLC.

- (4) **the speaker's knowledge of its falsity or ignorance of its truth**; a. Newton Agrawal signed the Assignment **<u>dated August 4, 2006</u>** as President of On-Line Oil

39

Inc., conveying Oil and Gas Rights unto Coal Gas USA, LLC which was also owned and controlled by himself.

- B. **Newton Agrawal, on September 24, 2008**, *(14 days after said letter, the "Letter" herein identified was sent out under On-line Oil Inc.'s letterhead),* executed a document titled "Assignment of Working Interest" wherein he assigned On-Line Oil Inc.'s interests unto Realty Management Associates, LLC., Newton Agrawal signed that document as President of On-Line Oil Inc. *(Realty Management Associates, LLC is a company in which Kris Agrawal has stated he is a sole member and manager of according to item 10, of page 2 of an Affidavit signed by Kris Agrawal and submitted to the Oklahoma Department of Labor on MARCH 28, 2010 with proper attestation clearly visible upon the Affidavit).*

- On-Line Oil Inc's Bankruptcy Schedules don't reflect this Assignment.

- *Conflicts with statement, "All the assets of On-Line Oil are gone."*

- SEE Larry Evans Title Opinion dated December 10, 2009.

- SEE Exhibit I,  Attached: A document filed in case no. CJ-2008-6839 in Tulsa County District Court on May 23, 2011 titled; *"FIRST SUPPLEMENT TO EMERGENCY MOTION OF KRIS K. AGRAWAL TO SET ASIDE, VOID THE PRONOUNCEMENT OF SUMMARY JUDGMENT AND PROPOSED JOURNAL ENTRY OF SUMMARY JUDGMENT IN FAVOR OF CO&G PRODUCTION GROUP DUE TO FRAUD PRACTICED BY ERIC STALL, RON WALKER OF CO&G PRODUCTION GROUP, LLC."*

- See Assignment dated September 24, 2008 titled "ASSIGNMENT OF WORKING INTEREST", Online Oil Inc, conveying unto Realty Management Associates, LLC.

- Conflicts with statement, "All the assets of On-Line are gone."

- See Oklahoma Department of Labor filing dated April, 2010, Case No. 200901138 et al, at.

- *(At Item Q of page 3 of a document filed in Oklahoma County District Court case no. 200901138 etal., in April of 2010, Kris Agrawal stated that, "Coal Gas USA, LLC, On-Line Oil Inc., Kay Kay Engineering, have not been in business after 2006 at worst case.") (Although On-Line Oil Inc., on August 27, 2007 issued a check #7263 in the amount of $250.00 payable to Wadley and Sons drawn on Americrest Bank, (now Coppermark Bank), in Oklahoma City, Oklahoma. The check states upon the "for" point of the check "Wagner Moorehouse Pulling Unit Mortgage Payment."), (although Coal Gas USA, LLC had insurance coverage on a 1985 Chevrolet Kodiak model C-76 truck serial # 1GBS7D4Y3FV211575 Insured by Progressive Insurance at 800-895-2886 term of insurance ran from September 28, 2007 thru September 28, 2008).*

- *On June 16, 2006 On-Line Oil Inc., issued its check # 7258 payable to Wiley Hargus in the amount of $240.00 as payment of 10% commission for production which he generated possibly including the Hill Top Leasehold.*

- *Matt Darby was paid on June 16, 2006 by check #1478 in the amount of $320.00 as a loan to Coal Gas USA, LLC from Coal Gas Mart, LLC and drawn on an account belonging to Coal Gas Mart, LLC at IBC bank.*

- *Wiley Hargus was also issued check #1468 in the amount of $500.00 drawn on IBC Bank against the account of Coal Gas Mart, LLC on June 16, 2006. Payment was reflected as a Loan to Coal Gas USA, LLC.*

- *On June 4, 2006 On-Line Oil Inc., issued two checks drawn on its account for towing and recovery of other vehicles in the amounts of Check no. 7256 at $500.00 and Check no. 7257 in the amount of 191.64. Both checks were drawn against Americrest Bank where On-Line Oil Inc. maintained its account at the time.*

41

See Insurance Verification Card for 1985 Chevrolet Kodiak Winch Truck.

See Affidavit dated March 28, 2010 signed by Kris Agrawal and submitted into evidence in Oklahoma Department of Labor cases no's., 2009-01138, 2009-00546DLM, 2009-00547JHG, 2009-00548JHG, 2009-00549DLM, 2009-01138BJB Wage Claimants V. Various Agrawal Insider Owned Entities seeking unpaid wages due them.

- *(At item 9 of page 2 of his Affidavit Kris Agrawal stated,* **"All wells owned by Coal Gas USA, LLC were forced plugged in 2005, soon after they began to produce natural gas and it ceased business after March of 2007."** *"It had no other business in 2007 and at present.") The date of Kris Agrawal's duly attested signing of that affidavit was March 28, 2010.*

- *Conflicts with December 25, 2008 Assignment from Coal Gas USA, LLC to 'RDL.'*

- *Conflicts with July 2008 Assignment from Online Oil Inc. to Coal Gas USA, LLC.*

- *(At item 1, on page 1, of that Affidavit Kris Agrawal stated,* **"I am the sole manager of Geo Exploration, LLC, Coal Gas USA, LLC,** *and Energy Production Services, LLC." "I have never been a member of any of these companies."*

- *(At item 8, on page 1, of that Affidavit dated March 28, 2010, Kris Agrawal stated, "On-Line Oil Inc. was an Oklahoma Corporation* <u>until it ceased doing business in March 2006</u> *and filed for Bankruptcy protection in 2009 in case No. 09-13006."* <u>**"I was stockholder, Vice President and Manager of On-Line Oil, Inc."**</u>

- *(On-Line Oil Inc., on August 27, 2007 issued a check #7263 in the amount of $250.00 payable to Wadley and Sons drawn on Americrest Bank in Oklahoma City, Oklahoma. The check states upon the "for" point of the check "Wagner Moorehouse Pulling Unit Mortgage Payment.")*

- *Refer again to Check # 7258 dated June 16, 2006 drawn on On-Line Oil Inc. account at Americrest Bank issued to Wiley Hargus reflecting payment of $240.00 for commission payment.*

SEE Copy of cancelled Check #7263 in the amount of $250.00 drawn on Americrest Bank, Oklahoma City Oklahoma.

C. On <u>March 3, 2008</u>, Kris Agrawal upon oath during a deposition administered by Andrew Waldron, under and within case no., CJ-07-646 filed on September 4, 2007 in Pontotoc County Oklahoma titled Mittal Well Tech, LLC and On-Line Oil Inc., vs. Anthony Feezel and others. At page 39 and containing upon therein and beginning at line 17, Andrew Waldron Attorney asked the following;

SEE Testimony given by Kris Agrawal from official transcript in case no. CJ-2007-646 filed in Pontotoc County, Oklahoma District Court on September 4, 2007 On-Line Oil Inc. vs. Anthony Feezel and others.

- Mr. Waldron asked, "Who are the members of -- or who are the <u>owners of On-Line Oil, Inc</u>?"

- Mr. Agrawal stated as his answer, "<u>My Son</u>."

- Mr. Waldron asked, "Is that Newton?"

- Mr. Agrawal answered, "Yes."

- Mr. Waldron asked, "Is he the <u>only owner</u>?"

- Mr. Agrawal answered, "Yes."

- Mr. Waldron asked, "He's the <u>sole Stockholder?</u>"

- Mr. Agrawal answered, "Yes."

- Statements made by Khrishna Kumar Agrawal clearly reflect perjury in this Deposition Proceeding or upon his Affidavit submitted to Oklahoma Department of Labor.

- On **September 23, 2008**, Kris Agrawal executed a document and signed said document on the signature line established thereon for Newton Agrawal's signature, adding in his own handwriting, "By Kris Agrawal, Manager- as Authorized."

- Note; the notary attestation placed upon said document, states that Newton Agrawal appeared and signed; Not Kris Agrawal.

SEE September 23, 2008 Assignment signed by Kris Agrawal.

- **On July 28, 2008**, Newton Agrawal, signing as President of On-Line Oil Inc., executed a document titled "Corrected Assignment of Working Interest," conveying unto Coal Gas USA, LLC what was stated as follows, "This document is to correct Document no. 2006116427 dated 10-9-2006 and filed of record in Tulsa County, Oklahoma. Effective date of this assignment was July 7, 2004. *(The return address was directed to the County Clerk as Geo Engineering and Testing Corp. at 4133 North Lincoln Blvd., Oklahoma City, Oklahoma 73105.)*

- *Note; These transactions are not reflected upon On-Line Oil Inc's Bankruptcy Schedules.*

See July 28, 2008, Assignment, (Corrected Assignment), Online Oil Inc, conveys to Coal Gas USA, LLC. (Bankruptcy Fraud).

- **On June 18, 2008**, Vimala Agrawal executed a 9 page document titled, "Partial Assignment of Over-Riding Royalty Interest in Oil and Gas Lease and Bill of Sale of Interests in Wells and Equipment." This document conveyed 47% or Realty Developers, LLC's Overriding Royalty Interest and all the equipment and Realty

44

Developers, LLC's interest in the wells located upon the Hill Top Units in Tulsa County to Coal Gas Mart, LLC. The document is signed by Vimala Agrawal as Member-Manager of Realty Developers, LLC. *(The return address was directed to the County Clerk of Tulsa County Clerk as Coal Gas Mart, LLC., at 4133 North Lincoln Blvd. Oklahoma City, Oklahoma 73105).*

- 'RDL' (Realty Developers, LLC), is not listed as a Secured or Unsecured Creditor on On-Line Oil Inc's Bankruptcy Schedules.

- (5) **the speaker's intent it be acted on**;   Page two of said letter; Last sentence of ¶4 states, "Please also amend the Division Order reflecting 75% Net Revenue to On-Line Oil, Inc."

- (6) **the hearer's ignorance of the falsity of the representation**;   The hand written note in the upper-right hand corner interlineated by Scissor Tail Energy Employee states "10-6-08 Carol suspended Effective with 9-08 Prod. Month."

- (7) **the hearer's reliance**;  (See Email confirmation, from Scissor Tail Energy confirming that the Letter authored by Newton Agrawal and sent to them by U. S. Mail was the document on which they relied on to suspend payments to CO&G Production Group, LLC, Exhibit R, attached to this document).

See Email from Rob Jones Commercial Account Manager Scissor Tail Energy dated May 3, 2010 confirming Newton Agrawal's Letter dated September 14, 2008 as being reason CO&G Production Group LLC's Production Payments were "suspended."

- (8) **the hearer's right to rely on it**; Last Paragraph of Letter, contains the following language at the first sentence; a. "By means of this letter, we are notifying Scissor Tail Energy and the Oil Purchasers that they withhold payment equal to 25% of future production and the money due from past production and pay that amount over to Realty Developers, LLC."

- (9) **injury.**" The Defendants, herein, by and through their predicate acts attempted to gain unlawful control of, and dominion over money lawfully owed to Gregory Williams, 'Parent' 'CO&G Production Group, LLC,' the Bankruptcy Creditors of On-Line Oil Inc. Scores of On-Line Oil Inc., Bankruptcy Creditors were "bilked" by the numerous acts of "Fraudulent Concealment" of assets and the numerous "Fraudulent Conveyances" by and among the "Agrawals" individually and acting in "unison" by their premeditated enactment of a "plan" carried out to thwart lawful pursuit of the assets of On-Line Oil Inc. Rodger Sparkman from whom the Hill Top Leasehold was purchased on time payments and secured by a Lien upon Stocks of On-Line Oil Inc., was never paid in full. These overt acts were committed in violation of 18 U.S.C. § 1962, (C), and (D), 11 U.S.C. § 152 and 157 et seq.

### HISTORY
### HOW THE "PATTERN" WAS FORMULATED
### AND DEVELOPED AND CONTIUNED FOR
### A PERIOD IN EXCESS OF 10 YEARS AND ON-GOING TODAY

### REASONS FOR PREDICATE ACTS BEING COMMITTED, OR
### AIDED AND ABETTED BY KHRISHNA KUMAR AGRAWAL

- **In March 1997**, 'On-Line filed "OCC" Cause No. PD 970000140, seeking an exception from 'OCC' plugging requirements. 'On-Line' alleged that approximately 120 wells in the four units were at or near the plugging stage, and that "a systematic plugging program had been devised whereby" the wells could be plugged pursuant to 'OCC' rules "by the end of the year 2001." (Page 3 ¶ 1 of Oklahoma Supreme Court decision filed June 10, 2008. Exhibit 2 thereof).
- Page 4; "...**In September 1997**, the parties reached a settlement agreement incorporated into Interin 'OCC' Order No. 416219, and approved by the 'OCC' in September 1997."(page 4 ¶ 1).
- "This Agreed Order granted 'On-Line' an exception to 'OCC's general rules requiring operators to plug wells within certain time periods, and set out a schedule

whereby 'On-Line' would plug or produce wells on the units in five "phases" over the succeeding four and a half years." (page 4 ¶ 1).

- "It also provided that by the end of Phase Five, in January 2002, all wells located on 'On-Line's lands would either be restored for producing oil or gas or plugged and abandoned pursuant to 'OCC' rules." (page 4 ¶ 1).

- "The Order provided for yearly compliance hearings, required 'On-Line to maintain a $25,000.00 bond securing its obligatons, and provided that 'On-Line's failure to comply with the Order would result in forfeiture of the security and other relief deemed necessary." (page 4 ¶ 1).

- '**In 2000**, ownership of 'On-Line' (Mittal Well Tech, LLC and Kris Agrawal entered into a purchase agreement with Sparkman), changed and its new owner, Kris Agrawal, applied for an extension of time to complete 'On-Line's obligations under the agreed order." (page 4).

- **July of 1997**, On-Line Oil Inc., entered into a Credit Line Agreement and Security Agreement with Boatman's Bank with a Credit Line of $150,000.00 secured by the assets of On-Line Oil Inc.

- Rodger Sparkman and Howard Rongey, (since deceased), simultaneously executed an unlimited personal guaranty with Boatman's Bank, guaranteeing payment of the Credit Line Agreement, and secured by the assets of On-Line Oil Inc.

- All of the ageements were construed under Missouri Law.

108. **On June 3, 1998**, Agrawal and Rensark and UIC entered into an Indemnity Agreement signed by Kris Agrawal on behalf of 'Rensark' and as personal indemnitor, indemnifying UIC against Loss.

109. **In October 1998**, Mr. Rongey resigned from On-Line Oil Inc., and terminated his relationship with the company. In October 1999, Mr. Rongey passed away.

110. **February 10, 1999,** Ten Hoeve Bros. Inc. filed suit against  Kris K. Agrawal d/b/a Kay Kay Associates et al. in Case No. CJ-1999-878.

111. **July 22, 1999**, In the District Court of Oklahoma County, in Case No. CJ-98-1423 filed by the State of Oklahoma ex rel. State Insurance Fund filed its Amended Petition against Geo Engineering and Testing Corporation, a suspended Oklahoma Corporation, Kris Agrawal d/b/a Kay Kay & Associates and Envirotech Laboratories, Inc., as defendants. Defendants owed the State Insurance Fund $24,262.00 plus interest, attorneys fees and costs, for worker's compensation insurance premiums due on policicy No. 00383305-96-I and 0383305-97-I issued by Plaintiff to defendants.

112. **March 1, 2000**, at Oklahoma Corporation Commission, (hereinafter OCC), Counsel for all parties, (including On-Line) announced On-Line had complied with the Third Interim Order, and a date in 2001 should be chosen "to determine if Online has complied with Phase Four of the original order." *Agrawal was not a party to these talks.*

113. **July 27, 2000**, Kris Agrawal filed an 'Appeal' in the Appellate Court in Case No. SC-2000-2517 titled Richard Lines v. Kris Agrawal.

114. **July 28, 2000**, Toolpushers Supply Co. filed suit against General Minerals Corporation in Aztec County, New Mexico in Case No. D-1116-CV-200000694.

115. **In August 2000**, Mr. Sparkman sold On-Line Oil Inc. to Mittal Well Tech, LLC, an Oklahoma limited liability company through a transaction involving its manager, Khrishna Kumar Agrawal.

116. Mr. Agrawal executed a stock purchase agreement, a promissory note in the amount of $150,000.00, and an unconditional and irrevocable Personal Guaranty to Rodger Sparkman in the amount of $150,000.00.

117. Khrishna Kumar Agrawal's first installment payment was due September 1, 2000. Khrishna Kumar Agrawal/ Mittal Well Tech, LLC made regular monthly payments to the Sparkman's through August 31, 2001 but afterward quit making payments on the principal sum of the Promissory Note.

118.   Khrishna kumar Agrawal/Mittal Well Tech, LLC continued to make interest payments on the principal owed to Rodger Sparkman, and due under the Promissory Note until November 21, 2003 but afterward quit making interest payments.

119.   **October 17, 2000**, Realty Deveopers, LLC was formed, by Gregory Williams and Vimala Agrawal (RDL).

120.   **November 21, 2000,** Gregory Williams and Vimala Agrawal agreed on LLC operating agreement and Gregory Williams became an Official 32% member of Realty Developers, LLC.

121.   **December 4, 2000**, Vimala Agrawal loaned Realty Developers, LLC $144,000.00, mortgage was dated November 30, 2000 and note was to come due on October 30, 2005. Document was titled, "REAL ESTATE MORTGAGE" with the following caption made a part of that document, A POWER OF SALE HAS BEEN GRANTED IN THIS MORTGAGE. A POWER OF SALE MAY ALLOW THE MORTGAGEE TO TAKE THE MORTGAGED PROPERTY AND SELL IT WITHOUT GOING TO COURT IN A FORECLOSURE ACTION IF THERE IS A DEFAULT UNDER THIS MORTGAGE. Document # is 2000156712 and recorded at Book 7973 and pages 1036-1039. Exhibit A with full legal description is attached to document.

122.   **December 2000**, Rensark Energy Co. Inc. and On-Line Oil Inc., Merge into one remaining entity that being On-Line Oil Inc.

123.   **December 26, 2000**, Khrishna Kumar Agrawal, traded the 'Stocks' of On-Line Oil Inc., to Newton Agrawal for Newton Agrawal's 45% Interest in General Minerals Corporation. Effective date of Trade to be March 27, 2001.

124.   **January 6, 2001,** "On or about the 6th day of January, 2001, in Oklahoma County, State of Oklahoma, Khrishna K. Agrawal did then and there unlawfully, willfully, intentionally, knowingly and feloniously commit the crime of Worker's Compensation Fraud in violation of Title 21 O.S.§1663 (C) (1)." (More; not cited.)

125. Kris Agrawal used a false name of Kris Kay to mislead CompSource Oklahoma to conceal his true identity due to his having a previous unpaid and outstanding balance owed to CompSource in an amount greater than $25,000.00.

   - Mr. Agrawal gave false information upon his application under which he had secured Worker's Compensation Insurance on behalf of On-Line Oil Inc.

   - CompSource began an investigation into Kris Agrawal's false information upon CompSource application.

126. **January 14,, 2001,** Kris Agrawal advised Underwriters Indemnity of Houston Texas that 'On-Line' and Rensark Energy Co. Inc. had "merged" and requested that the Insurance company change the name of the "Insured" from 'Rensark' to 'On-Line' and asked the 'Insurer' to Issue a Rider to the 'OCC' to cover the wells of 'On-Line' as well. (Agrawal had pledged a CD as Collateral to RLI, formerly, UIC, Underwriters Indemnity Company. Agrawal "merged" 'Rensark' and 'On-Line' on December 15, 2000, the surviving entity was 'On-Line.'

127. **February 5, 2001** On-Line Oil Inc., assigned to Realty Developers, LLC (hereinafter RDL), a 50% overriding royalty interest (as an interest in the Net Revenue Interest), in the proceeds generated from the sale of oil and gas from the Hill Top Lease (hereinafter HTL).

128. On April 18, 2002, Khrishna K. Agrawal was charged with Worker's Compensation Fraud by the Attorney General of the State of Oklahoma.

129. In 2003, Scissor Tail Energy paid On-Line Oil Inc, $2,441.00 for its purchase of natural gas from the Hill Top Leasehold.

130. In 2004, Scissor Tail Energy paid On-Line Oil Inc, $58,690.20 for its purchase of natural gas from the Hill Top Leasehold.

131. In 2005, Scissor Tail Energy paid On-Line Oil Inc, $51,905.89 for its purchase of natural gas from the Hill Top Leasehold.

132. In 2006, Scissor Tail Energy paid On-line Oil Inc, $ 1,175.21 for its purchase of natural gas from the Hill Top Leasehold

(No Accounting for Oil Sold from the 'HTL' has ever been provided by the Agrawals).

133.   Kris Agrawal had lied to CompSource Oklahoma, ( in January of 2001, in order to get worker's compensation insurance for 'Online'), Agrawal used a False name of Kris Kay so that the employees at CompSource Oklahoma wouldn't realize that He, (Agrawal), had an outstanding account with CompSource of over $25,000.00 at that time under another one of his entities). Ref. July 22, 1999 item above.

- A CompSource "Accounts Investigator" had discovered (by Anonymous caller), that Kris Kay was really Kris Agrawal and the Investigator launched an investigation into the matter.

- Kris was aware of an ongoing investigation in early 2001 by CompSource Oklahoma, due to questioning of Online's employees by the CompSource investigators.

134.   **March 4, 2001,** Kris Agrawal, (Mittall Well Tech, LLC), and 'On-Line' and Bill Wadley Sr. (Bill Wadley and Son Drilling Co. from Okmulgee, Ok.) enter into and execute "Bill of Sale" and "Promissory Note"regarding a;

- 1975 White Truck Tractor Model RBS 64 T with a VIN# FPG2PN183754 with a Wagoner Moorehouse Pulling Unit and all other tools.

- And, a 1985 Ford Truck, body type CB and Model no. COFK and VIN# 1FDJF37L8FK41766.

- This Transaction is covered by a Promissory Note dated August 3, 2000, between the parties.

- Agrawal made monthly payments to Wadley.

135.   **July, 2001** On-Line asked the 'OCC' for additional time to comply with Order No. 416219, stating that On-Line had undergone an ownership change, and that the emphasis of management had changed from plugging, to producing the wells.

136.   **July 27, 2001,** Kris Agrawal filed filed suit against Don Doyle General Minerals Corporation in Case No. CJ-2001-5670 in Oklahoma County, Oklahoma.

51

137. **August 16, 2001**, Coal Gas Mart, LLC was formed at Oklahoma Secretary of State's Office.

138. **"On August 17, 2001**, 'OCC' entered Order No. 455339, amending Order No. 416219, and providing for 'On-Line' to complete the work of plugging in eight phases, instead of five, by January 31, 2004." (page 4).

   - "Although it found that 'On-Line's emphasis was now on "production," the Order specifically required 'On-Line' to 'either restore and establish Production of oil and/or gas, or plug and abandon the now unplugged or non-producing wells situated on the 'On-Line' lands...so that said "wells will have been plugged and abandoned or placed on production by January 31, 2004." (page 5).
   - "It also ordered yearly compliance hearings." (page 5).

139. **Between April 2001- August 31, 2001**, Coal Gas Mart, LLC submitted its first bid on Coal Bed Methane Gas in India. Bidding was closed on August 31, 2001.

140. On **September 16, 2001**, Khrishna Kumar Agrawal got his legs blown off at the 'HTL' compressor station due to negligence. Bill Green, an employee of 'HTL' was also badly injured.

141. **October 30, 2001**, Investigator Ken Duke, upon investigation of the name Kris Kay, and therefrom finding other assiciations with that name led him to discover in the WORCS and related policy notes for On-Line Oil, that Kris Kay was really Kris Agrawal. Upon finding a link to GEO Engineering and Testing company (GETCO), under policy # 00383305-96-1, information which led him to talk with Kris Agrawal at 524-5227, *which also turned out to be the contact number for GEO Engineering and Testing (GETCO), upon and within the 1997 policy;* about specifics concerning the accident and compensation claim.

142. **November 2, 2001**, General Holding Corporation sued Kris Agrawal, Marion Kilgore, Glen Lindsey in Case No. CY-2001-8532 in Oklahoma County, Oklahoma.

143. **December 13, 2001**, Wilson Industries sued General Minerals Corporation and Kris Agrawal in Case No. CS-2001-8501 in Oklahoma County, Oklahoma.

144. **December 18, 2001**, Glen Clark went to Policyholder Services and reviewed files on GEO and On-Line. [Pg. 2 paragraph 2].

145. **December 20, 2001**, Gary Johnson assigned another investigation to the Trust regarding the accident site.

146. **December 28, 2001**, Glen Clark ordered another investigation by the Trust. The Investigator's Assignment was to locate witnesses who were former employees of On-Line.

147. **December 31, 2001**, the investigator's report was received by CompSource Oklahoma.

148. **On January 2, 2002**, Kris Agrawal filed suit in Creek County Case No. CJ-2002-0003, against Duke Energy and several other entities claiming that the Compressor had a defective "pop-off" valve which caused the explosion which had caused Agrawal to lose one leg and caused severe injury to Bill Green. Both, Agrawal and Green incurred massive medical expenses due to the accident.

149. It was later revealed that, Kris Agrawal and Bill Green had conspired to remove the "pop-off" valve from the compressor and placed a "plug" in that location, and as a result of removing the 'Pop-Off' valve, caused the compressor to blow out a steel braided hose which cut off Agrawal's legs.

150. Bill Green and Kris Agrawal continued that lie for 7 years before the Court in Creek County, and Judge Golden, finally figured out that the "pop-off" valve wasn't even on the compressor at the time of the explosion.

**151.** That case was dismissed on January 22, 2009 for <u>Fabrication of Evidence and Related Perjury committed by both, Agrawal and Green.</u>

**152.** **January 3, 2002**, Glen Clark requested policy file #01643062 for handwriting analysis.

153. **January 3, 2002**, the CompSource documents were given to Investigator Tommy Rutledge for handwriting analysis.

154. **January 28, 2002**, Glen Clark received Investigator Rutledge's report. [Newton Agrawal's signatures were not authored by Newton Agrawal], but were in fact, prepared by the author of the Kris Agrawal writings. (that author being, Kris Agrawal).

155. **January 29, 2002**, the re-examined CompSource documents were sealed by Barney Taylor of Policyholder Services on Janyary 29, 2002 at 2:50 P.M.

156. **February 11, 2002**, Glen Clark assisted Linda Hitch, field auditor for CompSource of Oklahoma in the audit of On-Line Oil Inc. [Page 3 first paragraph].

157. **(Kris Agrawal, realizing that the 'HTL' was probably going to be forfeited for his lying to CompSource), on April 9, 2002**, On-Line Oil Inc. mortgaged All assets of On-Line Oil Inc. to RDL, including a UCC-1 form attached and made a part of document titled, "MORTGAGE OF OIL AND GAS LEASE," reflecting the listing of all equipment upon Hill Top Leasehold for, on a draw basis, a $250,000.00 Loan. Document # 02048947 filed 4/15/2001 in Tulsa County Courthouse at Book 6729 and Pages 2237 and 2238. Exhibit A attached identifies Township 17 North, Range 12 E, Sections 1, 13, and 12; Also, Township 17 North, Range 13 E, Sections 6, 7, and 18. *(Not all sections are included, a total of 12 sections make up the entire 3000 acre Hill Top Lease). LANGUAGE THEREIN STATES TRANSACTION IS EFFECTIVE FROM JANUARY 10, 2001.*

158. **April 11, 2002**, Glen Clark signed and attested to his investigation and findings thereof in CompSource case.

159. **April 18, 2002**, State of Oklahoma, Attorney General's Office filed <u>Criminal Felony Charges on Krishna Kumar Agrawal for Worker's Compensation Fraud</u> CF-2002-2124, contrary to 21 O.S.§1663(C) (1) resulting in a warrant for his arrest being issued. <u>(Agrawal pled "No Contest" and received a 3 year deferred sentence until September 30, 2007)</u>.

160. In April of 2007, Kris Agrawal violated his probation by hiring, associating with other Convicted felons.

161.  In August of 2007, Kris Agrawal (while on probation) used the false name of Kris
      Kay again, wherein he frauded West OK Trucking Company.

**162.  In June of 2002**, (Global Financial purchased the rights to the underlying
      Boatman's Credit Line Agreement and unlimited personal guaranty.

163.  **July 15, 2002**, Toolpushers Supply Co. is awarded Judgment against General
      Minerals Corporation in Aztec County, New Mexico in the amount of $12,371.57 plus
      costs and attorneys fees and 18% interest per annum.

164.  **August 8, 2002**, State of Oklahoma ex-rel, CompSource Oklahoma, f/k/a State
      Insurance Fund filed a "Motion for Default Judgment against GEO Engineering and
      Testing Corporation and Enviro Tech Laboratories, Inc., asking for $36,860.34.

165.  **September 20, 2002**, Gregory Williams, as Vice-President of Coal Gas Mart, LLC
      sends out investment opportunity letters on behalf of On-Line Oil Inc. requesting
      investments from those who might be interested in investing in the Hill Top Lease
      Units 1, 2, 3,  and the Cromwell Unit. [Detailed Offering]

166.  This letter and its specific details and projections clearly reflect the basis for
      Agrawal determining Financial Worth of Coal Gas Mart. LLC as will be required in
      the Financial Segments of the bidding requirement for securing a successful bid of
      Coal Bed Methane Blocks in India during the next bidding round. Greg Williams is
      used merely as a decoy, stool pigeon to grant Kris Agrawal distance from said
      doucment's projection, esitmates and claims stated therein.

167.  **On October 18, 2002,** On-Line Oil Inc. and Rensark Energy Company Inc. each
      executed a separate $125,000.00 Mortgage document in favor of Mittal Well Tech,
      LLC. Rensark executed its Mortagage on October 18, 2002 at book 6605 and Pages
      234, 235, 236 and recorded in the Seminole County Courthouse. Both, On-Line and
      Rensark, using items listed as Exhibit A and page 236 of this latter filing reflects the
      same identical assignment of leasehold descriptions except, this document, does not

reflect the equipment that the Exhibit A submitted by On-Line identifies. The On-Line document included all equipment located on the leases as well.

168.   **October 21, 2002**, State of Oklahoma ex-rel, CompSource Oklahoma, f/k/a State Insurance Fund filed a "Judgment" against GEO Engineering and Testing Corporation and Enviro Tech Laboratories, Inc., in the amount of $37,134.39.

Note;

- One particular creditor, (Sulphur Well Service Dallas Texas), was about to gain judgment against both, On-Line and Rensark. That company was represented by an attorney in Seminole OK.

- Mittal Well Tech, LLC's address is stated to be 6704 N.W. 110th CT. OKC., OK. 73162.

- The significance of the document is that all income, fixtures, improvements on or constructed on the real estate, and all income derived from oil and gas lease for a consideration of $125,000.00 at 10% per annum. This document is signed by Kris Agrawal as Vice-President of Mittal Well Tech, LLC. **Effective from January 10, 2000.** ( attempting to use wording to precede the CompSource date which Kris Agrawal lied to CompSource on his Application).

- The similar 'On-Line' document reflets all equipment located upon leases.

169.   **February 28, 2003**, 'On-Line's Counsel explained, at OCC hearing, that they were still operating under the 'original order' and sequence of orders to carry on the plugging or restoration, noting, that its been continued from year to year. [Steve Murphy appeared and wanted non-producing wells on his property plugged].

170.   **March 4, 2003,** General Minerals Corporation assigned its interest in the Wilson leasehold and all equipment to Coal gas Mart, LLC as follows;

- "certain working interest in the amount of an undivided seventyeight percent net revenue interest in and to all the oil and gas and other minerals in and under that may be produced from the following described lands;

- East Half of Northwest Quarter, Section 9, Township 15 North, Range 14 East of Okmulgee County, Oklahoma.

- The conveyance document is signed by Kris Agrawal as President of General Minerals Corporation.

171. **April 9, 2003,** Amy Agrawal bought a house in Kansas City MO., from Margaret L. Hart, a single person.

172. **May 29, 2003,** Coal Gas Mart, LLC filed Case No. CJ-2003-4464 in Oklahoma County (Indebtedness of $164,129.80) against General Minerals Corporation and claiming a default on a note. Service was made upon the Registered Agent of General Minerals (that being, Kris Agrawal), on 5-19-03. (***Kris Agrawal sued himself***).

173. **June 2003**, Global Financial exercised a non-renewal option on the Credit Line Agreement given to Boatman's Bank by Sparkman and Rongey.

  - (Note: Mittal Well Tech, LLC traded the "Stocks" of 'On-Line" to Newton Agrawal for his 45% ownership interest in General Minerals Corporation on December 15, 2000),(Ref. Compsource Defence Outline.) Connected to the Lawsuit CJ-2003-4464 filed by Coal Gas Mart, LLC against General Minerals Corporation.
  - Done by Agrawal to deter pursuit of General Minerals by Sulphur Well Service and Global Financial and Rodger Sparkman. Agrawal had to defend the 'Stock' trade as legitimate to keep CompSource from attaching an encumberance against 'On-Line' also.

174. Another concern for the Agrawals was the 'OCC' possibly plugging wells of 'On-Line' and attaching its statutory lien priveliges granted under O.S.§53.3 provides the state with a method for recouping some of the financial costs when an operator fails to plug its wells.

175. **June 11, 2003,** Global Financial sent notice to Mr. Sparkman of Non-Renewal and demanded immediate payment in the full amount of interest, principal, and fees in the amount of $112, 276.22 and the notice had a 10 day time limitation.

**176.** **June 20, 2003**, Coal Gas Mart,LLC entered its Journal Entry of Judgment against General Minerals Corporation. **(Both entities owned by Agrawal Insiders).**

177. **July 17, 2003**, Coal Gas USA, LLC was formed, (Amy Agrawal was Registered Agent), 4133 North Lincoln Blvd., Oklahoma City, Oklahoma 73105, is address given.

178. **July 24, 2003,** Sulpur Well Services, Inc., 3838 Oaklawn Ave., Suite 910, Dallas Texas 75219 filed a "Notice of Pendency of Action," in the District Court of Seminole County in Case No. CJ-2003-52 "which action is pending in said Cause in said Court at the date hereof, to foreclose an Oil and Gas Well Lien on the one hundred percent (100%) working interest of Rensark Energy Company, Inc., On-Line Oil Inc., Kris K. Agrawal and Mittal Well Tech, LLC covering the following leasehold situated in Seminole County, Oklahoma, to wit;

- Bethel and and Bethel (Booch) Sand Unit Leases),

- S/2- SE/4, SECTION -6-T-9N-R-6E,

- E/2 AND SE/4- SE/4- NW/4- SECTION- 7-T-9N-R-6E

- W/2 -W/2-W/2 –SECTION- 8-T-9NR--6E

- W/2- N/W- N/W- AND, NW/4-SW/4-NW/4- SECTION 17-T-9N-R-6E,

- NE/4-AND N/2-SE/4 AND SW/4-NE/4-SECTION 18-T-9N-R-6E,

- ALL IN SEMINOLE COUNTY, OKLAHOMA.

179. **July 25, 2003**, Jim Laforge sued Kris Agrawal in Oklahoma County, in Case No. SC-2003-13886.

180. **October 23, 2003**, Toolpushers Supply Co. sued Kris Agrawal in Oklahoma County, Oklahoma in Case No. CJ-2003-8890.

181. **November 18, 2003**, Messer Bowers Company Inc. sued Mittal Well Tech, LLC and Kris Agrawal in Case No. SC-2003-1094 in Garfield County, Oklahoma.

182. **November 28, 2003**, Coal Gas Mart, LLC executed by its owners, a resolution and agreement of LLC and power of attorney in favor of Kris Agrawal effective from August 16, 2001, but signed on Nobember 28th, 2003. (for bid submissions in India).

- Note; provisions of the NIO at ¶37.1.7 Pg. 17/N  (also, ¶ 37.2.1 and 37.2.2 at page 18-19-N), (¶ 21 at page14 of NIO and pages 14 and 15 of NIO), allows the Indian Government the right to ask for any clarification from bidding companies/consortiums on any matter before awarding the contract. (BID).

183. **2003** Agrawal submitted bids in India and provided bid documents dated that year. Power of Attorney ETC as reflected in news articles related to that time period.

- Note: Source; Directorate General of Hydrocarbons (DGH) Indian Government evaluation of Coal Gas Mart, LLC on January 18, 2010.

- 1. Page 3 of 3 of documant titled "CBM-IV BIDDING ALLEGATIONS-II: DGH dismisses Deep Industries claims"

- 2. Item ii of page 3 under "Allegations," states; 'DEEP CH4' Group has got very poor track record of CBM operation."

- 3. Item ii under DGH Views on page 3 also, state: "Past performance of 'Coal Gas Mart' shows that out of the 2 blocks awarded under CBM Roung-III (for which contract was signed on or about July 11, 2006), the operator could complete only one core hole during last 1-1/2 years in CBM block Singrauli and they are yet to get Petroleum License (PEL), for 2nd **block GV(N)-CBM-2005/III.**

184. **January 20, 2004**,  Kris Agrawal filed an 'Appeal' with the Appellate Court in Case No. SD-100261 titled Ten Hoeve Bros. v. Agrawal.

185. **March 18, 2004,** in Creek County Case #CJ-2002-00003, Kris Agrawal, during a deposition within that case admits to the Conspiracy between him and Bill Green by stating,  "I learned that the valve had been installed after the explosion, which was confirmed upon investigation on or about March 18, 2004."

186.   On **April 14, 2004**, at a Compliance hearing before the Oklahoma Corporation Commission, (hereinafter OCC), Khrishna Kumar Agrawal testified that there were only 12 wells producing at the 'HTL.' (Ref. Item 52, page 8), (Ref. 'OCC.' 2096-2098). Id. Case No. 104,110 in the Supreme Court of Oklahoma, filed August 28, 2007.

The OCC's Counsel stated, <u>"The staff's interest in the case was Their concern that the State of Oklahoma might be "forced to bear the cost of plugging On-Line's wells.</u> (Ref. Page 9, Item 65), (OCC. Ref. 2241-2244).

187.   On **April 19, 2004**, the Administrative Law Judge for the 'OCC' issued his report on the 2004 compliance hearing and found that the time for all the wells to be plugged or produced had passed. (Ref. Item 22, page 10), (OCC. Ref. 2777-2783).

188.   **June 2004**, Agrawal had failed to advise Creek County Court that he was privy to knowledge that he and Bill Green altered the evidence and Fabricated their story and committed Perjury in that case.

189.   **July 13, 2004**, 'On-Line, General Holding Corporation, and Kris Agrawal and others, filed suit in Tulsa County District Court against OGE, Enogex Inc. Steve Murphy d/b/a Murphy Resources, Public Service Co. of Oklahoma, Ron Kelly, City of Glenpool, Glenpool church of the Nazarent, Rick Cypert, Ronnie Ashford and others.

190.   **On August 12, 2004**, Agrawal sent a letter dated August 12, 2004 to Sally Shipley, Legal Counsel for the Oklahoma Corporation Commission stating among other things, his acquisition of a new Workover Rig, claiming this new rig will bring his total number of available Workover Rigs to three, (3), to be used at the Hill Top Lease. Agrawal, further stated that a new Nitrogen Plant had been constructed there also which they had been working on since 2003.

191.   **On September 7, 2004**, Kris Agrawal filed an 'Appeal' in Appellate Court in Case No. SD-101163 titled Tool Pushers Supply v. Agrawal. This case originated in San Juan County New Mexico.

192.   On **September 16, 2004**, the 'OCC' issued Order No. 495046 finding that it had jurisdiction over the subject matter and the parties, that the doctrine of Judicial

Estoppel applied to On-Line's position on jurisdiction, and that the Referee's report
should be upheld. Requiring On-Line to plug all other nonproducing wells in the
Units, and if On-Line failed to timely plug such wells, that On-Line's plugging bond
would be used to plug as many of the wells as possible. (Ref. Page 10, Items 66 thru 71
and Page 10, Item 73. ( OCC Ref. 2772-2830).

193. **September 30, 2004**, Kris Agrawal pled "No Contest" to Worker's Compansation
Fraud. Agrawal receives a 3 year deferred sentence. Case # CF-2002-2124.

194. **October 14, 2004**, On-line (Agrawal), at OCC hearing, requests another extension
of time to comply. [Page 23], of Arguments and Authorities within
OCC/Respondents/Appellee's Answer Brief of Appellee, Oklahoma Corporation
Commission in case # 104,110.

195. **November 22, 2004**, General Minerals Corporation presents an Order for
Enhanced Recovery Project by Water Flood, Gas Flood, and Water or Gas Injection in
the Cisco Springs Unit in Section 10, Township 20 South, Range 23 East SLM, Grand
County, Utah, in accordance with Utah Code Ann. Sec. 40-6-7 and 40-6-8; and
approving of Unitization of the oil and gas formations; Petitioner, (General Minerals),
filed a motion to continue to January 2005.

196. On-Line attempted to file an untimely Appeal to Order No. 495046, which was
dismissed by the Oklahoma Supreme Court. (On-Line Inc. V. OCC. No. 102-808).

197. **December 14, 2004,** A "BENCH WARRANT FOR FAILURE TO COMPLY WITH
ORDER," was issued in Case No. SC-2003-1094 in Garfield County for
Agrawal.(Messer Bowers Case).

198. **January 17, 2005**, Kris Agrawal, signing as Manager of General Minerals Corp.,
and Gregory Williams signing as Manager of GEO Exploration, LLC execute a Change
of Operator Form 1073. The Change of Operator was approved on February 3, 2005.

199. On, or about, **January 24, 2005**, Global Financial sued Rodger Sparkman and the
Rodger and Lavella Sparkman Revocable Trust and On-Line Oil Inc., filed in Tulsa
County in Case No. CJ-2005-0456.

1. The language in the Sparkmans' Third Party Petition sought damages in excess of $10,000.00 as a result of Mittal Well Tech LLC's Breach of the Stock Purchase Agreement and Promissory Note including attorney's fees and costs.

2. Also, contained in the language of the Third Party Petition filed by the Sparkman's against Mittal Well Tech, LLC and Khrishna Kumar Agrawal, the Sparkmans cited the following; "In the alternative, Rodger and Lavella Sparkman hereby seek indemnification and contribution from Mittal Well Tech, LLC for any and all sums, if any, for which Rodger and Lavella Sparkman may be adjudged liable to Plaintiff." (Plaintiff being-Global Financial).

3. Again, the Sparkman's recited within the Third Party Petition the following; "In the alternative, Rodger and Lavella Sparkman hereby seek indemnification and contribution from Kris K. Agrawal, individually, for any and all sums, if any, for which Rodger and Lavella may be adjudged liable to Plaintiff. (again, Plaintiff being-Global Financial).

4. 'Realty's $250,000.00 Mortgage (originally taken on February 5, 2001), and UCC1 were re-filed on May 27, 2005 with the accompanying UCC1 excepting *"except that which is encumbered by a Financial Institution."* The interest rate associated with the new "note and mortgage" was increased to 10%. (This appears to have been done to evade and thwart Global Financial's pursuit of its $150,000.00 loan proceeds against Sparkman). (Agrawal never asserted a Lien Claim by 'Realty' in his pleadings associated with this case).

200. **April 14, 2005 thru July 2006**, the OCC and Murphy Plugged 36 of On-Line's wells. "According to Agrawal," [See Page 2, Item E, of Petitioner's Appendix Item # 10.

201. **April 29, 2005**, Kris Agrawal, fraudulently induced Manafest Corporation, (Robert Whitfield), to enter into an agreement to re-complete the State 16, B-1 well located in

Section 16, T-14N, R-4 East. Manafest spent $132,254.62 on the well and got nothing in return.

202.   May 13, 2005, at a hearing at the 'OCC,' ALJ Paul Porter, recommended that the 'OCC' Order No. 495046 was final and that On-Line Oil Inc's Motion to Stay, Reopen, and Clarify be denied.

203.   **May 18, 2005, On-Line's Hill Top Leasehold was Red Tagged by OCC and shut down.** On-Line failed to comply with Order No. 495046, "Bond Hearing." See Page 17,18, of Sup. Ct. Case, Arguments and Authorities within OCC/Respondents/Appellee's Answer Brief of Appellee, Oklahoma Corporation Commission in case # 104,110."

204.   **May 27, 2005**, On-Line Oil Inc., granted a renewed Mortgage to Realty Developers, LLC including an updated UCC-I adding language attempting to separate its Mortgage interest on the equipment located upon the Hill Top Lease from that of Global Financial Services, adds, "except that currently encumbered by a financial institution." The document was filed on May 27, 2005 in the Oklahoma County Courthouse and identified therein as document # 2005006632024 as acknowledged by appropriate filing stamp upon document.

205.   **August 16, 2005,** MESSER BOWERS COMPANY, INC., enters a Journal Entry against Mittal Well Tech in Garfield County. Case No. SC-2003-1094. Agrawal appeared at the hearing PRO SE. Agrawal stated under oath that he was no longer the President, an Officer, or Director of Mittal Well Tech, LLC but remained the registered agent for the company. (Refer to August 27, 2007, "Verification" of "Petition," of Case No.CJ-2007-646, Mittal Well Tech, LLC and On-Line vs. Anthony Feezel in Pontotoc County. Agrawal signed document as Manager of Mittal Well Tech, LLC w/ attestation).

206.   **August 22, 2005,** pursuant to OCC Order No. 970000297, On-Line Oil Inc., due to repeated violations of previous OCC orders, (PD97-140 & 97-297), was ordered to Plug

its non-producing oil or gas wells in Unit 1, known as the SAFFA Lands, no later that 21 days from the date of the Order and On-Line was further ordered to plug one non-producing oil or gas well each 21 days thereafter until all non-producing wells have been plugged.

207. **August 28, 2005,** Robert Whitfield of Manafest sends Kris Agrawal a notice of Working Interest Ownership for the State A# B-1 well located in Section 16, Township 14North, Range 4West in Oklahoma County, Oklahoma. Interests thereunder are described as follows;

5. 20% Robert Whitfield, 2900 N. Government Way, Coeur d Alene, Idaho, 82815

6. 15% Cathy S. Ray 8177 S. Harvard Ave. PMB 228, Tulsa, OK. 74137-1641

7. 15% Mans J. Montgomery, 3003 E. Hayden View Drive

208. **August 30, 2005,** RLI Sends Formal Demand "Notice" to Kris Agrawal and General Minerals Corporation that the BLM (Bureau of Land Management), in New Mexico has discovered a water leak on one of the wells covered by General Minerals Corporations Bond No. UIB0005420.

- RLI further advised Kris Agrawal of another demand for forfeiture of 'On-Line's Bond was in jeopardy also due to an 'OCC' hearing held on September 20, 2005, where five wells were covered under Bond No. UIB0006020 and the wells had to be plugged.

- RLI demanded that Kris Agrawal pay $55,000.00 to RLI by no later than September 15, 2005.

209. **October 14, 2005,** HillTop Redfork Sand Unit #1 and others file suit against Ron Kelly, City of Glenpool, Glenpool Church of the Nazarene, Rick Cypert, Tim Edwards, Ronnie Ashford and others in Case No. CJ-2005-06095 in the District Court of Tulsa, County. Attempting to circumvent the 'OCC' Plugging Orders to no avail.

210. On **October 18, 2005,** EN 2005000265-T came on for hearing on the amended complaint against On-Line for failing to comply with Order No. 495-046 (the Bond

Hearing), in which 'OCC' Staff sought the forfeiture of On-Line's Surety Bond (Plugging Bond), to cover the costs of plugging wells in the 'HTL' Red Fork Sand Units. (Amended Complaint, R. 493-495: Transcript, R. 139-163).

211.  On **November 10, 2005**, the 'OCC' issued Order No. 514685, finding notice was given as required by law and the rules of the 'OCC', and further finding that 'On-Line's Surety should be forfeited to plug five wells operated by 'On-Line' that were specifically described in the Order. (Ref. 497-501).

212.  'On-Line's Operator's Surety Bond was raised to $100.000.00 on November 10, 2005. (Order No. 514685). This 'Order' revoked and forfeited 'On-Line's Surety Operator's Bond. The proceeds were used to plug five additional wells at the 'HTL.'

213.  'On-Line' attempted to get the Order No. 514685 Set Aside or Modified by objecting to "Service."

214.  **December 5, 2005**, Agrawals tried to get Gregory Williams to resign from RDL. Gregory Williams was lawfully due his proportionate share of the ORRI, Lien, Mtg., and any and all payments due to 'Realty,' Kris Agrawal presented Gregory a two page 'Resignation Agreement' which Gregory refused to sign or agree to. Agrawal later produced the same 'Resignation Agreement' bearing a signature Agrawal claims was thereto affixed by Gregory Williams. Williams and Agrawal are in a Lawsuit regarding that 'Resignation today in CJ-2010-4573 filed by Kris Agrawal on behalf of 'Realty' Pro Se.

215.  **December 07, 2005**, the 'OCC,' under Final Order No. 514685, ("Bond Order"), forfeited the Surety Operator's Bond of 'On-Line' and ordered RLI to remit $25,000.00 to the 'OCC' Surety Department by Decenber 10, 2005. RLI timely paid that amount over to the 'OCC' on December 7, 2005, RLI and began their attempt to collect from Agrawal pursuant to their indemnity agreement with Agrawal. On June 3, 1998, Agrawal and Rensark and UIC entered into an Indemnity Agreement signed by Kris Agrawal on behalf of 'Rensark' and as personal indemnitor, indemnifying UIC against Loss. Agrawal refused to pay as agreed. A subsequent lawsuit followed between the parties.

65

216. **December 13, 2005,** Liberal Area Radiator Service filed suit against Kris Agrawal and others in Beaver County, Oklahoma under CS-2005-00089. (Seeking $5,000.00 for unpaid debt for equipment repair).

217. **December 26, 2005,** Agrawal sent an email to Beth Hammond at Scissor Tail Energy advising that he wanted to; "Substitute On-Line Oil Inc. to: Coal Gas USA, LLC with same address." "The signers name would be: Amy Agrawal." Kris Agrawal simply wanted to change two pages from within the On-Line Oil Inc., gas sales contract from On-Line to Coal Gas USA, LLC. **(Evidence of attempt to Circumvent OCC's Order raising On-Line Oil Inc.'s bond to $100,000,00).** **Document is located at page 217 of 418 page CD** submitted in Tulsa County Court Case CJ-2008-6839 by Scissor Tail Energy.

218. **January 11, 2006,** Kris Agrawal presented a letter dated 1, 11, 2006, to the Sheriff's department in Okmulgee Oklahoma. The contents of that letter claimed that On-Line Oil Inc. had a Pulling Unit stolen from the Wilson Lease in Okmulgee County by Cody Higdon. Attached to and made a part of that complaint letter was a "Bill of Sale" document dated March 4, 2001; A "Promissory Note" dated August 3, 2000, and a Vehicle Buyer's Order from Truck Center of Tulsa Inc. A copy of a check from A. Feezel Company. P.O. Box 1371, Ada, Ok. 74821 was also attached as evidence which illustrated on its face that A. Feezel paid Dub Lewis $3,500.00 for that same truck on January 19, 2006.

- The Promissory Note contained the signature of Kris Agrawal signing thereon as Mittal Well Tech, LLC at 4133 No. Lincoln Blvd. OKC, OK. 73105 as buyer and Billy A. Wadley as Partner signing for Bill Wadley and Son Drilling Co., 11461 Smith Road, Okmulgee, OK. 74447 as sellers. The Promissory Note was dated August 3, 2000.

- The truck on which the Pulling Unit Draw works was situated was described in the Letter to the Okmulgee County Sheriff as a 1975 White RoadBoss, VIN# FPG2PN1837854. The Draw Works, considered to be the actual Pulling Unit apparatus was identified as Model 1234B, S/L 169 constructed and completed as a working apparatus on 10-1-1957.

66

- The Letter, signed by Kris Agrawal as complaintant, stated in the last paragraph, on page 1,

- "We transported the Kenworth Truck from Oklahoma City, on Saturday 1/7/2005.

- Letter stated that Cody Higdon last worked on the "Rig," [Pulling Unit], on November 23, 2005 and left for a hunting trip that day. (Indicates last date anyone worked on the Hill Top Lease).

219. **January 30, 2006,** On-Line Oil Inc.'s Appeal No.102, 808 was denied.

220. **February 1, 2006,** The Oklahoma Supreme Court Denied 'On-Line's Appeal under case No. 102,808 as being filed untimely.

221. On **February 28, 2006**, the ALJ heard On-Line's Objection and "Denied" 'On-Line's Motion.

222. **February 28, 2006,** On-Line filed a motion with OCC to "set-aside" or "modify" Order # 514685 and the motion was heard of February 28, 2006 and denied.

223. **May, 2006,** the OCC, again, approved SF, [State Funds Cases], authorizing State Funds being used to plug additional wells on Hill Top Leasehold.

224. **May 17, 2006,** 'On-Line and Rodger Sparkman and the Rodger Sparkman Revocable Trust submitted to Global Financial an "offer to confess judgment" in the amount of $22,500.00. The offer was good for 5 days after its service.

225. **June 2006,** On-Line and 'OCC' appeared for a hearing on SF State Fund Cases. The ALJ approved State Funds for plugging additional Wells.[Page 9, Supreme Court Decision], case # 104,110. OCC also determined <u>"On-Line could not legally produce the wells because it did not have a surety bond in place as required by 52 O.S. 2001 § 3181."</u> [Wells are identified in Supreme Court's Footnote at bottom of page 9].

226. **<u>June 11, 2006, Coal Gas Mart, LLC, Deep Industries Ltd., sign contract with Directorate General of Hydorcarbons to validate its bid awarded to the 'consortium' entities.</u>**

227.  **June 13, 2006,** Rodger and Lavella Sparkman filed Third a Third Party Claim against Mittal Well Tech, LLC and Kris Agrawal. Under the Third Party Petition, the Sparkman's were seeking to recover from Mittal Well Tech, LLC and Khrishna Kumar Agrawal individually, all monies owed and due under the Promissory Note and Personal Irrevocable Guaranty related to the purchase of 'On-Line' Oil Inc.'s 'stocks' and for all sums that might be adjudged against the Sparkmans in that litigation.

228.  **July 19, 2006,** Kris Agrawal sent Beth Hammond of Scissor Tail a letter stating he had just received the Gas Contract in the mail today, (July 19, 2006), and further advised her that the "gas rights were vested in Coal Gas USA, LLC., and that he, (Agrawal), still wanted the contract in the Name of Coal Gas USA, LLC. (The actual assignment of "Oil and Gas Rights Only" assigned from 'On-Line' to Coal Gas USA, LLC, wasn't executed until August 4, 2006 and thereafter recorded in the Tulsa County Courthouse until Sepetmber of 2006).

229.  This assignment did not involve any lawful consideration being exchanged between the parties, ('On-Line' and Coal Gas USA, LLC, instead the Assignment of interests was used solely;

230.  To evade and circumvent the 'OCC' Surety Bond increase of $100, 000.00. (Ref. Item 10 at Page 2 and subhead G as set out in Case No. 110,414 filed in the Supreme Court of the State of Oklahoma on March 7, 2012). Wherein, Kris Agrawal at page 2 and subhead G stated the following; "On August 4, 2006, (Inst. No. 2006116427), On-Line Oil, Inc. sold its interest to Coal Gas USA, LLC who posted a $25,000.00 bond with Oklahoma Corporation Commission (OCC). 'This bond was not approved and Coal Gas USA, LLC was advised by Steve Smith that the wells will remain shut-in until they are plugged with State Funds to build homes and to develop recreation facilities.' 'It did not matter how much bond was posted.' 'On-Line' could have posted the $100,000.00 bond but OCC would use this money to plug the wells."

231.  (Ref. January 22, 2007 email from Kris Agrawal to Ron Walker where Agrawal stated to Walker, "But Commission won't transfer the wells to me, as I am Handicapped)."

232.  Agrawal purposefully withheld from both, Parent and Walker that the 'real' reason he didn't operate the 'HTL' was because 'On-Line's Surety Bond had been increased to a staggering $100,000.00.

233.  Thus, it is apparent that Khrishna Kumar Agrawal, acting in deceit and dishonesty in regard to his business dealings with Parent and Walker, had upon conspiracy with;

- Newton Agrawal, (Owner of both 'On-Line'and 'Coal Gas USA, LLC);

- Rodger Sparkman, (holder of a first lien upon the 'Stocks' of 'On-Line');

- Amy Agrawal, (owner of GEO Exploration, LLC and the potential 'signatory' for Coal Gas USA, LLC);

- and Vimala Agrawal, (68% owner of 'Realty' who supposedly held an ORRI, Lien, $250,000.00 Mtg. against 'On-Line');

- intended to, from the beginning of discussions and negotiatons, to unlawfully "decieve" and "use" Parent and Walker in the Agrawals' ongoing effort to again, deter, evade and thwart the "OCC" from inflicting its Surety Bond Increase of $100,000.00 upon the Agrawal Family and;

- To deter the 'OCC' from attaching and pursuing a Lien against 'On-Line' to recover "State Funds spent on plugging 'On-Line's wells at the 'HTL';

- To deter pursuit by CompSource in an attempt to recover an amount owed to the State of Oklahoma of approximately $300,000.00;

- To deter Gregory Williams from seeking thousands of dollars owed him under his proportionate 32% share of all proceeds owed to 'Realty' by 'Online;'

- To deter Rodger Sparkman from foreclosing under his 'Promissory Note and Personal Irrevocable Guaranty signed by Kris Agrawal;

- To deter Global Financial, LLC, a financial institution from foreclosing on its secured collateral pledged to Global under its prior lien and Mortgage,

69

- To deter Messer Bowers from collecting on its judgment in Garfield County against Mittal Well Tech, LLC;

234. And further reflected upon the Assignment of August 4, 2006 as identified below;

- **August 4, 2006**, On-Line Oil Inc. Upon document # 2006116427, filed in Tulsa County Courthouse on October, 9, 2006; Document is signed by Newton Agrawal, as President of On-Line Oil Inc;

- assigns, ["SOLD"], all its interest in the "Oil and Natural Gas Rights Only," to Coal Gas USA, LLC. Agrawal states in Petitioner's Appendix, in Case No. 110,414 identified as Item 10 in Petitioner's Appendix document at item G., on page 2, "On August 4, 2006, (Inst. No. 2006116427, On-Line Oil Inc., sold its interest to Coal Gas USA, LLC who posted a $25,000.00 bond with Oklahoma Corporation Commission, (OCC)."

- Further stating in same id. Sentence 2,on following page 3 at the top, "This bond was not approved and Coal Gas USA, LLC was advised by Steve Smith that the wells will remain shut-in until they are plugged with State Funds to build homes and to develop recreation facilities."

- Continuing in the following sentence, "It did not matter how much bond was posted." Continuing, in the next sentence, Agrawal continues by saying, "On-Line could have posted the $100,000.00 bond but OCC would use this money to plug the wells."

235. **August 7, 2006,** an inter-agency email between Beth Hammond and Carol Morgan of Scissor Tail Energy reflects that Beth Hammond, due to not receiving the executed Gas Contract originally sent to Agrawal over a year earlier, and, having not received the new executed Contract by Coal Gas USA, LLC, had ordered the suspension of On-Line Oil Inc.'s Gas Contract # GLP-3099 dated 12-01-2005 and covering Meter #75-400. The letter also stated that the last production for meter # 75-400 was (51 MCFD), February, 2006.

236. **August 17, 2006**, Ten Hoeve Bros. Inc. a New Jersey Corporation filed a document titled, "Order Enforcing Security Interest and Precluding Garnishment," against Kris K. Agrawal d/b/a Kay Kay Associates Engineers under Case No. CJ-99-878 wherein in 2002 Ten Hoeve Bros. obtained a Garnishment against a CD pledged to UIC. UIC prevailed in regard to that CD #9490080 that was held in Boatmen's 1st National Bank of Oklahoma which later became Bank of America.

237. **August 23, 2006**, Deep Industries Ltd. in India, a partner with Kris Agrawal goes public, IPO opens August 29, 2006. Source: IBDI Capital Press Release, India, www.ibdicapital.com/news10.asp

- Last Sentence of page 2 of the 2 page documens states; "The company has recently bid for 1 Coal Bed Methane Block in Andhra Pradesh jointly with Coal Gas Mart, LLC and Adinath Exim Resources Limited, Ahmdebad and 1 Coal Bed Methane Block in Madhya Pradesh jointly with Coal Gas Mart, LLC, USA.

- **September 1, 2006,** 'On-Line' filed its answer in Case No. CJ-2005-0456 wherein and upon its two page document, 'On-Line' at item No. 4 'On-Line' stated, "On-Line or the other defendants timely paid or tendered all sums lawfully due as due and On-Line denies liability to Plaintiff."

- **September 6, 2006,** Greg Lang sent Kris Agrawal a letter advising that the Meter would be disconnected on October 1, 2006 and any monies owed would be held in suspense until such time that the proper information had been received.

238. On **September 7, 2006**, the 'OCC' dismissed 'On-Line's Motion to Modify or Set Aside Order No. 514685, for being filed out of time. (Order #529376, R. 517).

239. After Order No. 514685 issued in the Bond Hearing, 'OCC' Staff filed three applications to use "State Funds" to plug six additional wells operated by 'On-Line' that the "Surety Bond" of 'On-Line was insufficient to cover. (SF No. 200600025, SF No. 200600027, SF No.200600072, the "State Funds Causes").

240. **September 7, 2006**, at an OCC hearing;

- [Refer to item #107 on page 14 of Sup. Ct. Case, Arguments and Authorities within OCC/Respondents/Appellee's Answer Brief of Appellee, Oklahoma Corporation Commission in case # 104,110], Agrawal stated, *"all of the assets of On-Line were gone."* (Another attempt by Kris Agrawal to discourage pursuit by the 'OCC' to recover any State Funds that might be spent by the State of Oklahoma for the costs of plugging 'On-Line's wells at the 'HTL').

- See page 17, same *id.* as previous item, Last sentence of page 17, and continues onto page 18, the OCC counsel, Michele Craig, stated, " The abandonment only became undeniably certain when 'On-Line' failed and refused to plug its wells during the final twenty-one day period granted to it under Order No. 495046."

- See page 13, item 97 same id. as privious item, the field inspector for the district office of the 'OCC' under which the Hill Top Lease were located stated, "he had not seen the wells producing in six years, and that <u>On-Line no longer had authority to operate wells in Oklahoma."</u>

241. At the **September 7, 2006**, hearing Khrishna Kumar Agrawal stated, "<u>*All the assets of On-Line were Gone."*</u> (Page 14, Item No. 107). (OCC. Ref. 333-334).

- Pursuant to 18 O.S. §1026 (B) (2), the Secretary of State became the registered service agent for On-Line after its registered agent resigned in 2003. (R. OCC. 386). (Another delay tactic use by the 'Agrawal's by stating that the 'Registered Agent' for 'On-Line' had resigned).

- "It should be remembered that 'On-Line" claimed throughout these proceedings set out above, it had not abandoned the wells."

- "The abandonment only became undeniably certain when 'On-Line' failed and refused to plug its wells during the final twenty-one day period granted to it under Order No, 495046." (Page 17-18).

242. Khrishna Kumar Agrawal had been given numerous extensions of time to come into compliance with the "permanent order" issued to 'On-Line' wherein Khrishna Kumar

'Agrawal' testified that he had investigated and understood the requirements of the "permanent order." (Order No. 416219).

243.   **September 7, 2006**, 'OCC' dismissed Order No. 529376, ('On-Line's Motion to Dismiss or Set Aside the Bond Hearing Order), "due to it being filed out of time."

244.   **September 11, 2006**, 'Agrawal' filed a "motion to reconsider" concerning all the previous Orders. Motion was dismissed and denied by 'OCC.'

245.   **September 12, 2006**, 'OCC' filed a Contempt Citation, Cause En No. 2006600341against GEO Exploration for non-compliance with Commission Rules and the same action asked for forfeiture of GEO Exploration, LLC's surety bond. (Amy's House) in Kansas City, Mo. secured that financial statement). Resulting in October 26, 2006 Notice sent from Kris Agrawal to Jerry Coyle, Pumper of Jerry #2 well in Beaver County where GEO Exploration LLC, (owned by Amy Agrawal), had allowed pollution and debris to be scattered across the location.

246.   **October 2, 2006**, 'Parent' and 'Agrawal' and Bill Hall conducted their first-ever meeting at NE 50th and Lincoln Blvd. 'Agrawal' promised 'Parent' a $25,000.00 Finder's Fee if 'Parent' could find a legal operator to operate the Hill Top Leasehold. The Operator had to quickly post a surety bond and begin operations. 'Parent' and 'Agrawal' agreed.

247.   **October 2, 2006**, 'Parent' and 'Agrawal' agreed that 'Parent' and 'Hall,' (Agrawal's then Attorney), would form a company titled, 'Time Exploration' and take over all of Kris Agrawal's oil and gas operations (according to and as reflected upon related agreements, and notes), reached during the two following hours of discussions between 'Parent' and 'Agrawal' at Agrawal's offices at 4133 North Lincoln Blvd in Oklahoma City, Oklahoma.

248.   **October 3, 2006, 'Hall,'** prepared the "Time" Agreement and presented it to 'Parent' for approval. Upon review of document 'Parent' took the document (Time Agreement) to 'Agrawal' for his review but 'Agrawal' failed to sign the 'Time Agreement.'

249.  **October 4, 5, 6, of 2006**, 'Parent' observed and evaluated the Hill Top Leasehold and took videos of all the equipment and fixtures located on the Hill Top Leasehold. 'Parent' took video and still pictures of the Hill Top Leasehold as directed by 'Agrawal.' (for which 'Agrawal' never paid 'Parent' his editing time associated with the creation of those discs).

250.  **October 10, 2006** 'Parent' advised 'Hall' and 'Agrawal' that due to its enormous size and financial commitment required, 'Parent' would not attempt to 'Operate' or the Hill top Leasehold but would instead seek out an 'Operator' and 'Buyer' as previously discussed by 'Parent' and 'Agrawal' on October 2, 2006 wherein and upon 'Parent' finding a legal 'Operator,' 'Parent' would receive a $25,000.00 Finder's Fee.

251.  **October 12, 2006**, 'Parent' advised 'Hall' that 'Agrawal' hadn't signed the' Time Exploration Agreement.' 'Parent, 'after the meeting with 'Agrawal' on October 3, advised 'Hall' of the facts that 'Parent' and 'Agrawal' had agreed to under the contract known as the 'Time' agreement, stating to 'Hall' that mileage for the use of 'Parent's van at .50 cents per mile, a daily expense fee was to be provided to 'Parent' of $100.00 per day by 'Agrawal,' and a $100.00 per day wage would be paid to 'Parent' by 'Agrawal,' along with a 15% bonus payment from all production from the Jerry #2 which 'Parent' would immediately resolve any 'OCC' issues, and another 5% bonus would paid to 'Parent' from all production from all leases owned by 'Agrawal.' These new items were already made a part of the 'Time Exploration agreement' 'Parent' had given to 'Agrawal' on October 3, 2006.

252.  **October 12, 2006**, was the day that 'Hall', 'Agrawal', and 'Parent' attended the 'OCC' hearing.  Kris Agrawal, thereafter, gave the Daily Oklahoman's investigative reporter an interview. Bill Hall also made statements to that reporter along with Jim Hamilton from the 'OCC' Staff.

253.  **On, or about October, 18, 2006,** Kris Agrawal attempted to substitute another unknown and irrelevant, agreement upon 'Parent' for 'Parent's signature. 'Agrawal' had failed to sign the 'Time' Agreement as promised. 'Parent' refused to sign the "Lease Operator Agreement" which Kris Agrawal had attempted to coerce 'Parent' into signing to replace the 'Time' Agreement.

254.  **October 24, 2006**, Bill Hall, partner with 'Parent' in 'Time Exploration' sent 'Agrawal' an email advising 'Agrawal' that the contract which 'Agrawal' had attempted to substitute in place of the 'Time Exploration Agreement' was, <u>"unrealistic and completely beyond the financial and operational capabilities of Jerry Parent and Time Exploration." (Ref. email sent from Bill Hall to Kris Agrawal.</u>

- Note; Language in that email reflects 'Agrawal's upcoming trip to India on October, 28, 2006. This was 'Parent's first knowledge concerning the Coal Bed Methane Block acquisition efforts being expended by 'Agrawal' and Coal Gas Mart, LLC. Agrawal had stated to 'Parent' a need to go to India to affirm the award of 2 Coal Bed Methane Blocks awarded to Coal Gas Mart, LLC under Round III, 2005 bidding rounds, of the Government of India's CBM offerings.

- Deep CH4 Private Limited was incorporated on November 15, 2006,

- Company Number U1429GJ2006PTC049371,

- Company Type- Company Limited by Shares

- Jurisdiction: India

- Registered Address; 6th Floor, N.G. Tower, OPP. ISCKON TEMPLE,S.G.ROAD, AHMEDABAD, GUJARAT, INDIA

- STATUS – ACTIVE

- SOURCE FOR THIS INFO. LISTED ON DOCS, AS INDIA MINISTRY OF CORPORATE AFFAIRS, www.mca,gov.in/ , 20 October 2011.

- Note: At, or near this time frame of October/November of 2006 or earlier, Coal Gas Mart, LLC became a successful bidder in Round III of CBM Blocks awarded by the Indian Government. The 2 CBM Blocks acquired by Coal Gas Mart, LLC were;

- 1. SR(N)-CBM-2005/III in Madhya Pradesh

- 2.GV-(N)-CBM-2005/III in Andhra Pradesh

- Although the bid was acquired in 2006 at the bid opening, the actual bids were submitted in 2005 according to news articles from Indian Government.

255. **October 26, 2006**, Kris Agrawal sent a Notice to Jerry Coyle, pumper of the Jerry #2 well in Beaver County, that the 'OCC' had threatened to forfeit Amy Agrawal's surety bond for GEO Exploration, LLC due to debris and other incidents of contamination causing the citation of EN No. 200600341 to be issued.

256. Agrawal blamed Jerry Coyle, Pumper of Jerry #2 as being responsible for the citation.

257. The Surety Bond was secured by Amy Agrawal's house in Jackson County Missourri, further described as;

- The North 5 feet of Lot 22 and the South 40 feet of Lot 23, Block 8, Armour Hills Gardens, a subdivision in Kansas City, Jackson County, Missourri, according to the recorded plat thereof.

- Missouri Warranty deed is dated April 9, 2003.

258. **October 28, 2006**, Agrawal again, attempted to Substitute his own crafted, "Oil Lease Manager agreement" to 'Parent' to replace the 'Time' Exploration Agreement prepared by Hall on October 3, 2006.

259. **November 6, 2006**, OCC issued Order # 532533 denying On-Line's previous Motions and Arguments and denying re-consideration of Order # 529376, which had refused to "set aside" Order # 514685's forfeiture of On-Line's surety bond and granting OCC the right to use State Funds to plug additional wells.

260. **November 15, 2006**, Kris Agrawal, having recently returned from India, sent to Bill Hall, his then attorney, an email stating, among other things, he, (Agrawal had been too busy caring for wound, suffered in India during an attempt to board a bus there), didn't have time at present, to discuss the matter of the 'Time' Exploration Agreement.

261. **November 20, 2006**, Global Financial, Rodger Sparkman and 'On-Line' and Kris Agrawal and Mittal Well Tech, LLC entered into a "Settlement Agreement" agreeing to settle Plaintiff's, Global Financial), claims for a payment of $100,000.00 from Defendant's to Plaintiff on or before January 17, 2007. Defendants failed to pay as agreed.

262. **November 21, 2006**, Kris Agrawal sent Bill Hall and email stating that Jerry Parent had been given a check for $750.00 to be used to help defray Parent's costs for salvaging an old delapidated Frac tank located upon the Jerry # 2 leasehold in Beaver County. The 'OCC' had demanded that all debris be removed from that well site immediately in addition to the work already performed there by 'Parent' and others employed by 'Parent' previously to bring that wellsite into compliance as promised to the 'OCC.'

263. **November 22, 2006**, The 'OCC' Commissioners voted unanimously to uphold Order No. 495046 and 529376 and approved State Funds to be used to plug five of 'On-Line's wells stupulating that;

- "any equipment or pipe having Salvage value should be used to off set the cost of plugging the wells." And, that,

- "If any responsible party for the plugging of these wells can be located at a later date, then the 'OCC' expressly reserves the right to seed reinmbursement against the responsible part for the expenses incurred in the plugging of the wells." And, that, "Further, any identifiable and valid surety bond for this lease may be drawn upon to satisfy the amount of funds used to plug the wells."

- At Page 6 and Item 8 of that document, the 'OCC' acknowledges the attempt by Coal Gas USA, LLC to circumvent the Surety Bond Increase assigned to 'On-Line.'

- Further the document states at Item 8 on page 7 the following; "The address of Coal Gas USA, LLC is 4133 N. Lincoln Blvd. Oklahoma City, OK. 73105-5203. "

- "Because Mr Agrawal is an insider or affiliate of both entities, the Transfer Forms have not been approved."

77

- "This Commission rule was designed specifically to prevent avoidance of posting adequate surety in situations such as this."

264. **December 8, 2006,** Kris Agrawal submitted to Jerry Parent a document titled; "PROJECTS IN ORDER TO SPEED OF CASH FLOW. This document contained 10 items listed in the order of importance to Agrawal for generating Cash Flow as follows;

1. Produce Jerry #2 in Beaver County.

2. Rock Mining, A business transaction where Agrawal 'tricked' 'Parent.'

3. Hill Top Bond and Transfer Wells to new Operator and Buyer.

4. Call ScissorTail Energy to test and buy gas from the Wilson Lease in Okmulgee County.

5. Cup up Frac Tanks in Beaver.

6. Complete Brown Well with Polymer, Buying Tubing and Packer, 3 day job.

7. Get tank trucks ready to TREAT wells to produce more oil all leases.

8 Do Polymer job in State 16-B well in Oklahoma County. (another bad deal by Agrawal, bilking investors).

9. Do Polymer job in Earlsboro Lease.

10. Sell land Agrawal owned in Leflore County, and gas station Agrawal owned in Rush Springs.

265. **December 11, 2006,** Parent and Agrawal signed a "Revenue Sharing Agreement" sent by email attachment from Ron Walker to Kris Agrawal and designed to keep the 'OCC' from plugging more wells.

- Note language on email containing the attached "Revenue Sharing Agreement," language clearly reflects temporary status of Revenue Sharing Agreement, which is to be used, to prevent OCC from plugging any more wells at Hill Top Leasehold, the

Revenue Sharing Agreement was to soon be replaced by an onoing negotiated Purchase Agreement as the language theron clearly reflects.

- 'OCC' Order No. 416219 found that more than 100 wells should be plugged, but allowed 'On-Line an additional five years to restore production in each well. (R. OCC. 410-418). (Mr. Agrawal testified repeatedly that 'On-Line didn't have the capital to plug the wells. (R. OCC. 333-334, 2079-2080, 2103-2105).

- 'OCC' rules require wells to be plugged one year after they have stopped producing.

- 'OCC' order No. 532533 referenced a State of Oklahoma Lien created by O.S.§53.3 on well-site equipment.(Ref. 'OCC' 554). When State Funds are used to plug wells which operators fail to plug, or when the Operator's Surety Bond, upon forfeiture, fails to cover all the State's costs associated with plugging.

- O.S.§53.3 provides the state with a method for recouping some of the financial costs when an operator fails to plug its wells.

- 'On-Line's pipe and equipment were lienable due to the "State Funds' being used to plug wells at the 'HTL.'

266. **January 13, 2007,** Agrawal offered to sell 'Parent,' or any 'Buyer' found by 'Parent,' the 'Hill Top Leasehold' for no more that $400,000.00 inclusive of the $100,000.00 Agrawal admits Roger Sparkman was still owed at that time.

267. (Parent gave this offer to Ron Walker at Joplin, Missouri on January 15, 2007).

268. Walker had been waiting on a "real" offer from Kris Agrawal for several weeks attached to the Offer titled Lease Assignment Agreement was an inventory list of all equipment owned by 'Realty' that would be part of and included in that purchase amount. Within and upon the sixth paragraph of that document was the first reference to any outsider who was referred to as having any interest in the 'HTL' other than 'Realty.' Agrawal had kept this secret concealed from both, Parent and Walker since October of 2006.

269.  **January 16, 2007**, RLI Insurance Company, an Illinois Corporation, filed suit against Kris K. Agrawal an individual, and On-Line Oil Inc. in Oklahoma County District Court in Case No. CJ-2007-377. Breach of Agreement.  Seeking release of funds in a CD deposited in Bank of America. RLI sues for Surety Bond forfeiture to the Oklahoma Corporation Commission Bond #BO6020, in the amount of $25,000.00. RLI sought to have Agrawal pay that amount over to RLI.

270.  **January 22, 2007**, Khrishna Kumar Agrawal sent to Ron Walker an email stating;

- "Ron, Look up PEMC symbol, we started doing business with Pacific Energy and Mining Company and put this company from shell to trading shares."

- "We have 23 million dollars of certified reserves and acquired 170,000 acres of coal seam gas, 3 TCF in India worth 10 billion dollars. Do you want to sell me your shell and will go public, or find me a shell public company."

- "Doing business with lawyers is dangerous."

- "How can you go public again without any money, $25,000.00 LC for bond, I got that in one hour which I have withdrawn in fifteen days since filing request on December 22, 2006."

- **"But Commission ('OCC'), will not transfer to me since I am handicapped."** (*more, not cited here*).

271.  Another email sent to Ron Walker the same day listed three pages worth of work to be done immediately on the Hill Top Lease. (Agrawal tried to treat us as though we were just hands). Total of the three pages consisted of 26 items and how long they would take to complete. These two pages clearly reflected just how extremely out of touch Kris Agrawal was with the reality of how run down the Hill Top Lease had become due to the Agrawals' continued neglect and failure to maintain the 'HTL.'

272.  **January 23, 2007**, Ron Walker formed CO&G Production Group, LLC.

273.  On **March 9, 2007**, RLI Insurance Company filed suit against Kris K. Agrawal, an individual, and On-Line Oil Inc., in Case No. CJ-2007-377 in Oklahoma County

District Court. (Seeking to collect $55,000.00 for the Two Surety Bonds forfeited by the 'OCC' and the Bureau of Land Management (BLM), in New Mexico).

274. **March 19, 2007,** Global Financial filed its "Motion for Summary Judgment" in Case No. CJ-2005-0456 against Rodger Sparkman, 'On-Line,' and Rodger or Lavella Sparkman Revocable Trust for Breach of Contract seeking judgment for $110,394,45, interest of $30,098.45, and additional interest since October 25, 2006 at 10.25%. per annum, or, in the alternative, for judgment on the Settlement Agreement against each of the defendants in the sum of $100,000.00, interest at the statutory rate per annum from January 17, 2007, costs of the action, attorneys fees, and such other relief as the Court deemen proper and just.

275. **April 23, 2007,** Global financial, LLC enters a dismissal of its claims with prejudice to Rodger Sparkman and the Rodger or Lavella Sparkman Revocable Trust. 'Global' does not dismiss its claims against 'On-Line.'

276. **April 24, 2007,** Kris Agrawal called Jerry Parent while 'Parent' was at the Hill Top Lease working on Environmental issues at the Tank Battery. Agrawal requested that Parent come immediately to the Offices at 4133 North Lincoln and assist him on a re-completion effort in Beaver County at the Brown 6-1 well. Agrawal stated to 'Parent' that he, (Agrawal), and his wife had decided to go full-bore in the Oil and Gas business. Parent took notes and was on the phone with 'Agrawal' for over an hour.

277. 'Agrawal' promised 'Parent' that if he, ('Parent') could assist the 'Agrawal's on this effort, that he, (Kris Agrawal) would pay to 'Parent' all the back wages, costs, bonuses, and Finder's Fee, all of which, was still owed to 'Parent' by the 'Agrawal's collectively.

- Agrawal had given 'Parent' a contact name and phone number of a contact person whomto coordinate the project with named Ricky at Bronco Energy Services.

- 'Parent' advised 'Agrawal' that he, ('Parent'), would call Ricky and begin the process only if 'Agrawal' would pay 'Parent' if full upon 'Parent's arrival at the offices.

- During the phone conversation with Ricky, 'Parent' was advised by Ricky that he, (Ricky), had just spoken with **Kris Kay'** about the project earlier in the day.

- Upon 'Parent' realizing that 'Agrawal' was deceiving Ricky through the use of a False name, 'Parent' immediately called Wilburn C. Hall and advised 'Hall' that he should call 'Agrawal' and explain to 'Agrawal' that 'Parent' was not going to Beaver County to aid 'Agrawal' in running up mountainous bills without any intentions of paying the vendors or the employees, a tactic 'Parent' had witnessed used by Kris Agrawal in the past.

- 'Hall' called 'Agrawal' and advised him that 'Parent' would not go to Beaver County due to 'Agrawal's use of a False name and possibility of being subject to criminal charges resulting therefrom.

- Instead, 'Agrawal' hired Chris Holland and sent 'Holland' to Beaver County, with false and malicious intentions carried out by Chris Holland unknowingly.

- Agrawal, never paid to 'Parent' the monies owed to 'Parent' due to 'Parent's refusal to participate in the Scam.

278. RLI Insurance Company, Illinois, a Corporation. V. Kris K. Agrawal, an Individual, and On-Line Oil Inc., and Oklahoma Corporation. Filed in the District court of Oklahoma County, Oklahoma on March 9, 2007.

279. **July 31, 2007,** Newton Agrawal executed a *Corrected Assignment of Working Interest,* from On-Line Oil Inc., to Coal Gas USA, LLC. The document # is, 2007088473 and is filed in the Tulsa County Courthouse. It conveys from On-Line to Coal Gas USA, LLC all zones, except the Unitized Red Fork Sand zone. This document was stated to have corrected the previous document dated September 4, 2006.

280. **On or about, August 1, 2007**, Ron Walker and Kris Agrawal executed a document titled, "CONTRACT FOR SALE OF LEASE RIGHTS AND APPOINTMENT OF OPERATOR," in Tulsa County.

281. **August 21, 2007,** Jerry Parent and Gregory Williams signed "CONTRACT FOR SALE OF LEASE RIGHTS AND APPOINTMENT OF OPERATOR. Gregory Williams received $500.00 payment at Bank of America in Tulsa. The remaining balance of

$500.00 was due upon Gregory Williams producing documents to Ron Walker's approval.

282. **August 24, 2007,** 'Agrawal,' in a letter faxed to West OK Trucking, Attn. Neal Freeman, Phone: 580-256-1177, and under the Letter head of GEO Exploration, LLC, 4133 No. Lincoln Blvd., Oklahoma City, OK. 73105, sends instructions as to the details of the moving of a gas compressor from the Hill Top Leasehold to be moved to Beaver County to the Brown 6-1 well site. Kris Agrawal signed the faxed letter as ***KRIS KAY***.

283. **August 27, 2007,** On-Line Oil Inc. issued its check # **7263** in the amount of $250.00 to Wadley and Sons. The check was drawn on Americrest Bank in Oklahoma City, Ok., Account # 1118209, and was signed by Kris Agrawal. The address shown on check was 4133 No. Lincoln Blvd, Oklahoma City, Ok. The "for" line on check stated, **"Wagner Morehouse Pulling Unit Payment."**

284. **August 27, 2007,** 'Parent' received email confirmation of his agreement and understanding with Ron Walker.

285. **August 28, 2007,** Realty Management Associates LLC, reflecting its address as 6704,NW110th, Court, Oklahoma City, OK., issued Check # 14339 to Janice Wadley for $250.00 also, the check was signed by Kris Agrawal. The "For" line shows "Pulling Unit Payment." Both checks were submitted as evidence in the Pontotoc County Case, On-Line Oil and Mittal Well Tech vs. Anthony Feezel, Cody Higdon and others. Case No. CJ-07-646 filed September 4, 2007.

286. **September 11, 2007,** Kris Agrawal, signed as Manager of Geo Texploration, by Quit Claim Deed assigns Lot 15 of Block 4 of Braden Park II, an addition to the City of Oklahoma City, Oklahoma County Oklahoma, according to the plat thereof to Realty Developers, LLC all of Geo Texploration's interest. (Notice: Exemption 3202 ¶ 4 reference on deed. Document was recorded on December 4, 2007, Document # 2007173145.

287. **November 8, 2007,** Kris Agrawal filed an 'Appeal' in Appellate Court as Case No. DF-105250 -101163 titled therein as Tool Pushers Supply v. Agrawal.

288. **November 26, 2007**, FESCO Ltd. filed suit in Beaver County, Oklahoma against GEO Exploration, LLC and Kris Agrawal in Case No. CV-2007-00071 seeking unpaid debts.

289. **December 31, 2007,** Kris K. Agrawal got letter from Brandon P. Wilson of the Edmonds Cole Law Firm. Advising Agrawal and Mittal Well Tech, LLC of a hearing scheduled for January 22, 2008 in Pontotoc County in Case No. CJ-2007-646, Mittal Well Tech, LLC and On-Line Oil Inc., vs. Feezel. (Agrawal was in India during the time of January 22, 2008.)

290. **January 2, 2008,** Kris Agrawal, on behalf of Realty Developers, LLC filed a document titled, "NOTICE AND AFFIDAVIT OF UNAUTHORIZED AND VOID CONVEYANCE BY DOCUMENT NUMBER 2007096860 FILED ON 8-27-2007," in the Tulsa County Courthouse. Within this document, Agrawal also filed a copy of another document titled, "RESIGNATION, RELEASE AND SATISFACTION."

291. **February 15, 2008**, Kris Agrawal, filed case No. CJ-2008-1492 against Jerry Parent in an attempt (Bribe 'Parent'),to overturn the Revenue Sharing Agreement. Judge Noma Gurich transferred the case to Tulsa County back under the jurisdiction of Case No. CJ-2008-6839 where it rightfully belonged.

292. **March 12, 2008**, Andrew Waldron, attorney for Anthony Feezel, in case #CJ-2007-646 deposed 'Agrawal. '

- Agrawal, at page 20, 38, 39 of Offcial depositon transcript, Blamed the "entire" Hill Top Leasehold debacle on attorneys Lee Levinson, and Barth and Russ Walker.

- Also, on Page 39, of Official deposition transcript, Kris Agrawal states that, Newton Agrawal is the Only Stockholder in On-Line Oil Inc. and Owner of On-Line Inc.

293. **May 5, 2008**, General Minerals Corporation assigned its Operations of wells in Utah over and unto Mar/Reg Oil Co. (Change of Operator approved by Utah Department of Natural Resources on June 24, 2008).

294. **June 18, 2008**, Kris Agrawal formed Energy Production Services, LLC at the Oklahoma Secretary of State's Offices.

295. **June 23, 2008**, Vimala Agrawal assigned all of Realty Developers, LLC's interest in the Hill Top Leasehold to Coal Gas Mart, LLC, reserving unto RDL, a 3% ORRI interest by executing a document titled "PARTIAL ASSIGNMENT OF OVERRIDING ROYALTY INTEREST IN OIL AND GAS LEASE AND BILL OF SALE OF INTERESTS IN WELLS AND EQUIPMENT.

- Note; Language in this 9 Page document was deliberately stated to be hard to follow and reserved unto RDL all monies which might be awarded in lawsuits, stating conditions.

296. **August 4, 2008**, Kris Agrawal filed an 'Appeal' in Apellate Court in Oklahoma in Appellate Case No. CO-106172 titled therein as 'Agrawal et al v. Barth et al.

297. **August 4, 2008**, Kris Agrawal filed an 'Appeal' in Apellate Court in Oklahoma in Appellate Case No. DF-106173 titled therein as 'Agrawal v. Stall *et al.*

298. **August 6, 2008**, Nichols Water Service filed suit in Beaver County, Oklahoma against Kris Agrawal and others in CJ-2008-00051 seeking unpaid debts.

299. **August 21, 2008,** On-Line Oil Inc., filed its "Motion of Mineral Owners for leave to Intervene and Seek Vacation of Facially-Invalid Plugging Orders that "Modified" Unitization Orders 43026, 43027, 51310 and 73611. In the Supreme Court of the State of Oklahoma.

300. **September 4, 2008,** the 'OCC' filed its response to 'On-Line's August 21, 2008 Motion of Mineral Owners for leave to Intervene and Seek Vacation of Facially-Invalid Plugging Orders that "Modified" Unitization Orders 43026, 43027, 51310 and 73611. In the Supreme Court of the State of Oklahoma

301. **September 14, 2008**, Newton Agrawal executed and sent out by wire, or mail, a fraudulentBusiness Letter under official On-Line Oil Inc., Letter head demanding CO&G Production Group, LLC take certain actions.

302. That Formal Demand Letter was sent to the Oil and Gas Buyers also, causing the gas production proceeds owed to CO&G Production Group, LLC to be suspended. Such actions taken by Newton Agrawal constituted a violation of 18 U.S.C. §1962 (c) and

(d), and, 18 U.S.C. 1961 1(b) § 1341 Mail Fraud and/or 18 U.S.C. 1961 1(b) §1343 Fraud by wire and, 18 U.S.C.1961 1(b) §1503.  (Predicate Acts).

303.   **September 14, 2008**, Newton Agrawal sent Ron Walker and Scissor Tail Energy, LLC, (the gas buyer), a Formal Demand Letter under the 'On-Line' heading, and stating at paragraph 2 of page one (1) of that document;

- "As far we know, <u>On-Line Oil Inc., continues to be owner of all the units</u> along with the Realty Deveopers, LLC. (RDL) as the Over-riding Royalty Owner and owner of all the equipment you are using."

304.   Newton Agrawal also owned Coal Gas USA, LLC therefore, upon information and belief,  he knew as of the date of this letter that the recorded assignments in the Tulsa County Courthouse reflected that Coal Gas USA, LLC was the owner of Record as Larry Evans' Title Opinion later pointed out.

305.    Kris Agrawal was reckless enough to make reference to the Title Opinion in his pleadings in Case No. 110,414 filed on March 7, 2012 in the Oklahoma Supreme Court. Item 10 of Petitioner's Index at page 9

- at item (vi) clearly points out Larry Evans' Title Opinion dated December 2009, more than a year after Newton Agrawal's September 14, 2008 Letter was sent out.

- 'Agrawal' recklessly stated at Page 9 and item (vi) the following; "......by attaching the title opinion from Larry Evans dated December 10, 2009 in Exhibit I. This opinion shows that ownership rights to Hill Top Leasehold were severed on August 4, 2006........."

- 'Agrawal,' in keeping in line with his habitual characteristic of concealing ALL the self-incriminating facts, intentionally stops short of stating the whole truth in that statement.

- He fails to truthfully state that the ownership rights were severed from 'On-Line' which Newton Agrawal owned, and conveyed, (without any consideration) to Coal Gas USA, LLC, (which Newton Agrawal also owned at that time), and Kris Agrawal

    therein put forth his best effort to "Cloud" the Ownership issue to 'his' advantage in the furtherance of the misleading 'purpose' of his 'intent'.

- The average, normal, reader of those statements won't, didn't, and will never, have a clue as to the 'whole' content of 'Agrawal's statements therein. All of which, 'Agrawal' relies upon, to continue 'his' day to day fraudulent and criminal misrepresentations. In this case, made to the Supreme Court of the State of Oklahoma.

- The "real" reason Newton Agrawal conveyed the ownership rights from 'On-Line' to his other company, Coal Gas USA, LLC on August 4, 2006, was in an attempt to circumvent the 'OCC's Surety Plugging Bond Requirement of 'On-Line' which had been raised by the 'OCC' from $25,000.00 (and seized by the 'OCC'), and had been forfeited and used to plug 'On-Line's wells, to $100,000.00.

306. At paragraph, 5 of page two, (2), last two (2), sentences, of Newton Agrawal's September 14 Demand Letter he states; "Please release this conveyance as it is signed by a stranger-Gregory Williams on behalf of Realty Developers, LLC." " Please amend the Division Order Reflecting 75% Net Revenue to On-Line Oil Inc."

- Note; the last paragraph of that letter states, "By means of this letter, we are notifying Scissor Tail Energy and the Oil Purchasers that they withhold payment equal to 25% of future production and the money due from past production and pay that amount over to Realty Developers, LLC." "At its election, we may require that an over-riding royalty interest of 50% be paid to Realty Developers, LLC to pay off its lien."

307. Newton Agrawal, President and 'sole" stockholder of On-Line Oil Inc., according to (SOFA) at question 21b, is re-affirming the existence of a Lien in favor of Realty Developers, LLC as of September 14, 2008. However, that lien claim was not listed upon the proper Bankruptcy Schedules of On-Line Oil Inc., filed on June 5, 2009, in Case No. 09-13006 in the Western District of the State of Oklahoma. (Bankruptcy Fraud in violation of 18 U.S.C. 1961,§1(b) §1503 (obstruction of Justice), and,11 U.S.C.

§152, (1), (2), (3), (4), (5), (6), (7), (8), (9), and 11, U. S. C. §157 (2), (3), and, 11, U. S. C. §153 (b), and (c) and 19. U.S.C. §371).

308. **On August 15, 2009**, Kris Agrawal signed as "Authorized Representative" for General Holding Ltd. Co., and also signed as "Manager of Deep Energy, LLC, within and upon a document titled: "FARMOUT AND OPERATING RIGHTS AGREEMENT" between the parties concerning an oil and gas lease located at Section 9, Township 15 North, and Range 14 East in Okmulgee County, Oklahoma known as the Wilson Leasehold.

309. **On August 18, 2009** Burlington Resources Oil and Gas Company, (a division of Conoco-Phillips), filed suit against General Minerals, Corporation in Aztec County, New Mexico in Case No. D-1116-CV-200901303. The Petition/Complaint consisted of 29 pages titled as; "Complaining for Declaratory and Injunctive Relief and Damages." (On October 20, 2009), General Minerals appealed to Federal Court as Case No. 1:09-CV-938 WDS/ACT by Stephen Ingram for Defendant, 28 pages.

310. **On June 2, 2008**, General Minerals Corporation executed a Change of Operator document with Mar/Reg Oil Co. in Utah.

### FIRST CLAIM FOR RELIEF
#### (Breach of Employment Contract)

311. 'Parent' incorporates herein by reference the allegations contained in each of the preceding paragraphs.

312. 'Parent' accepted the promises made to him by Kris Agrawal and Realty Developers, LLC and 'Online' and Coal Gas Mart, LLC and GEO Exploration, LLC and others whom Kris Agrawal represented, managed, and was, (hereinafter "consortium"), therewith associated and entered into the 'Time' agreement both, verbally and under the written covenants contained therein, and performed months of work and thereafter, devoted and applied his necessary time and attention to the agreements.

313.   'Parent' fulfilled all of his obligations under the contract and satisfied all conditions precedent to the performance of all of the 'consortium's obligations under the contract.

314.   'Parent,' as promised, brought a legal operator and buyer for the 'HTL' and upon discovery of the many acts of fraud, fruaudulent misrepresentations, and acts of conspiracy to defraud 'Parent' discovered that the 'consortium' had not participated in all agreements fairly and honestly and as a result of the 'consortium's dishonest business practices, 'Parent' has, and continues to suffer damages.

315.   The 'consortium' breached the contract by failing to pay 'Parent' his bonuses or commissions earned and due upon receipt from the Jerry #2 leasehold in Beaver County, Oklahoma.

316.   The 'consortium' breached the contract by failing to grant to 'Parent' percentages and other equity interests due upon receipt from the Jerry # 2 well in Beaver County as agreed upon 'Parent' working with and satisfying the 'OCC' requirements there and as a result, saving the Surety Bond and its attached financial statement secured by the House and property  which was located in or near Kansas City, Missouri and belonging to Amy Agrawal; and, the 'consortium' failed to adequately pay 'Parent' from proceeds received from the Bethel Booch leasehold in Seminole County, Oklahoma for the many hours spent there by 'Parent' coping with and attempting to make improvements and deter and prevent elaborate environmental hazards that existed there.

317.   The 'consortium' breached the contract by failing to pay 'Parent' all expenses that were reimbursable pursuant to the contract.

318.   The 'consortium's breach of contract has caused 'Parent' to suffer actual, incidental and consequential damage in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

## (Violation of Oklahoma Protection of Labor Act, Okla. Stat. tit. 40, §165.1 *et seq.*)

319.   'Parent incorporates herein by reference the allegations contained in each of the preceding paragraphs.

320.   The 'consortium' was an employer within the meaning of and covered by the Oklahoma Protection of Labor Act as a result of employing 'Parent' to perform labor and services within the State of Oklahoma.

321.   'Parent' was an employee of the 'consortium' within the meaning of and covered by the Oklahoma Protection of Labor Act and was permitted to work for the 'consortium' within the State of Oklahoma.

322.   During 'Parent's employment with the 'consortium' 'Parent' earned wages, for labor or services rendered, including bonuses and commissions, and other similar advantages agreed upon between 'Parent' and the 'consortium' which have been due and owing but which the 'consortium' has failed or refused to pay despite 'Parent's repeated demand.

323.   As a result of the 'consortium's failure or refusal to pay wages that the 'consortium' admits is due and owing to 'Parent, 'Parent' has suffered damage in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF
### (Fraudulent Recruitment)

324.   'Parent' incorporates herein by reference the allegations contained in each of the preceding paragraphs.

325.   In October 2006, the 'consortium' by and through Kris Agrawal, made false promises and representations to 'Parent' for the purpose of fraudulently recruiting 'Parent' and fraudulently inducing 'Parent' to leave his regular pursuit of happiness and employment and enter into a contract of employment with the 'consortium' which Kris Agrawal evaded and refused to sign although he participated in the drafting of the contract's contents and continued to use the business name and reputation of 'Time' to futher the achievements of the 'consortium' and created unapproved debts

under the name of 'Time' and thereafter refused to pay the 'consortiu's debts leaving 'Parent' and 'Time' ravaged and damaged.

326.  At that time, Kris Agrawal, on behalf of himself and the 'consortium' of Agrawal family-owned and operated businesses, made the promises and representations to 'Parent,' that were not true and Kris Agrawal and the 'consortium' did not believe them to be true, or Kris Agrawal made them with reckless disregard for their truth or falsity, or Kris Agrawal made the with no intention of performing the promises.

327.  Kris Agrawal, and Vimala Agrawal and the 'consortium' fraudulently concealed from 'Parent' the fact that Kris Agrawal and the 'consortium' could not or would not fulfill its promises.

328.  Kris Agrawal and the 'consortium' fraudulently concealed from 'Parent' the fact that Kris Agrawal and the 'consortium' suffered cash flow problems.

329.  Kris Agrawal and the 'consortium' fraudulently concealed from 'Parent' the pattern and practice of fraudulently recruiting others to join, work for, or represent, or perform other tasks for the 'consortium' without the intent to pay such prior recruits all sums due and owing for services rendered.

330.  Kris Agrawal and the 'consortium' fraudulently concealed from 'Parent' that the 'consortium' and Kris Agrawal and other Agrawal family members were engaged in a scheme to defraud recruits and employees by converting corporate funds to support their own lavish lavish lifestyles at the expense of the recruits and employees who were deprived of sums due and owing for labor and services rendered while Kris Agrawal and the other Agrawal family members paid themselves exorbitant, unjustified compensation, benefits, and other perks and otherwise converted and misappropriated corporate assets for their own unjust enrichment.

331.  'Parent' reasonably relied to his detriment upon the false promises and representations of Kris Agrawal and the 'consortium,'as well as Kris Agrawal and the

'consortium's fraudulent concealment of material facts, when he left his normal habits and way of life and entered into an employment contract with the 'consortium' and Kris Agrawal.

332.   As a result of the fraud of Kris Agrawal and the 'consortium' 'Parent' suffered damages in an amount to be proven at trial, including, but not limited to. Loss of all conpensation and benefits he would have earned and enjoyed had he remained self-employed, as well as loss of compensation and benefits owed but not paid by Kris Agrawal and the 'consortium.'

333.   Because Kris Agrawal and the 'consortium' acted intentionally and with malice toward 'Parent' or with reckless disregard for his rights and the rights of his family, 'Parent' is entitled to an award of punitive damages pursuant to Okla. Stat. tit. 23, §9.1

## FOURTH CLAIM FOR RELIEF
### (Fraudulent Inducement to Remain with the Consortium)

334.   'Parent' incorporates herein by reference the allegations contained in each of the preceding paragraphs.

335.   During the course of 'Parent's employment with the 'consortium,' Kris Agrawal and Vimala Agrawal made false promises and representations to and fraudulently concealed material facts from 'Parent' with the purpose and intent of inducing 'Parent' to remain employed with and continue working for the 'consortium.'

336.   At the time the promises and representations were made, they were not true and Kris Agrawal and Vimala Agrawal and the 'consortium' did not believe them to be true or made them with reckless disregard for their truth or falsity, or made them without any intent to perform or fulfill their promises.

92

337.   'Parent' reasonably relied to his detriment upon false promises and fraudulent concealment of Kris Agrawal, Vimala Agrawal, Rodger Sparkman and the 'consortium' by remaining employed with and continuing to work for the 'consortium' of which Rodger Sparkman was a direct or indirect participant.

338.   As a result of the fraud, 'Parent' has suffered damages in an amount to be proven at trial, including loss of principal, interest, and lost opportunity costs.

339.   Because Kris Agrawal, Vimala Agrawal, Rodger Sparkman and the 'consortium' acted intentionally with malice toward 'Parent' or with reckless disregard for his rights and the rights of his family, 'Parent' is entitled to an award of punitive damages pursuant to Okla. Stat. tit. 23, §9.1

## FIFTH CLAIM FOR RELIEF
### ( Civil RICO against Kris Agrawal, Vimala Agrawal
### Rodger Sparkman and the 'consortium')

340.   'Parent' incorporates herein by reference the allegations contained in each of the preceding paragraphs.

341.   Kris Agrawal and the 'consortium' wrongfully conspired with one another and engaged in a pattern of racketeering activities, as defined in 18 U.S.C. §1961, with the intent to and for the illegal purpose of defrauding 'Parent.'

342.   Kris Agrawal and the 'consortium' in combination, conspired to defraud 'Parent' in violation of 18 U.S.C. §1962 (d).

343.   In perpetuation of the conspiracy to defraud 'Parent' and other victims, Kris Agrawal and the 'consortium' were each employed by or associated with an enterprise, within the meaning of 18 U.S.C. §1961(4), engaged in a pattern of racketeering activities in violation of 18 U.S.C. §1962(c).

344.   In perpetuation for their scheme to defraud 'Parent' and other victims, Kris Agrawal and the 'consortium' used multiple telephone, email, and facsimile transmissions in interstate commerce in violation of 18 U.S.C. §1343.

a.   As alleged herein, Kris Agrawal and Newton Agrawal made multiple false or fraudulent representations and promises by telephone, email, and facsimile across state lines.

b.   Kris Agrawal and Newton Agrawal made the false or fraudulent representations and promises with knowledge of their falsity.

c.   The false or fraudulent representations and promises were made with the intent to defraud 'Parent and CO&G Production Group, LLC, the Federal Bankruptcy Court for the Western District of Oklahoma and its Trustee and the associated creditors in Case No. WD-09-13006.

d. 'Parent' justifiably relied upon the false or fraudulent representations and promises and was damaged as a result.

345.   In violation of 18 U.S.C. 1961 1(b) §1341, Kris Agrawal and Newton Agrawal and the 'consortium' used the U.S. Mail or a private and commercial interstate carrier to falsely inform CO&G Production Group, LLC, 'Parent' the Tulsa County, Oklahoma District Court in Case No. CJ-2005-0456, and Scissor Tail Energy, LLC and possibly others, that 'Online' was still the owner of the 'HTL' Units.

346.   Upon information and belief, Kris Agrawal, Newton Agrawal and the 'consortium' used the U.S. Mail or a private and commercial and interstate carrier to receive payments to the enterprise (consortium), from various sources periodically, such payments being an essential step in the plot to profit from the schemes to defraud both, 'Parent' and CO&G Production Group, LLC.

347.   The foregoing conduct constituted a pattern of racketeering activities affecting interstate commerce, were designed to harm multiple parties, including 'Parent' and were effectuated by Kris Agrawal, Newton Agrawal, and the 'consortium' in violation of 18 U.S.C.§1962(c).

348.   As a result of the RICO violations, 'Parent' suffered outrage and severe economic damage, plus attorney fees wrongfully sustained.

349.   'Parent' is a person injured in his business property by reason of a violation of 18 U.S.C. §1962  and may sue in this Court and recover threefold the damages sustained and the costs of this suit, including reasonable attorney's fees pursuant to 18 U.S.C. 1964(c).

350.   The racketeering activity of the Defendants presents the potential to injure other persons or entities. 'Parent' is only one of the latest victims in a continuing string of such racketeering activity by one or more of the Defendants, a course of conduct spanning many years, which threatens to injure future victims, as shown below:

a.  Upon information and belief, over a period of approximately the last 4 years Kris Agrawal and Newton Agrawal and the 'consortium' engaged in substantially similar racketeering conduct to avoid paying agreed compensation to Chris Holland, a former employee.

b.  Upon information and belief, over a period of approximately the last 3 years Kris Agrawal and Newton Agrawal and the 'consortium' engaged in substantially similar racketeering conduct to avoid paying agreed compensation to Jeff Leger, former employee.

c.  Upon information and belief, over a period of approximately the last 3 years Kris Agrawal and Newton Agrawal and the 'consortium' engaged in substantially similar racketeering conduct to avoid paying agreed compensation to Jason Cox, a former employee.

e.  Upon information and belief, over a 4 year period, Kris Agrawal and Newton Agrawal and Amy Agrawal have committed numerous counts of Bankruptcy Fraud upon the United States Federal Bankruptcy Court for the Western District of the State of Oklahoma within Case No. WD-09-13006 the bankruptcy proceedings of On-Line Oil Inc., filed on June 5, 2009, and, in Case No., WD-09-14024 the bankruptcy proceedings of GEO Exploration, LLC filed on July 27, 2009.

### SIXTH CLAIM FOR RELIEF
### (Negligent Misrepresentation)

351.   'Parent' incorporates herein by reference the allegations contained in each of the preceding paragraphs.

352.   Kris Agrawal, representing the 'consortium' made material misrepresentations and omitted material existing facts during their recruitment of 'Parent' and in their efforts to ensure that 'Parent' remained with the 'consortium' long enough to assure the 'consortium's successful perpetration of fraud upon CO&G Production Group, LLC and 'Parent.'

353.   Kris Agrawal and the 'consortium' reasonably should have known when it made those misrepresentations that they were false, and Kris Agrawal and the 'consortium' reasonably should have known that 'Parent' would rely on them. 'Parent' in fact relied on those representations to his detriment.

354.   As a direct result of Kris Agrawal and the 'consortium's above described negligent misrepresentations 'Parent' has been damaged.

355.   Because Kris Agrawal and the 'consortium' and Newton Agrawal acted with awareness of the hazard and of its excessiveness, 'Parent' is entitled to an award of punitive damages pursuant to Okla. Stat. tit. 23, § 9.1.

## SEVENTH CLAIM FOR RELIEF
### (Constructive Fraud)

356.   'Parent' incorporates herein by reference the allegations contained in each of the preceding paragraphs.

357.   Kris Agrawal and the 'consortium' and Newton Agrawal occupied a fiduciary or special relationship with 'Parent' by virtue of 'Parent's employment relationship and consulting relationship and/or by virtue of 'Parent's equity ownership or membership interest in the 'consortium's leaseholds.

358.   As a Result of their fiduciary or special relationship with 'Parent' Kris Agrawal and Newton Agrawal and the 'consortium' owed 'Parent' a duty to care, loyalty, good faith, and fair dealing.

359.   By virtue of the acts and omissions of Kris Agrawal, Newton Agrawal, Rodger Sparkman and the 'consortium' set forth in this Complaint, Kris Agrawal, Newton Agrawal, Amy Agrawal, Vimala Agrawal, and Rodger Sparkman and the 'consortium' breached their duties owed to 'Parent.'

360.   As a result, Kris Agrawal, Rodger Sparkman, Newton Agrawal, Amy Agrawal, Vimala Agrawal, and the 'consortium,' gained an advantage to the detriment of 'Parent' by misleading 'Parent' to his prejudice, even if done by Kris Agrawal, Rodger Sparkman, Newton Agrawal, Amy Agrawal, Vimala Agrawal, and the 'consortium,' without an actually fraudulent intent.

361.   Because Kris Agrawal, Rodger Sparkman, Newton Agrawal, Amy Agrawal, Vimala Agrawal, and the 'consortium,' breached such duties with reckless disregard for the rights of 'Parent' and his family, 'Parent' is entitled to an award of punitive damages pursuant to Okla. Stat. tit. 23, § 9.1.

## EIGHTH CLAIM FOR RELIEF
### (Fraudulent Transfer)

362.   'Parent' incorporates herein by reference the allegations contained in each of the preceding paragraphs.

363.   Upon information and belief, Kris Agrawal, Newton Agrawal, Amy Agrawal, Vimala Agrawal, and the 'consortium' have made multiple transfers of assets to Coal Gas Mart, LLC, General Holding Ltd. Company, Mittal Well Tech, LLC, Realty Management Associates, Deep CH4 Private Ltd. Deep Industries Ltd. Adinath Exim Resources, Deep Energy, LLC, Mar/Reg Oil Company, Mar/Reg Investments, Pacific Energy and Mining Company, Deep Natural Resources, LLC, the 'AST,' Vance 1 Limited Partnership, Vance Limited Partnership, Rensark Energy, LLC, General Minerals Corporation, and other persons or entities.

364. Upon information and belief, the transfers were made with the actual intent to hinder, delay, or defraud 'Parent' and the other creditors of the 'Consortium, and 'Online' and GEO Exploration, LLC who is currently in Chapter 7 bankruptcy liquidation proceedings in the Western District of the State of Oklahoma in Case No., WD-09-14024.

365. 'Parent' is entitled to an Order of this Court avoiding the transfers to the extent necessary to satisfy 'Parent's claim, an Order of attachment or other provisional remedy against the assets transferred or other property of Deep Industries, Coal Gas Mart, LLC, Deep CH4 Private Ltd, Deep Energy, LLC, Adinath Exim Resources, Deep Natural Resources, Rodger Sparkman, Kris Agrawal, Vimala Agrawal, Newton Agrawal, Amy Agrawal and the 'consortium', injunctive relief prohibiting further disposition by Deep Industries, Coal Gas Mart, LLC, Deep CH4 Private Ltd, Deep Energy, LLC, Adinath Exim Resources, Deep Natural Resources, Rodger Sparkman, Kris Agrawal, Vimala Agrawal, Newton Agrawal, Amy Agrawal and the other 'consortium,' association-in-fact enterprises and the appointment of a receiver to take charge of the asset transferred or other property of the transferees.

366. Because Kris Agrawal and the 'consortium' and the other 'consortium,' association-in-fact enterprises breached such duties with reckless disregard for the rights of 'Parent' and his family, 'Parent' is entitled to an award of punitive damages pursuant to Okla. Stat. tit. 23 9.1.

## NINTH CLAIM FOR RELIEF
### (Constructive Fraudulent Transfer)

367. 'Parent' incorporates herein by reference the allegations contained in the preceding paragraphs.

368. Upon information and belief, the 'consortium' has made multiple transfers of assets to Coal Gas Mart, LLC, General Holding Ltd. Company, Mittal Well Tech, LLC, Realty Management Associates, Realty Developers, LLC, Deep CH4 Private Ltd. Deep Industries Ltd. Adinath Exim Resources, Deep Energy, LLC, Mar/Reg Oil Company,

Mar/Reg Investments, Pacific Energy and Mining Company, Deep Natural Resources, LLC, the 'AST,' Vance 1 Limited Partnership, Vance Limited Partnership, Rensark Energy, LLC, General Minerals Corporation, and other persons or entities.

369. 'Parent' became a creditor of the 'consortium' prior to the time the transfers were made, and upon information and belief, the 'consortium' did not receive reasonably equivalent value in exchange for the transfers from the 'consortium' and the 'consortium' was either insolvent at the time of the transfers or became insolvent as a result of one or more of the transfers to other members and associations-in-fact related to, or in participation with, or a part of, the 'consortium.'

370. Kris Agrawal, Tariq Ahmad, Rupesh Salva, Rodger Sparkman, Vimala Agrawal, Amy Agrawal, and Newton Agrawal 'Online,' Coal Gas USA, LLC, Realty Developers, LLC, Coal Gas Mart, LLC, Deep CH4 Private Ltd., Deep Energy, LLC, General Minerals, Corporation, Deep Natural Resources and others therewith associated are all insiders of the 'consortium' within the meaning of the uniform fraudulent transfer act. If the transfers were made on an antecedent debt to the 'consortium' then upon information and belief, the transfers, occurring after 'Parent's claim arose, were made when the 'consortium' was insolvent and Kris Agrawal, Newton Agrawal, Rodger Sparkman, Vimala Agrawal, and Amy Agrawal and the 'consortium' had reasonable cause to believe that the 'consortium' was insolvent.

371. Upon information and belief, the 'consortium's transfers were made to other association-in-fact enterprises associated directly or indirectly with the 'consortium' without receiving reasonably equivalent value in exchange for the transfers and the 'consortium' was engaged or about to engage in business with 'Parent' or another creditor for which the remaining assets of the debtor were unreasonably small in relation to the business with 'Parent,' or were made when the 'consortium' intended to incur, or believe or reasonably should have believed that the 'consortium' would incur, debts beyond its ability to pay as they became due.

99

372.  'Parent is entitled to an Order of this Court avoiding the transfers to the extent necessary to satisfy 'Parent's claim, an Order of attachment or other provisional remedy against the assets transferred or other property of the 'consortium,' injunctive relief prohibiting further disposition by the 'consortium' or any of its association-in-fact partners, associates, principals or managers or employees, an appointment of a receiver to take charge of the asset transferred or other property to the transferees.

373.  Because the 'consortium' and Kris Agrawal and Newton Agrawal breached such duties with reckless disregard for the rights of 'Parent' and his family, 'Parent' is entitled to an award of punitive damages pursuant to Okla. Stat., tit. 23, § 9.1.

## TENTH CLAIM FOR RELIEF
### (Conversion)

374.  'Parent' incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint:

375.  'Parent' had the right to receive timely the full payment of certain bonuses or commissions that he earned and that were due from proceeds generated from the oil and gas leases where 'Parent' spent considerable time and attention in improving the functionality, preventing the forfeiture of Surety, prevented, or slowed the risk or occurrence of pollution, or caused an Operator and buyer to step forward, all to the benefit of the 'consortium,'

376.  'Parent' had the right to expect that the 'consortium' would not take unauthorized deductions, fail to deliver, or not pay bonuses, interests, and fees as agreed.

377.  'Parent' had the right to expect that the 'consortium' would pay his reimbursable business expenses.

378.  'Parent' had the right to expect that the 'consortium' would fulfill its promise to convey to 'Parent' the bonus percentages from production from the Jerry #2 lease in

Beaver County, Oklahoma and from the Bethel Booch Leasehold in Seminole County, Oklahoma as agreed in October 2006 under the 'Time' agreement and re-affirmed in February of 2008.

379.   Kris Agrawal, Newton Agrawal, Vimala Agrawal, Amy Agrawal, and Rodger Sparkman and the 'consortium' have intentionally prevented 'Parent' from having access to, possessing, using, or otherwise enjoying the benefit of the above-described property without 'Parent's consent and have wrongfully exerted dominion and control over and have converted each such asset for its own unjust enrichment, ulterior purposes, use and enjoyment to the detriment of 'Parent's rights and interests.

380.   As result, 'Parent' has suffered damages in an amount to be proven at trial.

381.   Because Kris Agrawal and the 'consortium' acted intentionally and with malice toward 'Parent' or with reckless disregard for his rights and the rights of his family, 'Parent' is entitled to an award of punitive damages pursuant to Okla. Stat. tit. 23, 9.1.

## ELEVENTH CLAIM FOR RELIEF
## (Breach of implied Covenant and Good Faith and Fair Dealing)

382.   'Parent incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint:

383.   Kris Agrawal and the 'consortium' owed 'Parent' an implied duty to deal with him fairly and in good faith in connection with its contract of employment with 'Parent' and its agreement to accelerate the vesting of "parent's membership in the 'consortium.'

384.   The acts and omissions of Kris Agrawal, Newton Agrawal and the 'consortium' set forth in this Complaint constitute a breach of the implied duty of good faith and fair dealing.

385.   As a result, 'Parent' has suffered and will continue to suffer damages in an amount to be proven at trial.

386.   Because Kris Agrawal, Newton Agrawal, Vimala Agrawal and the 'consortium' acted intentionally and with malice toward 'Parent' or with reckless disregard for his rights and the rights of his family, 'Parent' is entitled to an award of punitive damages pursuant to Okla. Stat. tit. 23, § 9.1.

## TWELFTH CLAIM FOR RELIEF
### (Breach of Employment-Related Fiduciary Duties)

387.   'Parent' incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint:

388.   As a result of the special or fiduciary relationship between 'Parent' and the 'Consortium,' Kris Agrawal, Newton Agrawal and Vimala Agrawal, Defendants owed 'Parent' fiduciary duties of care and loyalty.

389.   Defendants breached their fiduciary duties to plaintiff.

390.   As a result, 'Parent' has suffered and will continue to suffer damages in an amount to be proven at trial.

391.   Because Kris Agrawal, Newton Agrawal, and the 'consortium' acted intentionally and with malice toward 'Parent' or with reckless disregard for his rights and the rights of his family, 'Parent' is entitled to an award of punitive damages pursuant to Okla. Stat. tit. §23, 9.1.

## THIRTEENTH CLAIM FOR RELIEF
### (Breach of Ownership-Related Fiduciary Duties)

392.  'Parent' incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint:

393.  As a result of 'Parent's prospective and actual ownership interest in the 'consortium' Kris Agrawal, Newton Agrawal, and the 'consortium' owed fiduciary duties of care and loyalty to 'Parent.'

394.  Defendants breached their fiduciary duties owed to 'Parent.'

395.  As a result, 'Parent' has suffered and will continue to suffer damages in an amount to be proven at trial.

396.  Because Kris Agrawal, Newton Agrawal, Vimala Agrawal and the 'consortium' acted intentionally and with malice toward 'Parent' or with reckless disregard for his rights and the rights of his family, 'Parent' is entitled to an award of punitive damages pursuant to Okla. Stat. tit. 23, § 9.1.

## FOURTEENTH CLAIM FOR RELIEF
### (Civil Conspiracy)

397.  'Parent' incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint;

398.  Kris Agrawal, and Newton Agrawal and Vimala Agrawal and others in the 'consortium' had a meeting of the minds and acted in concert to induce 'Parent' to work for the 'consortium,' Realty Developers, LLC, Coal Gas USA, LLC, Coal Gas Mart, LLC, and other 'consortium' members, associates, managers, principals and others therewith associated conspired to induce 'Parent' to continue working for the 'consortium' by making multiple fraudulent statements and false promises.

399.  As a result, 'Parent' has suffered and will continue to suffer damages in an amount to be proven at trial.

400.   Because Kris Agrawal, Newton Agrawal, Vimala Agrawal and the 'consortium' and the related association-in-fact enterprises acted with malice toward 'Parent' or with reckless disregard for his rights and the rights of his family, 'Parent' is entitled to an award of punitive damages pursuant to Okla. Stat. tit. 23, § 9.1.

## FIFTEENTH CLAIM FOR RELIEF
### (Negligent infliction of Emotional Distress)

401.   'Parent' incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint;

402.   Kris Agrawal, Newton Agrawal, Vimala Agrawal, and the 'consortium' owed a duty of care to 'Parent' and his known dependents.

403.   By virtue of the acts and omissions of Kris Agrawal, Kris Agrawal, Newton Agrawal, Vimala Agrawal, and the 'consortium' set forth in this Complaint, Kris Agrawal, Kris Agrawal, Newton Agrawal, Vimala Agrawal, and the 'consortium' breached the duty of care owed to 'Plaintiff' and his known dependents.

404.   As a result, 'Parent' and his dependents have suffered and will continue to suffer damages, including extreme and severe emotional distress, in an amount to be proven at trial.

## SIXTEENTH CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress)

405.   'Parent' incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint:

406.   In December of 2007, 'Parent' suffered a minor stroke and heart attack.

104

407. After 'Parent's realization that Kris Agrawal, Newton Agrawal and Vimala Agrawal and the 'consortium' Kris Agrawal in January and February of 2008 attempted to coerce 'Parent' into a voluntary lawsuit stating that he would pay 'Parent' all the money owed to 'Parent' if 'Parent' would agree to a judgment wherein Energy Production Services, LLC would voluntarily withdraw from the terms of the Revenue Sharing Agreement. Upon careful parsing and examination of Kris Agrawal's words and statements 'Parent' soon realized that Kris Agrawal was, on behalf of the 'consortium' attempting to bribe 'Parent' in order to falsely achieve an overt objective.

408. 'Parent' had to reject Kris Agrawal's fraudulent offers due to 'Parent' realizing that the whole ordeal was just an attempt by Kris Agrawal, acting on behalf of the 'consortium' members in an attempt to gain an unfair and dishonest advantage over CO&G Production Group, LLC and 'Parent' as well.

409. Kris Agrawal's actions in the setting in which it occurred when combined with all of the forgoing acts and omissions complained of herein, were so extreme and covert and uncommon and radical and outrageous as to go beyond all possible bounds of decency and would be considered atrocious and utterly intolerable in a civilized society.

410. Kris Agrawal, acting on behalf of himself and the 'consortium' intentionally or recklessly caused severe emotional distress to 'Parent' beyond that which a reasonable person could be expected to endure.

411. As a result, 'Parent' and his dependents have suffered and will continue to suffer damages, including extreme and severe emotional distress, in an amount to be proven at trial.

## SEVENTEENTH CLAIM FOR RELIEF
### (Tortuous Interference with Business Relations)

412. 'Parent' incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint:

413.   Upon information and belief, the 'consortium' by way of its employees and agents, and Kris Agrawal, Newton Agrawal, Vimala Agrawal individually, have been contacting persons with which 'Parent' has/had current of prospective contractual or business relationships to disparage 'Parent' and mislead or otherwise convince these parties not to do business with 'Parent.,

414.   Kris Agrawal, Newton Agrawal, Vimala Agrawal and Amy Agrawal, by way of such conduct, have and continue to intentionally and improperly interfere with Plaintiff's current and prospective contractual relations with third parties.

415.   As a result, 'Parent' has suffered and continues to suffer pecuniary harm resulting from the loss of the benefits of the current and prospective contractual relations.

416.   Because Kris Agrawal, Vimala Agrawal and Newton Agrawal and the 'consortium' acted intentionally and with malice toward 'Parent' or with reckless disregard for his rights, 'Parent' is entitled to an award of punitive damages pursuant to Okla. Stat. tit. 23, §1.9.

## EIGHTEENTH CLAIM FOR RELIEF
### (Slander and Slander per Se)

417.   'Parent' incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint:

418.   Upon information and belief, the 'consortium' by way of its employees, agents, and Kris Agrawal individually, has been uttering false, derogatory, misleading and disparaging statements about 'Parent.'

419.   As a result of the false, derogatory, and misleading and disparaging statements made by the 'consortium' and Kris Agrawal, 'Parent' has suffered and continues to suffer damages.

420.   Upon information and belief, the 'consortium' by way of its employees, agents, managers, principals, and Kris Agrawal individually have made statements to third parties and those statements are such that would tend to injure 'Parent' in his trade or business because the statements relate to 'Parent's reputation or qualification in His trade or business or because the statements made about 'Parent' have a natural tendency to lessen 'Parent's profits in his trade or business.

421.   Because Kris Agrawal and the 'consortium' acted intentionally and with malice toward 'Parent' or with reckless disregard for his rights, 'Parent' is entitled to an award of punitive damages pursuant to Okla. Stat. tit. 23,§ 9.1.

## NINETEENTH CLAIM FOR RELIEF
### (Constructive Trust and Equitable Lien)

422.   'Parent' incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint:

423.   Defendants have possession of monies belonging to 'Parent' and property purchased with funds belonging to 'Parent' as a result of wrongful conduct of Defendants.

424.   The conduct of Defendants warrants the impression of a constructive trust on all monies, records, property, regardless of whatever kind or character, belonging to 'Parent,' regardless of which Defendant holds the property, records or monies, and a constructive trust and equitable lien upon all property held, in whole or in part, by Defendants, financed in whole or part with funds belonging to 'Parent,' as a result of the wrongful conduct of Defendants.

## TWENTIETH CLAIM FOR RELIEF
### (Equitable Disgorgement/Accounting)

107

425.   'Parent' incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint:

426.   'Parent' is entitled to an accounting by Defendants regarding all receipts and disbursements of the 'consortium' from October 2, 2006 to date. Additionally, 'Parent' is entitled to an accounting of all assets of the 'consortium,' Newton Agrawal, Amy Agrawal, Kris Agrawal, and Vimala Agrawal acquired any time subsequent to October 2, 2006. 'Parent' is entitled to any and all financial transactions or transfers of monies between the Defendants.

427.   'Parent' is entitled to an equitable disgorgement for monies and other property converted by Defendants.

**TWENTY-FIRST CLAIM FOR RELIEF**
**(Preliminary and Permanent Injunctive Relief and Appointment of Receiver)**

428.   'Parent' incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint:

429.   Defendants have converted 'Parent's property and assets, made unauthorized use of the same, and have threatened to interfere intentionally and improperly with 'Parent's current and prospective contractual relations with third parties.

430.   Defendants' continued and unauthorized possession of Plaintiffs' property and Defendants' threatened intentional and improper interference with Plaintiffs' current and prospective contractual relations with third parties has caused and will cause Plaintiff's irreparable harm for which no adequate remedy at law exists.

431.   Plaintiffs are entitled to the following temporary, preliminary and permanent injunctive relief restraining and enjoining Defendants, jointly and severally, from:

108

a.  Withholding, secreting, or exercising ownership or control over property belonging to 'Parent' or property for which a constructive trust may be imposed to satisfy any judgment that 'Parent' may obtain including, but not limited to, cash, certificates of deposit, stocks and bonds, accounts receivable, deposits, inventory, federal excise tax and credits receivable, property, and equipment, equity interests.

b.  Disposing of fraudulently transferred assets or any other property of the Defendants.

c.  Contacting third parties with whom 'Parent' has or may have a business relationship and mentioning 'Parent' or interfering in any way with 'Parent's ability to maintain and establish a business relationship.

d.  Making false, derogatory, misleading and disparaging statements about 'Parent' to any third party or making statements to third parties that would tend to injure 'Parent' in his trade or business including statements tending to disparage 'Parent's reputation or qualification in his trade or business or statements about 'Parent' that nave a natural tendency to lessen 'Parent's profits in his trade or business.

e.  Appointing a receiver to make an accounting of all the 'consortium's assets and to collect and manage all such assets including to avoid further misappropriation of assets and siphoning by Kris Agrawal, Vimala Agrawal, Newton Agrawal, Amy Agrawal, and the 'consortium' or any other individual or entity including any and all association-in-fact enterprises.

f.  Commanding Defendants to preserve all potentially relevant evidence in their possession, custody or control from loss, alteration, or destruction and to notify promptly all third parties possessing such evidence of the terms of the order and their duty to preserve such evidence.

## TWENTY-SECOND CLAIM FOR RELIEF
### (Restitution)

109

432.  'Parent' incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint:

433.  As a result of the acts and omissions of Kris Agrawal, Vimala Agrawal, Newton Agrawal, and the 'consortium,' 'Parent' suffered losses, costs, and damages that in equity and good conscience should be borne by Defendants and not 'Parent.'

434.  'Parent' is therefore entitled to restitution from Defendants in an amount that will make him whole and restore him all such losses, costs, and damages.

## TWENTY-THIRD CLAIM FOR RELIEF
### (Unjust Enrichment)

435.  'Parent' incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint:

436.  As a result of the acts and omissions of Kris Agrawal, Newton Agrawal, Amy Agrawal, Vimala Agrawal, and the 'consortium,' Defendants have been unjustly enriched at 'Parent's expense.

437.  In equity and good conscience, Defendants should not be allowed to enrich itself at 'Parent's expense and should disgorge all ill-gotten gain.

438.  'Parent' is therefore entitled to disgorgement from Defendants of all ill-gotten gain.

## TWENTY-FOURTH CLAIM FOR RELIEF
### (Equitable Corporate Veil Piercing)

439.  'Parent' incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint:

440.   Upon information and belief, Kris Agrawal, Vimala Agrawal, Newton Agrawal, Amy Agrawal, Tariq Ahmed and others herein identified above abused the corporate form by converting corporate assets for personal use and comingling said corporate assets with personal assets with no attempt to distinguish proper ownership, no formal documentation of loans, and no charging of interest on loans, and otherwise treated the corporation as the alter-ego of themselves such that the corporate veil should be pierced and Kris Agrawal, Vimala Agrawal, Newton Agrawal, Amy Agrawal, Tariq Ahmed and others herein identified above should be personally liable.

Additionally, Kris Agrawal, Vimala Agrawal, Newton Agrawal and Amy Agrawal and possibly Tariq Ahmad established entities that, upon information and belief, are being used to divert the 'consortium's corporate assets for the purpose of hindering, delaying, or defrauding 'Parent' and other creditors of the 'consortium' members, Kris Agrawal, Vimala Agrawal, Newton Agrawal, Rodger Sparkman, and Amy Agrawal, such being an abuse of corporate form. Accordingly, 'Parent' is entitled to an order of the Court determining that the corporate veil should be pierced and the 'consortium' and its association-in-fact enterprises should be held liable for the satisfaction of any judgment to which 'Parent' is entitled.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, 'Parent' prays for judgment in its favor and against Defendants as follows:

A.   For an award of treble damages, costs, and attorney fees as to Kris Agrawal, Newton Agrawal, Vimala Agrawal, Amy Agrawal, Tariq Ahmad pursuant to 18 U.S.C §1964(c).

B.   For an award of compensatory damages as to the 'consortium' Kris Agrawal, Vimala Agrawal, Newton Agrawal, Amy Agrawal and Tariq Ahmad and Roger Sparkman in an amount in excess of $75,000.00, exclusive of interest and costs.

C.   For an award of incidental and consequential damages in an amount to be proven at trial as to all Defendants.

D.   For an award of liquidated damages in the amount of two percent 2% of the unpaid wages for each day upon which such failure shall continue after the day the wages were earned and due or in an amount equal to the unpaid wages, whichever is smaller, including reasonable attorney fees and costs pursuant to Okla. Stat. tit. 40, §165.1 *et seq.*

E.   For an award of punitive damages in an amount sufficient to make an example of all Defendants and to deter other such conduct.

F.   For an Order for an accounting of the assets of all Defendants.

G.   For an Order that all Defendants disgorge monies and other property converted by Defendants.

H.   For an Order of imposing a constructive trust on the assets of all Defendants.

I.   For an Order for a temporary restraining Order, Preliminary Injunction and Temporary Injunction against all Defendants.

J.   For an Order appointing a receiver to garner an administer the assets of the 'consortium,' Kris Agrawal, Vimala Agrawal, Amy Agrawal, and Newton Agrawal.

K.   For an award of reasonable attorney fees and costs against all Defendants.

L.   For an award of pre- and post- judgment interest against all Defendants.

M.   For an award of such other relief as the Court deems just and equitable.

## JURY DEMAND

'Parent' hereby respectfully demands a jury trial on all issues triable to a jury in this matter.

Respectfully submitted,

Lowell G. Howe OBA #20075
HOWE LAW FIRM, P.C.
P.O. Box 1972; 436 Court Street, Suite C.
Muskogee, Oklahoma 74402
Ph:(918) 683-5529; Fx 683-5528